No. 25-5309

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

————————————

GUN OWNERS OF AMERICA, INC. and GUN OWNERS FOUNDATION,

Plaintiffs-Appellants,

v.

BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES,

Defendant-Appellee.

————————————

On Appeal from the United States District Court
for the District of Columbia
No. 1:21-cv-02919-ABJ
Hon. Amy Berman Jackson

————————————

## PLAINTIFFS-APPELLANTS' MOTION FOR A STAY PENDING APPEAL

————————————

Robert J. Olson                              Stephen D. Stamboulieh
WILLIAM J. OLSON, P.C.                        STAMBOULIEH LAW, PLLC
370 Maple Avenue West, Ste. 4                 P.O. Box 428
Vienna, VA 22180                              Olive Branch, MS 38654
T: (703) 356-5070                             T: (601) 852-3440
rob@wjopc.com                                 stephen@sdslaw.us


*Attorneys for Plaintiffs-Appellants*
*Gun Owners of America, Inc. and Gun Owners Foundation*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### A. Parties and Amici

Plaintiffs are Gun Owners of America, Inc. and Gun Owners Foundation. Defendant is Bureau of Alcohol, Tobacco, Firearms and Explosives.

No amici curiae or intervenors participated before the district court.

### B. Ruling Under Review

The ruling under review is a July 23, 2025 Order (Dkt. 43) of the district court granting summary judgment to Defendant and ordering Plaintiffs not to "disseminate, disclose, or use for any purpose those [unredacted] portions of the records" at issue in this case, "for the reasons set forth in the memorandum opinion" issued the same day (Dkt. 42). The Memorandum Opinion and Order are attached to this Motion. The Memorandum Opinion is also reported at *Gun Owners of Am., Inc. v. BATFE*, 2025 U.S. Dist. LEXIS 141059 (D.D.C. July 23, 2025).

On August 22, 2025, the district court denied Plaintiffs' Motion to Stay Judgment Pending Appeal (Dkt. 47). The district court's Order is attached to this Motion.

### C. Related Cases

This case has previously been before this Court on petition for a writ of mandamus to the district court, No. 25-5251. There are no related cases.

*/s/ Stephen D. Stamboulieh*
Stephen D. Stamboulieh

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1(a) and Circuit Rule 26.1, Gun Owners of America, Inc. ("GOA") and Gun Owners Foundation ("GOF") are non-stock, nonprofit corporations with no parent companies. Therefore, no publicly held company owns 10% or more of their stock.

GOA is organized and operated as an IRC § 501(c)(4) nonprofit membership organization. GOF is organized and operated as an IRC § 501(c)(3) nonprofit legal defense and educational foundation.

As relevant to this litigation, the general nature and purpose of GOA and GOF is to preserve and defend the Second Amendment rights of gun owners, including by filing Freedom of Information Act requests and publishing news of government actions that implicate the right to keep and bear arms.

## TABLE OF CONTENTS

Page

INTRODUCTION AND CIRCUIT RULE 8 STATEMENT. . . . . . . . . . . . . . . . . .1

PROCEDURAL AND FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . .2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

   I.     STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

   II.   THIS COURT SHOULD STAY THE DISTRICT COURT'S ORDER. . . 7

    A. Plaintiffs Are Likely to Succeed on the Merits . . . . . . . . . . . . . . . . . . . . .7

      1. This Court's *HRDC* Decision Controls This Case . . . . . . . . . . . . . . . 7

      2. The District Court Lacked the "Equitable Authority" to Gag Plaintiffs'
         Speech . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      3. The District Court Upheld an Unprecedented and Presumptively
         Unconstitutional Prior Restraint, in Violation of the First Amendment .
         . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

    B. Plaintiffs Will Be Irreparably Harmed Absent a Stay . . . . . . . . . . . . . . .17

    C. Issuance of a Stay Will Not Substantially Injure Defendant, and It Will
       Advance the Public Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## INTRODUCTION AND CIRCUIT RULE 8 STATEMENT

Plaintiffs-Appellants Gun Owners of America, Inc. and Gun Owners Foundation ("Plaintiffs") are nonprofit Second Amendment advocacy organizations dedicated, *inter alia*, to researching and reporting on issues affecting gun owners, including governmental misconduct. Plaintiffs respectfully move for a stay pending appeal of the district court's July 23, 2025 Order, which imposed a permanent prior restraint on Plaintiffs' First Amendment speech and press coverage of unredacted Freedom of Information Act ("FOIA") material produced by Defendant-Appellee Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF" or "Defendant"). Rather than acknowledge the severity of its prohibition on constitutionally protected activity, the district court couched its gag order as issued pursuant to its supposed "equitable" powers under FOIA.

Plaintiffs moved the district court for a stay pending appeal of its Order on August 7, 2025 (Dkt. 44), relying in part on this Court's recent rejection of such drastic FOIA remedies in *HRDC v. U.S. Park Police*, 126 F.4th 708 (D.C. Cir. 2025). On August 22, 2025, the district court denied Plaintiffs' motion. Dkt. 47. Plaintiffs now move this Court to stay the district court's Order pending appeal, because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

1

The duration of the district court's gag order has been far from "minimal." Indeed, it began as a "temporary protective order" first issued in 2023, and it has now lasted for almost *two years*. All this time, Plaintiffs have been judicially ordered *not to report* evidence of governmental misconduct to the public. And although the sheer novelty and blatant unconstitutionality of this purported FOIA "remedy" seemed lost on the court below, Plaintiffs pray that this Court will see the district court's Order for what it is – "the most serious and the least tolerable infringement on First Amendment rights," *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976), and "the essence of censorship." *In re Providence Journal Co.*, 820 F.2d 1342, 1345 (1st Cir. 1986).

## PROCEDURAL AND FACTUAL BACKGROUND

This case arises from an April 28, 2021 Freedom of Information Act request made by Plaintiffs to ATF. In it, Plaintiffs sought records related to a secret surveillance program administered by the Federal Bureau of Investigation ("FBI") and used by ATF and other federal and state law enforcement agencies to unlawfully and unconstitutionally monitor and record the firearm purchases of American citizens who are legally eligible to purchase and possess firearms.

When ATF failed to respond to Plaintiffs' FOIA request, Plaintiffs filed suit on November 5, 2021. Over the ensuing months, ATF made a series of 12 productions of records to Plaintiffs, showing in detail how this surveillance program

2

– dubbed the "NICS[1] Monitoring Program" – has been used to surveil, without a warrant and often without even any particularized suspicion at all, untold thousands of Americans whose firearm transactions *are approved* by the FBI and who thus are eligible to purchase and possess firearms.

On September 6, 2023, ATF made a thirteenth production to Plaintiffs, the subject of this ongoing dispute. That ATF production contained FOIA redactions that were indicated, but not actually made. When brought to ATF's attention by Plaintiffs' counsel, ATF hurriedly filed an "expedited" motion seeking a protective order, even though Plaintiffs' counsel represented that no dissemination of the records would take place until the matter could be resolved in court. Dkt. 20. Five days later on September 18, 2023, the district court entered a minute order largely granting (purportedly in an interim form) the relief sought by ATF, ordering that, "pending resolution of the motion … plaintiff must sequester the FOIA records … and … shall not disseminate, disclose, or use those records or their contents...." Minute Order, No. 1:21-cv-02919-ABJ (D.D.C. Sept. 18, 2023). The district court then entered a second minute order on October 5, 2023, which did not address and therefore effectively denied Plaintiffs' request to file a brief under seal (Dkt. 25 at 6) or to have the court consider the unredacted production *in camera* (*id.* at 4). *See*

---

[1] NICS stands for the FBI's National Instant Criminal Background Check System ("NICS"), which administers federal background checks for firearm transfers made by Federal Firearms Licensees.

3

Minute Order, No. 1:21-cv-02919-ABJ (D.D.C. Oct. 5, 2023). In other words, the district court at the time refused to consider the contents of the information it had ordered Plaintiffs not to "use," despite the grave First Amendment concerns Plaintiffs had raised. *See* Dkt. 22 at 2.

The parties then briefed ATF's Motion for Protective Order (Dkts. 28, 29). In their Opposition, Plaintiffs explained that the NICS Monitoring Program underlying their FOIA request violates several provisions of federal law requiring the destruction of NICS records within 24 hours of approval, and prohibiting the creation of federal registries of gun owners. *See* Dkt. 28 at 11-14 (citing 118 Stat. at 95; 18 U.S.C. §§ 922(t)(2)(C), 926(a); 34 U.S.C. § 40901). Plaintiffs explained that the protective order ATF sought was a presumptively unconstitutional prior restraint on quintessential speech and press activity protected under the First Amendment. *Id.* at 18-22 (collecting cases). Finally, Plaintiffs identified a number of courts that had questioned the existence of any judicial authority to issue this sort of FOIA remedy. *Id.* at 4-8 (collecting cases). Even so, on October 30, 2023, the district court extended ATF's Motion for Protective Order. That order did not address most of the arguments raised by Plaintiffs in their Opposition, instead focusing on the "temporary" nature of the court's order, "the Court's implied power to issue a temporary protective order," and questioning whether Plaintiffs' "cited cases … apply to *temporary* protective orders." *Id.* at 1, 3 (emphasis in original).

With the district court's "temporary" protective order in place, ATF then moved for summary judgment, arguing that its planned redactions in Production 13 *would have been* appropriate *had they been* made. *See* Dkt. 32. Of course, Plaintiffs did not dispute this, noting only that the redactions *had not* actually been made, and reiterating their position that the only disputed issue between the parties was ATF's motion for a permanent protective order, not summary judgment. *See* Dkt. 33.

For over a year, the district court failed to rule. Then, on February 11, 2025, ATF filed a Notice of Supplemental Authority, requesting the district court to order supplemental briefing on this Court's intervening decision in *HRDC v. U.S. Park Police*, 126 F.4th 708 (D.C. Cir. 2025). *See* Dkt. 35. In response, Plaintiffs filed a Motion to Lift Protective Order on March 12, 2025 (Dkt. 36), explaining that this Court's *HRDC* decision "has squarely rejected the notion that a court holds the 'inherent authority' to impose limitations on the use, dissemination, or reporting of inadvertently disclosed FOIA materials...." *Id.* at 6-7. The same day, the district court broke its nearly 16-month silence, ordering supplemental briefing "on the effect of the D.C. Circuit's opinion … on defendant's pending motion for summary judgment...." Minute Order, No. 1:21-cv-02919-ABJ (D.D.C. Mar. 12, 2025).

After the parties engaged in that further briefing (Dkts. 37, 38, 39, 40), in an April 11, 2025 minute order, the district court finally ordered ATF to file under seal

5

the entirety of its unredacted Production 13.  *See* Minute Order, No. 1:21-cv-02919-ABJ (D.D.C. Apr. 11, 2025).  The district court then resumed its silence.

On July 9, 2025, Plaintiffs petitioned this Court for a writ of mandamus to the district court, in an effort to compel rulings on the parties' aging motions.  *See In re Gun Owners of America, Inc., et al.*, No. 25-5251 (D.C. Cir.).  Shortly thereafter, on July 23, 2025, the district court issued its Memorandum Opinion and Order (Dkts. 42, 43)[2] on ATF's motion for summary judgment, granting it and denying as moot Plaintiffs' motion to lift the "temporary protective order."  *Gun Owners of Am., Inc. v. BATFE*, 2025 U.S. Dist. LEXIS 141059, at *41 (D.D.C. July 23, 2025) ("Op.").  In its opinion, the district court concluded that "all the information marked for redaction in the inadvertent production falls properly within a FOIA exemption," something Plaintiffs never disputed.  *Id.* at *13.  Add.009.  The district court then replaced its prior invocation of "*inherent* authority" – which this Court repudiated in *HRDC* – with a new invocation of "*equitable* authority to grant ATF's requested relief to bar plaintiffs from using or disseminating the inadvertently produced information," finding this Court's recent *HRDC* decision "does not control the instant suit...."  *Id.* at *13-14 (emphasis added).  Add.009.  Finally, the district court concluded that its Order imposed no prior restraint on Plaintiffs' First Amendment rights, on the theory that Plaintiffs would have had "no first amendment *right of*

---

[2] Attached hereto as Add.001 to Add.031.

*access*" to the inadvertently produced material, and so Plaintiffs could properly be restrained from *using* the information to which Plaintiffs did not *need* access – because Defendant had given it to them. *Id.* at *39-41 (emphasis added). Add.029.

Plaintiffs timely appealed the district court's Order to this Court.

## ARGUMENT

## I.     STANDARD OF REVIEW.

The "issuance of a stay is left to the court's discretion...." *Nken v. Holder*, 556 U.S. 418, 434 (2009). In deciding to issue a stay, a court must consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies," with the "first two factors" being "the most critical." *Id.*; *see also* Circuit Rule 8(a)(1). When the "Government is the opposing party," the third and fourth factors merge. *Nken*, 556 U.S. at 435.

## II.     THIS COURT SHOULD STAY THE DISTRICT COURT'S ORDER.

### A. Plaintiffs Are Likely to Succeed on the Merits.

#### 1.  This Court's *HRDC* Decision Controls This Case.

Recently in *HRDC v. U.S. Park Police*, 126 F.4th 708 (D.C. Cir. 2025), a panel of this Court unanimously reversed a district court's invocation of "inherent authority to manage judicial proceedings as justification to issue a clawback order

for … erroneously produced" FOIA records. *Id.* at 712. Specifically, this Court rejected the notion that a court has authority to "bar [Plaintiffs] from disclosing, disseminating, or making use of the accidentally produced" FOIA materials. *Id.* at 715. Indeed, such creation of a "non-statutory remedy" for "inadvertent disclosures [i]s not a valid exercise of inherent judicial authority" or necessary to "manage judicial proceedings." *Id.* at 712. At bottom, FOIA "does not provide for the compelled return or destruction of inadvertently produced information," and there simply is no "'implied' or inherent judicial power to create a mechanism for doing so." *Id.* at 717.

But the district court thought otherwise. Asserting that *HRDC* is distinguishable, the district court observed that this Court's opinion examined "whether the lower court had the authority to issue the clawback order at all," and so *HRDC* did not "decid[e] whether Exemption 6 applied...." Op. at *29. Add.021. Purporting to contrast the facts here, the district court noted that it *had* analyzed the FOIA exemptions, which "plaintiffs … did not contest," and which the district court found to be proper. *Id.* Add.021. Thus, because this case involves properly invoked FOIA exemptions (even though they were not made), the district court found *HRDC* not only distinguishable, but that it "does not control" at all. *Id.* at *30. Add.022.

But that conflates the two distinct issues *HRDC* considered. First, *HRDC* examined Exemption 6 in the context of officer names that had been withheld, noting

8

that the agency had "not satisfied its burden" with respect to that portion of the FOIA production. *HRDC*, 126 F.4th at 715. Accordingly, this Court ordered the names be produced. *Id.* at 717. Second, *HRDC* examined "the district court's clawback order" as it pertained to "two settlement claimants" that had been accidentally released. *Id.* In other words, (i) the application of a FOIA Exemption 6 to *redacted officer names* and (ii) clawback of *inadvertently produced claimant names* were entirely separate issues, which the district court conflated to support its Order.

The district court asserted that *HRDC*'s purported failure to analyze Exemption 6 "only to the 'officer names' … [and] not the private claimants' names" presents a "problem with applying *HRDC*" here. Op. at *29 (concluding that it is "not clear" that *HRDC*'s clawback discussion reaches "properly … exempt … information"). Add.021. Of course, this Court did not reach the Exemption 6 issue because FOIA's exemptions were *entirely irrelevant* to the analysis. Because the records *had been disclosed*, any analysis of exemptions was superfluous, because the agency could not "'put the proverbial cat back in the bag.'" *HRDC*, 126 F.4th at 718. *HRDC*'s plain holding is not so easily avoidable as the district court would like.

The district court next claimed that, while the *HRDC* plaintiffs "disput[ed]" the agency's withholdings, here "plaintiffs did not contest" them. Op. at *41. Add.029. But again, that merely illustrates the court's conflation of the issues.

9

*HRDC* found "that the Park Police failed to support its withholdings" (*id.* at *29) in the context of *officer names* that *had been withheld*, not *claimant names* that *had been produced*. Again, there was simply no need for this Court in *HRDC* to analyze possible exemptions for information that *already had been released*.

Finally, the district court claimed that "*HRDC* specifically carved Exemption 3 out of its ruling...." Op. at *30. Add.021-022. Noting that "*the majority of* the information that plaintiffs seek to retain … falls under Exemption 3,"[3] the district court found it appropriate to "grant[] relief as to the Exemption 3 information...." *Id.* (emphasis added). Add.021. But even if that were so, the district court merely found that *HRDC* "does not bar" its Order as to Exemption 3 information. *Id.* Add.018. The district court never conducted any further analysis of why such an order as to Exemption 3 information is *appropriate* – and *HRDC* certainly did not conclude that it would be. What is more, the plain terms of the district court's Order sweep far beyond that, ordering Plaintiffs not to use <u>any</u> of "the unredacted portions of the records produced in defendant's thirteenth production," not merely information falling under Exemption 3. *Id.* at *41. Add.030.

---

[3] As Plaintiffs explained in prior briefing, "Exemption 3 redactions appear on only 38 of the 115 pages of Defendant's production...." Dkt. 36 at 5. But the district court's order applies to *all* the pages.

Contrary to the district court's conclusions otherwise, this Court's *HRDC* decision squarely forecloses the sort of FOIA gag order issued below, and Plaintiffs are likely to succeed on this basis alone.

## 2. The District Court Lacked the "Equitable Authority" to Gag Plaintiffs' Speech.

Despite acknowledging that "no court in this district has invoked its equitable power to bar a plaintiff" from using inadvertently produced FOIA material before,[4] the district court opted to break new ground.  Op. at *31.  Add.022.  Acknowledging that *HRDC* found no "inherent authority" under FOIA to clawback negligently disclosed information under FOIA, the district court instead invoked its purported "equitable authority under FOIA" to accomplish the very same thing.  *Id.* at *26, *14.  Add.022, Add.009.

But the district court's novel finding fails under *HRDC*'s own terms.  This Court made clear that any sort of clawback "cannot be squared with the terms of FOIA" or its "structure," and there is no judicial power "to fill a perceived hole in the FOIA statute by enabling the government to put the proverbial cat back in the bag."  *HRDC*, 126 F.4th at 719, 718.  The district court's whack-a-mole use of "equitable authority" – instead of "inherent authority" – is precisely the sort of

---

[4] Indeed, Judge Moss opined that such an action would be "extraordinary," and refused to take it.  *100Reporters v. U.S. Dep't of State*, 602 F. Supp. 3d 41, 84 (D.D.C. 2022).

statutory gap-filling that *HRDC* already repudiated.  Indeed, "neither FOIA nor any inherent judicial authority enables [an agency] to seek a court order to limit the effects of its error.  *Nothing* suggests the agency acquires an otherwise absent clawback remedy just because a FOIA requester resorts to litigation to enforce an unfulfilled FOIA entitlement." *Id.* at 719 (emphasis added).  But where *HRDC* found "nothing," the district court found something, invoking some purported "equitable authority" to "'fashion remedies under FOIA.'"  Op. at *35.  Add.025.  This relief "cannot be squared with the terms of FOIA."  *HRDC*, 126 F.4th at 719.

The district court's reliance on equitable principles teased from earlier cases involving different issues (*id.* at *31-35), to conclude that *HRDC* is inapposite, was plain error.  Indeed, as this Court expressly noted, regardless of prior forms of relief fashioned under FOIA, a "clawback order is of a different species" from other "judicial powers … necessary to the courts' exercise of their Article III authority...." *HRDC*, 126 F.4th at 718.  That other courts have fashioned other remedies in other situations did not justify the district court in doing the very thing *HRDC* says that courts may not do.[5]

---

[5] The district court's rejection of *HRDC* should come as no surprise. Providing something of a dissenting opinion that was not present in the unanimous *HRDC* panel, the district court "t[ook] issue with the reasoning underlying" portions of *HRDC* that distinguished FOIA cases from traditional "litigation."  Op. at *31 n.6. Add.022.  Then, the district court provided its own "view" that this Court simply "ignore[d]" that FOIA cases *are* in fact "litigation," and so courts *must* have the "inherent authority to manage the case[s] before" them, FOIA cases included.  *Id.*

12

Because the district court lacked the equitable authority to gag Plaintiffs from reporting the news, Plaintiffs are likely to succeed under this Court's precedents.

### 3. The District Court Upheld an Unprecedented and Presumptively Unconstitutional Prior Restraint, in Violation of the First Amendment.

Finally, with respect to the First Amendment, the district court asserted that this "case does not present an unconstitutional prior restraint" because "citizens have no first amendment *right of access* to traditionally nonpublic government information...." Op. at *40 (emphasis added). Add.029. But this conflates the issues. Plaintiffs are not seeking to enforce some "right of access" *to obtain* government documents. Rather, Plaintiffs *already possess* the documents, because Defendant voluntarily and deliberately gave them to Plaintiffs. Plaintiffs merely seek to report and publish the news about information that is already in their possession.

Nor does it matter that Plaintiffs "did not contest the ATF's claimed FOIA exemptions" or that the district court "found that the information was properly exempt [from FOIA] under the statute." Op. at *41. Add.029. That is a *non sequitur*. Prior restraint cases often (if not *usually*) involve litigants' access to information to which they are not entitled and have no "right of access," and yet

---

Even so, the district court purported to "adher[e] to Circuit authority," claiming that its disagreement did not affect the outcome of this case. *Id.* But *HRDC is* Circuit authority, it controlled the outcome of this case, and it was plain error for this Court to conclude otherwise.

13

which, through no fault of their own, they receive into their possession.  *See N.Y. Times Co. v. United States*, 403 U.S. 713, 714 (1971) (refusing to enjoin publication of the Pentagon Papers after a government employee passed them to the New York Times); *Bartnicki v. Vopper*, 532 U.S. 514, 517 (2001) (refusing to enjoin publication of "speech that discloses the contents of an illegally intercepted communication").

Courts have reiterated this basic principle time and again, squarely foreclosing the district court's novel claim that a hypothetical "right of access" plays any role in the analysis.  Indeed, the U.S. Supreme Court once rejected the notion that "the prior restraint doctrine [is] inapplicable" merely "because [a] videotape was obtained through the 'calculated misdeeds'" of a plaintiff.  *CBS v. Davis*, 510 U.S. 1315, 1318 (1994).  Likewise, the Supreme Court of New Hampshire has explained that, "[e]ven when confidential information has allegedly been obtained *unlawfully* by the publisher, courts have invalidated prior restraints on publication."  *Mortgage Specialists v. Implode-Explode Heavy Indus.*, 999 A.2d 184, 196 (N.H. 2010) (emphasis added) (collecting cases).  If no prior restraint can occur in those situations, it cannot occur here, where Plaintiffs committed no "misdeeds" or "unlawful" actions at all.

In its scant First Amendment analysis, the district court failed to recognize the distinction between publication of information *already possessed* and limitations on access to *new information*.  *See Phila. Newspapers, Inc. v. Jerome*, 387 A.2d 425,

433 (Pa. 1978) ("The distinction between restraints upon the content of publication and limitations upon access is well established.").  Indeed, courts routinely hold that, once members of the press *obtain* information, preventing publication of that information is "[a] prior restraint … and is presumed unconstitutional."  *Id.* at 432.  Thus, when the press *obtained* the name and photograph of a juvenile in *Okla. Publ'g Co. v. Dist. Ct.*, 430 U.S. 308 (1977), the Court could not prohibit their subsequent publication.  But when prison regulations restricted press interviews with prisoners in the first instance in *Pell v. Procunier*, 417 U.S. 817 (1974), the Court upheld the regulations under the First Amendment, noting that they did not prohibit publication of any material the press *did in fact* obtain.  Contrary to these settled precedents, Plaintiffs have been gagged from reporting on what they already have obtained from ATF – not what they wish they could have obtained.

Notwithstanding the district court's curious conclusion that its Order could not possibly "present an unconstitutional prior restraint" (Op. at *40, Add.029), the Supreme Court has explained that the term "'prior restraint' is used 'to describe … judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur.' … Temporary restraining orders and permanent injunctions – *i.e.*, court orders that actually forbid speech activities – are classic examples of prior restraints."  *Alexander v. United States*, 509 U.S. 544, 550 (1993).  Contrary to the district court's denials, its Order is quintessentially a prior

15

restraint – the Supreme Court has said so unequivocally.  And as Judge Moss explained, to grant the government's similar demand to "return or destroy" inadvertently produced FOIA materials (*i.e.*, to effectively ban their *use*), which plaintiffs "obtained through no unlawful or improper action," would be an "extraordinary step."  *100Reporters v. U.S. Dep't of State*, 602 F. Supp. 3d 41, 84 (D.D.C. 2022).  The district court would appear to be the first (at least in this Circuit)[6] to approve of such an "extraordinary" remedy, in a case with far lesser national security import – *none*.

Of course, prior restraints are among the most heavy-handed restrictions on expressive rights, in that they prevent speech from ever occurring.  *See Bd. of Trs. of Leland Stanford Junior Univ. v. Sullivan*, 773 F. Supp. 472, 474 (D.D.C. 1991) (noting that "a prior restraint on speech … allows the government to suppress the dissemination of information in advance of publication").  Accordingly, "[p]rior restraints are permitted 'only in exceptional cases,'" *id.* (quoting *Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 716 (1931)), because generally, "[e]ven a restraint of speech for a limited period is inconsistent with the First Amendment."  *Id.* n.7; *see also Capital Cities Media, Inc. v. Toole*, 463 U.S. 1303, 1304 (1983) (Brennan, J., in chambers) ("It is clear that even a short-lived 'gag' order in a case of widespread

---

[6] In *Rocky Mountain Wild, Inc. v. U.S. Forest Serv.*, 56 F.4th 913 (10th Cir. 2022), the Tenth Circuit affirmed a district court's FOIA clawback order without any First Amendment analysis.

16

concern to the community constitutes a substantial prior restraint and causes irreparable injury to First Amendment interests as long as it remains in effect."). Thus, a court order "[p]rohibiting the publication of a news story or an editorial" is a prior restraint and thus "the essence of censorship."  *In re Providence Journal Co.*, 820 F.2d 1342, 1345 (1st Cir. 1986).  That is precisely what the district court ordered below, and Plaintiffs are likely to succeed on the merits against this presumptively unconstitutional prior restraint.

### B.  Plaintiffs Will Be Irreparably Harmed Absent a Stay.

Absent a stay, Plaintiffs suffer serious and irreparable constitutional harm.  It is black-letter law that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Neb. Press Ass'n v. Stuart*, 423 U.S. 1327, 1329 (1975) ("Where … a direct prior restraint is imposed upon the reporting of news by the media, each passing day may constitute a separate and cognizable infringement of the First Amendment.").[7]  And "[w]hatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that

---

[7] *See also N.Y. Times Co. v. United States*, 403 U.S. 713, 714-15 (1971) (Black, J., concurring) ("[T]he Government's case against the Washington Post should have been dismissed and … the injunction against the New York Times should have been vacated without oral argument when the cases were first presented to this Court.  I believe that every moment's continuance of the injunctions against these newspapers amounts to a flagrant, indefensible, and continuing violation of the First Amendment.").

17

a major purpose of that Amendment was to protect the free discussion of governmental affairs." *Mills v. Alabama*, 384 U.S. 214, 218 (1966). Indeed, "[t]he Constitution specifically selected the press … to play an important role in the discussion of public affairs," and "to serve as a powerful antidote to any abuses of power by governmental officials and as a constitutionally chosen means for keeping officials elected by the people responsible to all the people whom they were selected to serve." *Id.* at 219.

Contrary to these basic principles, the district court has ordered Plaintiffs not to "disseminate, disclose, or use for any purpose those portions of the records" that the government voluntarily gave them but now would prefer not to be published. Op. at *41-42. Add.030. There is no question that Plaintiffs' First Amendment right quite literally to *print the news* has been abridged, which demonstrates that Plaintiffs' harm is irreparable and ongoing. *See Elrod*, 427 U.S. at 373.

In *Green v. Miss USA, LLC*, 52 F.4th 773 (9th Cir. 2022), the Ninth Circuit explained the necessity of quickly deciding First Amendment issues like the one presented here:

> As recognized in *Sullivan* and countless other cases, the First Amendment's protections extend to not only unconstitutional laws, but also to unnecessary litigation that chills speech. This is why federal courts have emphasized the *importance of resolving First Amendment cases at the earliest possible junction*. As the D.C. Circuit explained:
> > In the First Amendment area, summary procedures are even more essential. For the stake here, if harassment succeeds, is free debate.... Unless persons … desiring to

18

> exercise their First Amendment rights are assured freedom
> from the harassment of lawsuits, they will tend to become
> self-censors.
>
> *McBride v. Merrell Dow & Pharms. Inc.*, 717 F.2d 1460, 1467, 230 U.S.
> App. D.C. 403 (D.C. Cir. 1983) (citation omitted). Contrary to the
> dissent's speech-hostile version of constitutional avoidance, we follow
> a well-trodden path by reaching and deciding a dispositive First
> Amendment issue that will avoid forcing the parties through
> unnecessary and protracted litigation. [*Id.* at 800 (emphasis added).]

This Court should grant Plaintiffs relief *now*, so that their First Amendment rights are not violated during the pendency of this appeal.

**C. Issuance of a Stay Will Not Substantially Injure Defendant, and It Will Advance the Public Interest.**

Any alleged injury to ATF cannot outweigh Plaintiffs' First Amendment rights, because the "Government's 'policy goals may never triumph over the Constitution.'" *AP v. Budowich*, 2025 U.S. Dist. LEXIS 69980, at *6 (D.D.C. Apr. 11, 2025). Because the final stay factors merge when "the Government is the opposing party," *Nken v. Holder*, 556 U.S. 418, 435 (2009), ATF's "harm and the public interest are one and the same, because the government's interest *is* the public interest." *Pursuing America's Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016) (emphasis in original). And "there is always a strong public interest in the exercise of free speech rights otherwise abridged by an unconstitutional regulation...." *Id.*

Defendant cannot credibly argue to the contrary, as Plaintiffs already have disavowed any interest in publicizing sensitive information like Social Security

numbers, ATF contact information, confidential informants, and the like.[8]  Dkt. 33 at 22-24; Dkt. 36 at 5 n.5.  The equitable factors militate in favor of a stay.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court stay the Order of the district court pending resolution of this appeal.

Dated: August 26, 2025                              Respectfully submitted,

<u>*/s/ Robert J. Olson*</u>                                        <u>*/s/ Stephen D. Stamboulieh*</u>
Robert J. Olson                                            Stephen D. Stamboulieh
WILLIAM J. OLSON, P.C.                         Stamboulieh Law, PLLC
370 Maple Avenue West, Ste. 4               P.O. Box 428
Vienna, VA 22180                                      Olive Branch, MS 38654
T: (703) 356-5070                                        T: (601) 852-3440
rob@wjopc.com                                          stephen@sdslaw.us

---

[8] The district court conducted no analysis of Plaintiffs' harms versus any public interest that may exist in barring Plaintiffs' use of the unredacted material. *See* Dkt. 33 at 11.  That was plain error.

20

**CERTIFICATE OF COMPLIANCE**

I hereby certify that:

1. This Motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because this Petition contains 4,763 words, excluding parts of the Motion exempted by Fed. R. App. P. 32(f).

2. This Motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Stephen D. Stamboulieh*
Stephen D. Stamboulieh

21

## CIRCUIT RULE 8 NOTIFICATION

Pursuant to Circuit Rule 8(a)(2), I, Stephen D. Stamboulieh, certify that, on August 26, 2025, I contacted Sean Tepe, counsel for Defendant-Appellee, at 9:47 AM by telephone, and advised that Plaintiffs-Appellants would be filing this Motion for a Stay Pending Appeal and inquired whether he would accept service by electronic means.   Mr. Tepe stated he would accept service of the Motion by electronic mail.

*/s/ Stephen D. Stamboulieh*
Stephen D. Stamboulieh

22

## CERTIFICATE OF SERVICE

I hereby certify that, on August 26, 2025, a copy of the foregoing Emergency Motion for a Stay Pending Appeal filed utilizing this Court's CM/ECF system, which generated a notice of electronic filing and provided a copy of the foregoing to all counsel of record.

Additionally, a copy of the foregoing was served via United States Postal Service, Priority Mail Express and via electronic mail, upon the following:

Sean Michael Tepe, Esq.
Assistant United States Attorney
United States Department of Justice
601 D Street, NW
Washington, DC 20530
sean.tepe@usdoj.gov

*/s/ Stephen D. Stamboulieh*
Stephen D. Stamboulieh

23