---

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

GUN OWNERS OF AMERICA, INC., and GUN OWNERS FOUNDATION,

Plaintiffs-Appellants,

v.

BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES,

Defendant-Appellee.

———————————

On Appeal from the United States District Court
for the District of Columbia
No. 1:21-cv-02919-ABJ
Hon. Amy Berman Jackson

———————————

**PLAINTIFFS-APPELLANTS' OPENING BRIEF**

———————————

Robert J. Olson
WILLIAM J. OLSON, P.C.
370 Maple Avenue West, Ste. 4
Vienna, VA 22180
T: (703) 356-5070
rob@wjopc.com

Stephen D. Stamboulieh
STAMBOULIEH LAW, PLLC
P.O. Box 428
Olive Branch, MS 38654
T: (601) 852-3440
stephen@sdslaw.us

*Attorneys for Plaintiffs-Appellants*
*Gun Owners of America, Inc. and Gun Owners Foundation*

## CERTIFICATE AS TO PARTIES,
## RULINGS, AND RELATED CASES

**Parties**: Appellants Gun Owners of America, Inc. ("GOA") and Gun Owners Foundation ("GOF") hereby certify as follows: GOA and GOF are Plaintiffs in the district court and Appellants in this Court. GOA and GOF have no parent corporations and no publicly held corporation owns any portion of either of them.

The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") is the Defendant in the district court and the Appellee here. No amici or intervenors appeared in the district court and none yet has appeared in this proceeding.

**Rulings**: The district court granted summary judgment for ATF on July 23, 2025. *See* Doc. 42, App.042 (Opinion), Doc. 43, App.071 (Order).

**Related Cases**: To the knowledge of Appellants' counsel, there are no cases related to this one for purposes of this disclosure.

/s/ *Stephen D. Stamboulieh*
Stephen D. Stamboulieh

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES……………………………………………………………v

GLOSSARY OF TERMS……………………………………………………………ix

JURISDICTIONAL STATEMENT………………………………………………...1

STATEMENT OF ISSUES…………………………………………………………1

STATUTES AND REGULATIONS………………………………………………..1

STATEMENT OF THE CASE…………………………………………...………...3

SUMMARY OF ARGUMENT…………………………………………………..7

STANDARD OF REVIEW……………………...………………………………..10

INTRODUCTION……………………………………………...……………...11

ARGUMENT

I.  THE DISTRICT COURT HAD NO "EQUITABLE AUTHORITY"
    TO GAG PLAINTIFFS' SPEECH………………………………………13

    A. The District Court's Circumvention of *HRDC* Fails on Its Own Terms……13

    B. FOIA Provides No "Equitable Authority" to Enjoin a FOIA *Requester*……16

    C. A Court's Use of Equitable Authority Must Be Tied to Enforcing a Legal
       Right or Remedying a Legal Wrong………………………………………...21

    D. Numerous Courts Have Questioned the Authority Invoked Here………….25

    E. The District Court Issued a Permanent Injunction Without
       Analyzing the Four-Factor Test that Courts "Must" First Apply…….…..…27

II. THE DISTRICT COURT'S PRIOR RESTRAINT VIOLATES
    PLAINTIFFS' FIRST AMENDMENT PRESS RIGHTS…………………..28

A. The First Amendment's Guarantee of a Free Press Is "Inviolable.".….……29

B. Prior Restraints Can Rarely (if Ever) Be Justified……………………….30

C. ATF's Disclosure *During* FOIA Litigation Does Not Change the Analysis…34

    1. Plaintiffs Do Not Seek a "Right of Access" to Information
       They Already Possess…………………………………………………..34

    2. FOIA Productions Are Required by Statute, Not Court Order………39

D. Plaintiffs Unquestionably Are Members of the Press…………..………..42

E. First Amendment Rights Override Any Claim of FOIA Exemption………..44

F. Defendant Cannot Articulate the Harm Publication Would Cause, Much Less
Identify Some "Direct, Immediate, and Irreparable Damage to Our Nation or
Its People.".…………………………………………………………………46

G. The District Court's Prior Restraint Should Be Ended
Immediately………..………………………………………………………48

CONCLUSION.…………………………………………………….………......51

# TABLE OF AUTHORITIES

## U.S. Constitution

Amendment I…………..1, 4, 7, 9, 12, 13, 24, 26, 28, 29, 31, 34, 37, 39, 42, 44, 45, 46, 47, 48, 49, 51

## Statutes

118 Stat. 95 ....................................................................................................4

5 U.S.C. § 552 ........................................................................................ 18, 19

5 U.S.C. § 552(a)(3)(A) ..................................................................... 2, 22, 40

5 U.S.C. § 552(a)(4)(B) ............................................................... 1, 2, 17, 20

5 U.S.C. § 552(b)(1)(A) ..................................................................... 2, 23, 38

18 U.S.C. § 926(a) .........................................................................................4

18 U.S.C. § 922(t)(2)(C) ...............................................................................4

34 U.S.C. § 40901 .........................................................................................4

Va. Code § 59.1-443.2 ............................................................................ 46, 47

## Cases

*100Reporters v. U.S. Dep't of State*, 602 F. Supp. 3d 41 (D.D.C. 2022) ... 20, 25, 49, 50

*ACLU v. DOD*, 2012 U.S. Dist. LEXIS 194264 (S.D.N.Y. Mar. 20, 2012) ...........37

*Alexander v. United States*, 509 U.S. 544 (1993) ..............................................11, 49

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963)................................................31

*Bartnicki v. Vopper*, 532 U.S. 514 (2001) ...............................................................36

*Bd. of Trs. of Leland Stanford Junior Univ. v. Sullivan*, 773 F. Supp. 472 (D.D.C. 1991) ...................................................................................................... 30, 36

*Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179 (2022) ......................28

*Branzburg v. Hayes*, 408 U.S. 665 (1972) ..............................................................44

*Buckley v. Valeo*, 424 U.S. 1 (1976).......................................................................30

*Burstyn v. Wilson*, 343 U.S. 495 (1952) ................................................................31

*Capital Cities Media, Inc. v. Toole*, 463 U.S. 1303 (1983)...................................48

*CBS v. Davis*, 510 U.S. 1315 (1994)......................................................................36

*Chiquita Brands Int'l, Inc. v. SEC*, 805 F.3d 289 (D.C. Cir. 2015) ........................41

*Chrysler Corp. v. Brown*, 441 U.S. 281 (1979) .....................................................23

*Cowan v. FCC*, 2022 U.S. Dist. LEXIS 166363 (D.D.C. Sept. 15, 2022) ....... 39, 46

*Cox Broad. Corp. v. Cohn*, 420 U.S. 469 (1975) ....................................................45

*CREW v. DOJ*, 846 F.3d 1235 (D.C. Cir. 2017) ............................................. 18, 20

*Degen v. United States*, 517 U.S. 820 (1996) ........................................................17

*Dellinger v. Bessent*, 768 F. Supp. 3d 33 (D.D.C.) ...............................................28

*Doe v. Mattis*, 889 F.3d 745 (D.C. Cir. 2018) .......................................................27

*Duke Power Co. v. Greenwood County*, 91 F.2d 665 (4th Cir. 1937).....................21

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006)................................... 27, 28

*Edwards v. District of Columbia*, 755 F.3d 996 (2014) .........................................10

*Elrod v. Burns*, 427 U.S. 347 (1976)......................................................................48

*Fla. Star v. B.J.F.*, 491 U.S. 524 (1989)......................................................... 38, 50

*Freeman v. Pitts*, 503 U.S. 467 (1992)..................................................................22

*Griswold v. Connecticut*, 381 U.S. 479 (1965)......................................................34

*Grupo Mexicano de Desarrollo v. Alliance Bond Fund*, 527 U.S. 308 (1999) 22, 23

*HRDC v. U.S. Park Police*, 126 F.4th 708 (D.C. Cir. 2025).... 5, 6, 8, 10, 13, 14, 15, 16, 17, 21, 22, 23, 26, 39, 40, 41, 42, 44, 46, 48

*In re Providence Journal Co.*, 820 F.2d 1342 (1st Cir. 1986) .......................... 13, 48

*In re Rafferty*, 864 F.2d 151 (D.C. Cir. 1988)........................................................42

*Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123 (1951) ...................22

*Jud. Watch, Inc. v. DOJ*, 365 F.3d 1108 (D.C. Cir. 2004).....................................30

*Kennecott Utah Copper Corp. v. U.S. DOI*, 88 F.3d 1191 (D.C. Cir. 1996) ...........20

*McGehee v. Casey*, 718 F.2d 1137 (D.C. Cir. 1983)........................................ 35, 36

*Memphis Publ'g Co. v. FBI*, 879 F. Supp. 2d 1 (D.D.C. 2012) ........................ 15, 16

*Morley v. CIA*, 508 F.3d 1108 (D.C. Cir. 2007) .....................................................18

*Mortgage Specialists v. Implode-Explode Heavy Indus.*, 999 A.2d 184 (N.H. 2010)......................................................................................................36

*N.Y. Times Co. v. United States*, 403 U.S. 713 (1971) . 17, 26, 27, 29, 30, 31, 32, 33, 35, 38, 46

*Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157 (2004) ....................... 21, 23

*Nat'l Inst. of Family & Life Advocs. v. Becerra*, 585 U.S. 755 (2018)...................34

*Nat'l Press Club Journalism Inst. v. ICE*, 2023 U.S. Dist. LEXIS 229953 (D.D.C. Dec. 28, 2023) ...................................................................................................25

*Near v. Minnesota ex rel. Olson*, 283 U.S. 697 (1931). 24, 29, 31, 32, 33, 37, 40, 45

*Neb. Press Ass'n v. Stuart*, 423 U.S. 1327 (1975) .................................................47

*Neb. Press Ass'n v. Stuart*, 427 U.S. 539 (1976) ............................................. 13, 47

*Okla. Publ'g Co. v. Dist. Ct.*, 430 U.S. 308 (1977) ...............................................37

*P&G v. Bankers Tr. Co.*, 78 F.3d 219 (6th Cir. 1996) ............................................49

*Payne Enters., Inc. v. United States*, 837 F.2d 486 (D.C. Cir. 1988) ............... 18, 20

*Pell v. Procunier*, 417 U.S. 817 (1974) .....................................................................37

*Phila. Newspapers, Inc. v. Jerome*, 387 A.2d 425 (Pa. 1978) ..................................37

*Pub. Citizen Health Rsch. Grp. v. FDA*, 953 F. Supp. 400 (D.D.C. 1996) ..............39

*Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1 (1974) ..... 18, 19, 21, 22

*Robb v. Lock Haven Univ. of Pa.*, 2019 U.S. Dist. LEXIS 76762 (M.D. Pa. May 7, 2019) ................................................................................................................34

*Rocky Mountain Wild, Inc. v. U.S. Forest Serv.*, 56 F.4th 913 (10th Cir. 2022) 21, 49

*Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546 (1975) .............................................10

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984) ............................. 35, 39, 40, 41

*Sierra Club v. EPA*, 505 F. Supp. 3d 982 (N.D. Cal. 2020) ................. 20, 36, 46, 49

*Smith v. Daily Mail Pub. Co.*, 443 U.S. 97 (1979) ..................................... 32, 41, 45

*Smith v. Lanier*, 726 F.3d 166 (D.C. Cir. 2013) ......................................................22

*Stonehill v. IRS*, 558 F.3d 534 (D.C. Cir. 2009) ......................................................41

*Students Against Genocide v. Dep't of State*, 257 F.3d 828 (D.C. Cir. 2001) ..........25

*Times-Picayune Publ'g Corp. v. Schulingkamp*, 419 U.S. 1301 (1974) .......... 40, 41

*United States v. Progressive, Inc.*, 467 F. Supp. 990 (W.D. Wis. 1979) ..................37

*United States v. Rahimi*, 602 U.S. 680 (2024) .........................................................24

*United States v. Smith*, 123 F.3d 140 (3d Cir. 1997) ...................................... 37, 41

*Wright v. FBI*, 613 F. Supp. 2d 13 (D.D.C. 2009) ...................................................29

**Other Authorities**

@GunFoundation, <u>X</u> (July 25, 2025) ........................................................................43

@GunOwners, <u>X</u> (Apr. 10, 2025) ............................................................................43

@gunownersofamerica, <u>Instagram</u> (May 9, 2025) ...................................................43

Annals of Cong. (1789) ..............................................................................................29

*Chairman Paul Seeks Information from ATF on Secret Firearm Surveillance Program*, <u>U.S. Senate Comm. on Homeland Sec. & Governmental Affs.</u> (Apr. 10, 2025) .............................................................................................................43

Continental Cong., A Letter to the Inhabitants of the Province of Quebec (Oct. 26, 1774) ..............................................................................................................30

Emily Miller, *EXCLUSIVE: ATF Gains Financial Information on Potential Gun Buyers for Warrantless Tracking, Documents Show*, <u>Epoch Times</u>, (Mar. 23, 2023) ...................................................................................43

Emily Miller, *EXCLUSIVE: FBI Carried Out Warrantless Monitoring on Man Who Posted Guns for Sale on Facebook*, <u>Epoch Times</u>, (July 25, 2023) ...........43

Emily Miller, *EXCLUSIVE: GOA Exposes ATF for Using Financial Info to Block Gun Purchases*, <u>GOA</u> (Mar. 14, 2023) ...................................................................42

Erich Pratt, *GOA Activists Play Major Role in Repealing Gun Control*, <u>The Gun Owners</u> (May/June 2024) ...................................................................43

Erich Pratt, *Gun Owners Aren't Criminals: It's Time to Dismantle NICS Monitoring*, <u>DailyWire+</u> (May 5, 2025) ...................................................................43

*FBI NICS Monitoring Scandal*, <u>GOF</u>, (Oct. 12, 2025) ...........................................42

*FBI Weaponizes Background Checks to Enforce California Gun Ban*, <u>ZeroHedge</u> (Apr. 1, 2025) ...................................................................43

*FOIA Legislative Materials*, <u>DOJ OIP</u> (July 2, 2024) ...................................................27

GOA, *Background Checks Now Report Addresses of Gun Owners*, <u>YouTube</u> (Sept. 28, 2022) ...................................................................43

GOA, <u>Facebook</u> (May 9, 2025) ...................................................................43

GOA, *FBI Weaponized Background Checks to Enforce California Gun Ban*, <u>YouTube</u> (Apr. 2, 2025) ...................................................................43

GOF, <u>Facebook</u> (Apr. 6, 2023) ...................................................................43

GOF, *The Entire System Is Broken*, <u>YouTube</u> (Apr. 5, 2023) ...................................................43

John Crump, *ATF & FBI Monitor Over 1,000 Law-Abiding Gun Owners*, <u>GOA</u> (Oct. 22, 2021) ...................................................................42

John Crump, *ATF Attempts to Silence Gun Owners of America*, <u>GOA</u> (Oct. 16, 2023) ...................................................................42

John Crump, *Leaked Document Shows ATF Spying on Gun Buyers Through NICS ~ VIDEO*, <u>AmmoLand</u> (Apr. 26, 2021) ...................................................................43

Lisa Greene, *ATF Faces Backlash After Memo Reveals Program Tracking Legal Gun Owners*, <u>MSN</u> (Apr. 30, 2025) ...................................................................44

Lisa Greene, *GOA Exposes FBI's Abuse of NICS Monitoring System Tracking Gun Owners*, <u>MSN</u> (Apr. 7, 2025) ...................................................................43

Motion Hearing Transcript, *United States v. Hoover*, No. 3:21-cr-00022-MMH-MCR (M.D. Fla. Aug. 14, 2023) ...................................................................50

<u>Papers of Thomas Jefferson</u> (J. Boyd ed. 1954) ...................................................................30

William Blackstone, <u>Commentaries on the Laws of England</u> (1769) .....................33

# GLOSSARY OF TERMS

ATF – Bureau of Alcohol, Tobacco, Firearms and Explosives

FBI – Federal Bureau of Investigation

FOIA – Freedom of Information Act

GOA – Gun Owners of America, Inc.

GOF – Gun Owners Foundation

NICS – National Instant Criminal Background Check System

# JURISDICTIONAL STATEMENT

The district court had jurisdiction to hear this case under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331. This Court has appellate jurisdiction from a final order granting summary judgment under 28 U.S.C. § 1291. The district court entered its order on July 23, 2025, granting summary judgment and directing Plaintiffs to "sequester the unredacted portions of the records produced in defendant's thirteenth production" and to "not disseminate, disclose, or use for any purpose those portions of the records." Doc. 43. App.071. This appeal is timely because Plaintiffs filed the notice of appeal on August 25, 2025. Doc. 48. App.073.

# STATEMENT OF ISSUES

1) Whether the district court erred by ordering Plaintiffs to "sequester the unredacted portions of the records produced in defendant's thirteenth production" and to "not disseminate, disclose, or use for any purpose those portions of the records"; and

2) Whether the district court's Order violates Plaintiffs' First Amendment rights.

# STATUTES AND REGULATIONS

## First Amendment

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the

right of the people peaceably to assemble, and to petition the Government for a redress of grievances.


## 5 U.S.C. § 552(a)(3)(A)

Except with respect to the records made available under paragraphs (1) and (2) of this subsection, and except as provided in subparagraph (E), each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person.


## 5 U.S.C. § 552(a)(4)(B)

On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action. In addition to any other matters to which a court accords substantial weight, a court shall accord substantial weight to an affidavit of an agency concerning the agency's determination as to technical feasibility under paragraph (2)(C) and subsection (b) and reproducibility under paragraph (3)(B).


## 5 U.S.C. § 552(b)(1)(A)

This section does not apply to matters that are –

specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order;

**STATEMENT OF THE CASE**

This case arises from Plaintiffs' April 28, 2021 Freedom of Information Act ("FOIA") request to ATF. In it, Plaintiffs sought records related to a secret surveillance program administered by the Federal Bureau of Investigation ("FBI") and utilized by ATF and other federal and state law enforcement agencies to monitor and record the firearm purchases of American citizens.

When ATF failed to respond, Plaintiffs filed suit on November 5, 2021. Over the ensuing months, ATF made a series of 12 document productions to Plaintiffs, which showed in detail how this surveillance program – dubbed the "NICS[1] Monitoring Program" – has been used to surveil, without a warrant and often without even any particularized suspicion at all, thousands of Americans whose firearm transactions are approved by the FBI and who thus are eligible to purchase and possess firearms.

On September 6, 2023, ATF made a thirteenth production to Plaintiffs, the subject of this ongoing dispute. That ATF production contained FOIA redactions that were indicated, but not actually made. When brought to ATF's attention by Plaintiffs' counsel, ATF filed an "expedited" motion seeking a protective order, even though Plaintiffs' counsel represented that no dissemination of the records would

---

[1] NICS stands for the FBI's National Instant Criminal Background Check System ("NICS"), which administers federal background checks for firearm transfers made by Federal Firearms Licensees.

take place pending judicial resolution. Doc. 20. The district court entered a minute order largely granting (purportedly in an interim form) the relief sought by ATF, ordering that, "pending resolution of the motion … plaintiff must sequester the FOIA records … and … shall not disseminate, disclose, or use those records or their contents for any purpose." Minute Order, No. 1:21-cv-02919-ABJ (D.D.C. Sept. 18, 2023). The court did not address Plaintiffs' request to file briefing under seal (Doc. 25 at 6) or to have the court consider the unredacted production *in camera* (*id.* at 4), and denied Plaintiffs' request to clarify the scope of its order. *See* Minute Order, No. 1:21-cv-02919-ABJ (D.D.C. Oct. 5, 2023). Plaintiffs were thus gagged from speaking without the court knowing the content of the speech being gagged or consideration of the First Amendment. *See* Doc. 22 at 2. App.010.

The parties then briefed ATF's Motion for Protective Order (Docs. 28 App.013 and 29). Plaintiffs argued that the NICS Monitoring Program underlying their FOIA request violates several provisions of federal law. *See* Doc. 28 at 11-14. App.23-26 (citing 118 Stat. at 95; 18 U.S.C. §§ 922(t)(2)(C), 926(a); 34 U.S.C. § 40901). Plaintiffs argued that the protective order ATF sought was a presumptively unconstitutional prior restraint on speech and press activity protected under the First Amendment. *Id.* at 18-22. App.030-34 (collecting cases). Finally, Plaintiffs identified a number of courts that had questioned the existence of any judicial authority to issue this sort of FOIA remedy. *Id.* at 4-8, App.016-20 (collecting cases).

On October 30, 2023, the district court extended ATF's Motion for Protective Order. That order did not address most of the arguments raised by Plaintiffs in their Opposition, instead focusing on the "temporary" nature of the court's order, "the Court's implied power to issue a temporary protective order," and questioning whether Plaintiffs' "cited cases … apply to *temporary* protective orders." Doc. 30 at 1, 3, App.036, 038 (emphasis in original).

With that "temporary" protective order in place, ATF moved for summary judgment, arguing that its planned redactions in Production 13 would have been appropriate had they been made. *See* Doc. 32. In response, Plaintiffs did not dispute the planned redactions, noting only that the redactions *had not* actually been made, and reiterating that the only disputed issue between the parties was the legality and constitutionality of ATF's motion for a permanent protective order, not summary judgment on hypothetical FOIA exemptions. *See* Doc. 33.

For over a year, the district court did not rule. Then, on February 11, 2025, ATF filed a Notice of Supplemental Authority, urging supplemental briefing on this Court's intervening decision in *HRDC v. U.S. Park Police*, 126 F.4th 708 (D.C. Cir. 2025). *See* Doc. 35. In response, Plaintiffs filed a Motion to Lift Protective Order on March 12, 2025 (Doc. 36, App.040), arguing that this Court's *HRDC* decision "squarely rejected the notion that a court holds the 'inherent authority' to impose limitations on the use, dissemination, or reporting of inadvertently disclosed FOIA

materials...." *Id.* at 6-7. App.040-41. The same day, the district court broke nearly 16 months of silence, ordering the supplemental briefing Defendant requested. Minute Order, No. 1:21-cv-02919-ABJ (D.D.C. Mar. 12, 2025). After that further briefing (Docs. 37, 38, 39, 40), the district court ordered ATF to file its unredacted Production 13 under seal. *See* Minute Order, No. 1:21-cv-02919-ABJ (D.D.C. Apr. 11, 2025). The district court then resumed its silence.

On July 9, 2025, more than 21 months after the district court's "temporary" protective order had first been issued, Plaintiffs petitioned this Court for a writ of mandamus to the district court, in an effort to compel a ruling on the parties' aging motions. *See In re Gun Owners of America, Inc.*, No. 25-5251 (D.C. Cir.). Days later, the district court issued its Memorandum Opinion and Order (Docs. 42, 43), App.042-72, granting ATF's motion for summary judgment and denying as moot Plaintiffs' motion to lift the "temporary protective order." *See* Doc. 42, App.042 ("Op."). In its opinion, the district court concluded that "all the information marked for redaction in the inadvertent production falls properly within a FOIA exemption." Op. 9. App.050. The district court then replaced its prior invocation of "*implied* authority" – which *HRDC* had repudiated – with a new invocation of "*equitable* authority … to bar plaintiffs from using or disseminating the inadvertently produced information," finding that *HRDC* "does not control...." Op. 9, App.050 (emphasis added). Finally, the district court theorized that its Order imposed no prior restraint

on First Amendment rights, reasoning that Plaintiffs would have had "no first amendment *right of access*" to the inadvertently produced material, and so Plaintiffs could properly be restrained from *using* information Plaintiffs had received. Op. 29, App.070 (emphasis added).

Plaintiffs moved to stay the district court's Order pending appeal (Doc. 44), which Defendant opposed (Doc. 46) and the district court denied on August 22, 2025 (Doc. 47). Plaintiffs then timely appealed the district court's Order to this Court (Doc. 48, App.073). In this Court, Plaintiffs likewise moved for a stay pending appeal, which this Court denied in an October 7, 2025 order setting an expedited schedule for briefing and argument.

## SUMMARY OF ARGUMENT

The district court openly acknowledged that its permanent injunction – imposing a prior restraint on speech, press coverage, and even *private thoughts* about unredacted FOIA materials – is unprecedented within this Circuit. And for good reason. The district court lacked any authority – statutory, "implied," "inherent," "equitable," or constitutional – to issue its order. Indeed, the court's gag order imposes a quintessentially unconstitutional prior restraint on Plaintiffs' First Amendment rights. It contravenes binding precedent several times over, and warrants swift correction by this Court.

Consider the problems with the district court's most recent invocation of some vague "'equitable power' under FOIA" to gag a FOIA requester. Contrary to the district court's insistence, *HRDC v. U.S. Park Police*, 126 F.4th 708 (D.C. Cir. 2025), squarely controlled. *HRDC* repudiated the notion that courts possess *any* authority "under FOIA" – including "inherent" or "implied" powers – to create non-statutory remedies, and the district court's use of a different word ("equitable") to accomplish the same end fails.

Further resisting *HRDC*, the district court emphasized that it had analyzed Defendant's claims of exemption in this case, which purportedly rendered *HRDC* inapposite. But the *HRDC* district court had *also* analyzed the FOIA exemptions, yet this Court found that *irrelevant* to the clawback issue. In other words, *HRDC* is not distinguishable at all. None of the district court's cited authorities stand for a contrary proposition. In fact, they illustrate how *agencies* can be enjoined under FOIA – but not a FOIA *requester*. No amount of post hoc rationalization can justify an inventive remedy the district court was powerless to issue in the first place.

And therein lies the problem with the district court's invocation of "equitable authority" against Plaintiffs. For centuries, courts have understood equity as a tool to vindicate legal *rights* and redress legal *wrongs*. Neither condition is satisfied here. Plaintiffs' mere possession of unredacted records violates no law. And Defendant has no cognizable right – constitutional, statutory, common-law, or otherwise – to

stop Plaintiffs from using materials that Defendant voluntarily gave them. Unsurprisingly then, American courts have been loath *ever* to assert the power to censor the press in a FOIA case. In fact, most courts doubt the existence of such power altogether.

But if the district court were to wield it anyway, then *at least* the proper test should have been applied. Yet despite its issuance of a sweeping permanent injunction against Plaintiffs' use of unredacted FOIA materials, at no point did the district court analyze the equitable four-factor test that courts "must" apply when considering injunctive relief. That was reversible error, all on its own.

This Court likewise should reverse on First Amendment grounds. Unquestionably, the district court's gag order is a prior restraint on members of the press – exactly the sort of heavy-handed censorship that the Founders rejected without exception. Indeed, even the Supreme Court's modern precedents foreclose this gag order. None of the unredacted material implicates national security or contains classified information. And the only risk of harm its publication would pose is to the reputations of the government officials who Plaintiffs caught violating the law. Ironically, coverage and criticism of the government is *precisely* why the Founders ratified the First Amendment.

The district court's red herrings do not change this black-letter First Amendment analysis. It does not matter whether Plaintiffs would have had a "right

*of access*" to the unredacted material, were they seeking its release. Rather, Plaintiffs do not need access, because they *already possess* the records at issue – through no fault of their own. In fact, most prior restraint cases concern *unauthorized* access to material, and courts have invalidated prior restraints even when information was obtained *unlawfully*. Finally, any comparison of FOIA litigation to a court's control over discovery fails. Plaintiffs did not obtain the unredacted material "as a result of" the district court's processes. Rather, as *HRDC* already made clear, FOIA demanded that Defendant disclose documents long before Plaintiffs brought suit.

The district court thumbed its nose at this Court's recent *HRDC* decision, ignored all binding precedent, conjured an entirely new judicial power, and desecrated one of our most carefully guarded constitutional rights. This Court should reverse.

## STANDARD OF REVIEW

This Court "review[s] de novo a district court's grant of summary judgment, viewing all evidence in the light most favorable to the non-moving party." *Edwards v. District of Columbia*, 755 F.3d 996, 1000 (2014). Moreover, a "prior restraint … 'comes to this Court bearing a heavy presumption against its constitutional validity.'" *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558 (1975). And "permanent injunctions – *i.e.*, court orders that actually forbid speech activities –

classic examples of prior restraints." *Alexander v. United States*, 509 U.S. 544, 550 (1993).

## INTRODUCTION

Plaintiffs-Appellants Gun Owners of America, Inc. and Gun Owners Foundation ("Plaintiffs") are nonprofit Second Amendment advocacy organizations dedicated, *inter alia*, to researching and reporting on issues affecting gun owners, including governmental misconduct. A vital part of Plaintiffs' respective missions involves filing Freedom of Information Act ("FOIA") requests with various governmental agencies – and, if necessary, litigating FOIA cases such as this – to ensure that the government is complying with the U.S. Constitution and federal law. GOA often reports on the results of its FOIA requests, not only through conventional media outlets but also through its own newsletters, email alerts, and on numerous social media platforms.

Unfortunately, documents produced in this FOIA case have revealed a pervasive *non*compliance with constitutional and statutory protections: a clandestine surveillance program that warrantlessly tracks the firearm purchases of American citizens, usually without probable cause and often without any particularized suspicion of criminal activity at all. Members of the American public have no means of verifying whether they are being or have been surveilled under this program and,

either way, there is no appeal process. Thus, this surveillance scheme is accountable to no one, and the public has a right to know more.

But rather than being free to report on the true extent of this program as both the Framers of the First Amendment and the drafters of FOIA intended, Plaintiffs have been muzzled by a federal court's so-called "protective order" since 2023. On July 23, 2025, the district court finalized its gag order by permanently restraining Plaintiffs' speech and press coverage of unredacted FOIA material produced voluntarily to Plaintiffs by Defendant-Appellee Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF" or "Defendant"). Instead of acknowledging the severity of its prior restraint on constitutionally protected activity, the district court couched its prior restraint under some imagined "equitable" power "under FOIA," on the theory that Plaintiffs never had a constitutional right of access to the information in the first place.

Thus, what began as a "temporary" protective order has now been formalized as a permanent injunction ordering Plaintiffs (and their lawyers) not to "disseminate, disclose, or use for any purpose those portions of the records" at issue. This sweeping injunction reaches beyond Plaintiffs' publication of the FOIA documents themselves. It reaches even undersigned counsel's *memories* from an initial review of the records prior to entry of the district court's gag order. And it impedes Plaintiffs' ability to report the news and publish ideas critical of surreptitious

governmental activity – none of which threatens national security, involves classified information, or risks any identified harm at all, other than the reputations of government agencies.

Plaintiffs therefore appeal the district court's prior restraint, which is "the most serious and the least tolerable infringement on First Amendment rights," *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976), and "the essence of censorship." *In re Providence Journal Co.*, 820 F.2d 1342, 1345 (1st Cir. 1986). It never should have been issued, and this Court should reverse.

## ARGUMENT

## I. THE DISTRICT COURT HAD NO "EQUITABLE AUTHORITY" TO GAG PLAINTIFFS' SPEECH.

### A. The District Court's Circumvention of *HRDC* Fails on Its Own Terms.

In *HRDC v. U.S. Park Police*, 126 F.4th 708, 719 (D.C. Cir. 2025), this Court explained that, "if [an] agency … fails to make intended redactions, neither FOIA nor any inherent judicial authority enables it to seek a court order to limit the effects of its error." Resisting *HRDC*'s clear import, the district court noted that *HRDC* examined only "whether the lower court had the authority to issue the clawback order at all" and did not first "decid[e] whether Exemption 6 applied...." Op. 21. App.062. Purportedly in contrast here, the district court theorized that it *had* analyzed the FOIA exemptions, which "plaintiffs … did not contest," and which the

district court ultimately found to be valid. *Id.* Thus, the district court rationalized, because this case involves properly invoked, *post hoc* FOIA exemptions, *HRDC* not only is distinguishable but in fact "does not control" at all. Op. 22. App.063

But the district court's distinction collapses under its own weight. In *HRDC*, the district court *did* analyze FOIA exemptions – "the court must decide whether, under Exemption 6, the government may redact the identities of claimants...." *HRDC v. U.S. Park Police*, 2023 U.S. Dist. LEXIS 151815, at *5 (D.D.C. Aug. 29, 2023). That means *HRDC* is *not* distinguishable at all. In fact, this Court vacated the *HRDC* clawback order "without commenting on" (Op. 19, App.060) the district court's exemption analysis, because no claim of exemption could justify "the district court's non-statutory remedy" even if the agency's unmade redactions would have been valid had they been made. *HRDC*, 126 F.4th at 712. Here, the district court never rationalized its blatant circumvention of *HRDC* – where the lower court *had done* the exemption analysis – when it conducted precisely the same sort of exemption analysis this Court found irrelevant.

The district court's attempt to change the basis of *HRDC*'s holding likewise fails. The district court claimed that "it makes sense that clawback would not be available [in *HRDC*] … because the agency was not entitled to withhold the information in the first place." Op. 21. App.062. But that was not the basis of *HRDC*'s clawback holding, and it conflates the two distinct issues *HRDC*

considered.  First, *HRDC* examined Exemption 6 in the context of officer names that had been withheld, noting that the agency had "not satisfied its burden" with respect to *that portion* of the FOIA production.  126 F.4th at 715.  Accordingly, this Court ordered the names be produced.  *Id.* at 717.  Second, *HRDC* examined "the district court's clawback order" as it pertained to "two settlement claimants" whose names had been accidentally released.  *Id.*  In other words, (i) the application of a FOIA Exemption 6 to *redacted officer names* and (ii) clawback of *inadvertently produced claimant names* were entirely separate issues, which the district court conflated to support its Order.  *HRDC* did not reach the Exemption 6 issue with respect to claimant names because FOIA's exemptions were entirely irrelevant to records that already had been produced.  Indeed, once records are disclosed, any analysis of exemptions is superfluous, because an agency cannot "'put the proverbial cat back in the bag.'"  *Id.* at 718.

Interestingly enough, it would appear that the district court previously disagreed with its own reasoning employed below, having arrived at the *opposite* conclusion in a prior FOIA case.  In *Memphis Publ'g Co. v. FBI*, 879 F. Supp. 2d 1 (D.D.C. 2012) (Berman Jackson, J.), a journalist sued the FBI for information about a famous photographer believed to have been a confidential informant.  At first, the FBI neither confirmed nor denied the existence of the photographer's "confidential informant" file.  *Id.* at 5.  But then, one of the FBI's FOIA productions inadvertently

confirmed this fact. *Id.* Nevertheless, the FBI claimed a FOIA exemption, arguing that its inadvertent confirmation "should not trigger any consequences...." *Id.* at 12. But the same district court rejected this argument as "a day late and a dollar short." *Id.* In other words, once disclosure of informant status had occurred, it did not matter whether an exemption could have been claimed. The same is true here.[2]

## B. FOIA Provides No "Equitable Authority" to Enjoin a FOIA *Requester*.

Theorizing that *HRDC* is limited only to the "*inherent* power" of a court to issue a clawback order in a FOIA case, the district court instead conjured into existence an "*equitable* power[] under FOIA" to do the very same thing. Op. 22 n.6, 27, App.063, 068 (emphases added); *see also* Doc. 30 at 2, App.037 (previously invoking "certain implied powers"). But this contrived inherent-equitable distinction is nothing more than lipstick on a pig. Contrary to the opinion below,

---

[2] The district court's rejection of *HRDC* should come as no surprise, as the court also took the liberty to criticize *HRDC*'s "reasoning," which distinguished FOIA cases from traditional "litigation." Op. 22 n.6. App.063 Offering its own contrary view that FOIA cases *are* in fact "litigation," the district court maintained that courts *must* have the "inherent authority to manage the case[s] before" them, FOIA cases included. *Id.* Even so, the district court purported to "adher[e] to Circuit authority," claiming that its disagreement with *HRDC* did not affect the outcome of this case. *Id.* Yet despite insisting on its own broad managerial powers, the district court never even "establishe[d] the schedule for the review and production of records by issuing orders" in this case. *Id.* Rather, following an initial Minute Order (Dec. 17, 2021), and a Minute Order that Defendant file its unredacted production under seal (Apr. 11, 2025), the district court only issued orders pertaining to status reports and briefing, before issuing the protective order itself. *See* Minute Order (Sept. 18, 2023). The court never directly ordered Defendant to produce anything.

*HRDC* held broadly that "FOIA does not provide for the compelled return or destruction of inadvertently produced information." 126 F.4th at 717; *see also id.* at 719 ("if the agency … fails to make intended redactions, neither FOIA nor any inherent judicial authority enables it to seek a court order to limit the effects of its error"). That unequivocal language left no room for the district court to invent a different-in-name-only remedy "under FOIA." *See* Op. 22, App.063 ("no court in this district has invoked its equitable power to bar a [FOIA] plaintiff from disseminating or using information"). Such judicial self-indulgence creates "a danger of overreaching when one branch of the Government, without benefit of cooperation or correction from the others, undertakes to define its own authority." *Degen v. United States*, 517 U.S. 820, 823 (1996); *see also N.Y. Times Co. v. United States*, 403 U.S. 713, 718 (1971) (Black, J., concurring) (rejecting "the bold and dangerously far-reaching contention that the courts should take it upon themselves to … abridg[e] freedom of the press in the name of equity").

Yet not content with having its supposedly "broad" powers limited by *HRDC*, the district court opined that "[t]he Freedom of Information Act says very little about the remedies available under the statute." Op. 22. App.063. On the contrary, 5 U.S.C. § 552(a)(4)(B) establishes FOIA's remedies, providing that a court may "enjoin the agency from withholding agency records and [may] order the production of any agency records improperly withheld." This provision appears, on its face, to

limit FOIA injunctions to two sides of the same coin – withholding and production. Nevertheless, the district court keyed in on the Supreme Court's decision in *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1 (1974). There, the Court explained that FOIA Section 552(a)(4)(B)'s language does not "limit the inherent powers of an equity court," and that courts retain authority under FOIA to issue other forms of injunctive relief. *Id.* at 19-20; Op. 23-25. App.64-66.

As the district court summarizes, subsequent cases confirm this reading, as lower courts have issued injunctions against agencies in FOIA cases which are not limited to withholding or production. For example, in *CREW v. DOJ*, 846 F.3d 1235, 1244 (D.C. Cir. 2017), this Court approved of an injunction to force the creation of a FOIA reading room required by the statute. Likewise, in *Morley v. CIA*, 508 F.3d 1108, 1120 (D.C. Cir. 2007), this Court approved of the power of district courts to order an agency to undertake additional searches. *See also Payne Enters., Inc. v. United States*, 837 F.2d 486, 494, 488 (D.C. Cir. 1988) (allowing consideration of an injunction to "prevent … unreasonable delays" by an agency after a pattern of "repeated delays").

But there is one thing that the injunctions in *all* of these cases have in common – each one involved injunctive relief issued against *an agency*, and each was designed to remedy a violation *of Section 552*. In stark contrast, the district court's gag order runs *against Plaintiffs* – FOIA requesters – and creates a remedy for mere

possession of produced FOIA records, which *violates no law*. Any acknowledgement of these obvious differences was conspicuously absent from the district court's opinion, which invented from whole cloth an entirely new FOIA power to enjoin *the FOIA requester*, for the otherwise *lawful* possession of produced records. This was clear error, for several reasons.

For starters, FOIA litigation is nothing more than a remedial tool to enforce unfulfilled FOIA obligations that the statute imposes on *agencies*, not requesters. *See Renegotiation Bd.*, 415 U.S. at 20 (emphasis added) (finding it "unnecessary … to decide" every "circumstance[] [where] it would be proper for the District Court to exercise jurisdiction to enjoin *agency action*"). Indeed, as this Court explained in *CREW*, a court's equitable authority in this context is exercised "to fashion a remedy *for a violation of section 552*" – nothing more. 846 F.3d at 1244 (emphasis added) (authorizing "[a]n injunction … to enforce section 552"). But Plaintiffs' possession of an unredacted FOIA production does not violate 5 U.S.C. § 552, or any other provision of FOIA which, again, speaks only to the duties and obligations *of agencies*.

Second, a court's injunctive relief cannot be exercised in a vacuum, but instead must be tied to righting a legal wrong (*see infra*). There was no wrong to be remedied below. And any remedy under FOIA must be "aimed at relieving [an] injury suffered by the individual complainant, *not by the general public*." *Kennecott*

*Utah Copper Corp. v. U.S. DOI*, 88 F.3d 1191, 1203 (D.C. Cir. 1996) (emphasis added). Indeed, this Court's "precedent forecloses … [a] remedy [for] an injury suffered by the 'general public.'" *CREW*, 846 F.3d at 1243. But this dooms the district court's gag order, which was entered in large part on the basis of an assumed "unwarranted invasion of personal privacy...." Op. 14. App.055. Clearly, the district court's gag order was not "aimed at relieving [an] injury suffered by the individual complainant" (*i.e.*, Plaintiffs). *Kennecott*, 88 F.3d at 1203. Quite the opposite, the court's order *irreparably harms* Plaintiffs.

Third, while "FOIA imposes no limits on courts' equitable powers in enforcing *its terms*," *Payne*, 837 F.2d at 494 (emphasis added), no "terms" of FOIA control a requester's ability to use records that have been divulged to it by an agency. As this Court explained in *CREW*, "courts' remedial authority under section 552(a)(4)(B) is not boundless" and thus, for example, a court has "no authority to order the production of records no longer in an agency's possession." 846 F.3d at 1242. In other words, once records have been disclosed to a FOIA requester – as is the case here – they are out of the agency's possession, and FOIA simply has nothing more to say on the subject.[3] *See Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S.

---

[3] *See also Sierra Club v. EPA*, 505 F. Supp. 3d 982, 991 (N.D. Cal. 2020) (declining to order FOIA clawback "any time the producing agency could have invoked a statutory exemption but inadvertently failed to do so"); *100Reporters v. U.S. Dep't of State*, 602 F. Supp. 3d 41, 84 (D.D.C. 2022) ("absent legal authority indicating that the Court has the authority to order that a FOIA recipient return

157, 174 (2004) ("once there is disclosure, the information belongs to the general public" and "[t]here is no mechanism under FOIA for a protective order" "proscribing … general dissemination" of "information").[4]  And this makes obvious sense.  Whereas FOIA has an "obvious emphasis on disclosure" and is "principally interested in opening administrative processes to the scrutiny of the press," *Renegotiation Bd.*, 415 U.S. at 19, 17, the district court's gag order was "principally interested" in *restricting* press activities designed to communicate the government's activities to the public – the polar opposite of FOIA's purpose.  It cannot therefore be an appropriate exercise of equitable authority "under FOIA."

## C. A Court's Use of Equitable Authority Must Be Tied to Enforcing a Legal Right or Remedying a Legal Wrong.

It is "elementary"[5] that courts may exercise equitable authority only in furtherance of vindicating some legal right or redressing some legal wrong.  Indeed,

---

[4] *But see Rocky Mountain Wild, Inc. v. U.S. Forest Serv.*, 56 F.4th 913, 930 (10th Cir. 2022) (claiming that *Favish* applies only where "the agency … properly divulged the documents").  But no such "properly divulged" limitation exists on *Favish*'s face, which discussed the possible effects of a legal theory in light of the fact that, "once there is disclosure, the information belongs to the general public," and "[t]here is no mechanism under FOIA for a protective order … proscribing … general dissemination."  541 U.S. at 174.  Not to mention, *HRDC* rejected *Rocky Mountain* as unpersuasive and inapplicable.  126 F.4th at 719.

records that were inadvertently released without redactions, the Court has no reason to consider whether the proposed redactions would be proper, were the Department allowed a mulligan").

[5] *Duke Power Co. v. Greenwood County*, 91 F.2d 665, 676 (4th Cir. 1937) ("It is elementary that before a party is entitled to injunctive relief it must appear that some right of his is threatened with invasion by the action of which he complains.").

"[t]he essence of a court's equity power lies in its inherent capacity to … eliminate the conditions or redress the injuries caused by unlawful action." *Freeman v. Pitts*, 503 U.S. 467, 487 (1992). Thus, "something more than adverse personal interest is needed" for "a court to intervene … in the exercise of inherent equitable powers."[6] *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 151 (1951) (Frankfurter, J., concurring). The "injury must be 'a wrong which directly results in the violation of a legal right'" and, "if no comparable common-law right exists and no such constitutional or statutory interest has been created, relief is not available judicially." *Id.* at 152. Moreover, equitable relief either must be "consistent with the statutory language and policy," *Renegotiation Bd.*, 415 U.S. at 19, or "traditionally accorded by courts of equity." *Grupo Mexicano de Desarrollo v. Alliance Bond Fund*, 527 U.S. 308, 319 (1999). The district court's gag order fulfills none of these fundamental requirements for the invocation of equitable power.

Consider the FOIA statute's text and purpose. FOIA creates a legal right of requesters *to obtain* agency records. *See* 5 U.S.C. § 552(a)(3)(A). FOIA then grants

---

[6] To the extent the invocation of "equitable authority under FOIA" (Op. 9, App.050) and "inherent authority" (*HRDC*, 126 F.4th at 712) may in fact be synonymous ("inherent equitable powers"), then this Court's repudiation of such "authority" in *HRDC* squarely controls this case, and this Court should reverse on that basis alone. Indeed, if the *HRDC* court believed that courts have "equitable" authority – just not "inherent" authority – then a Court of Appeals "can affirm a district court judgment on any basis supported by the record." *Smith v. Lanier*, 726 F.3d 166, 169 (D.C. Cir. 2013).

agencies the option *to withhold* certain exempted records if they so choose. *See id.* § 552(b); *Chrysler Corp. v. Brown*, 441 U.S. 281, 294 (1979) (noting that exemptions are not mandatory, because "Congress did not limit an agency's discretion to disclose information when it enacted the FOIA"). But nowhere in those provisions did Congress grant agencies any right *over* FOIA requesters. Nowhere did Congress declare it unlawful for disclosed records to be possessed by requesters. And nowhere did Congress provide for any relief *against* FOIA requesters. Thus, after an agency discloses something to a requester – even inadvertently – there is no FOIA violation on either the requester or agency side. *See Favish*, 541 U.S. at 174 ("once there is disclosure, the information belongs to the general public"); *HRDC*, 126 F.4th at 719 ("if the agency … fails to make intended redactions, neither FOIA nor any inherent judicial authority enables it to seek a court order to limit the effects of its error").[7] Defendant had no cognizable legal right under FOIA that the district court could enforce in equity. And Plaintiff committed no legal wrong. The district court therefore had "no authority to craft a 'nuclear weapon' of the law like the one advocated here." *Grupo Mexicano*, 527 U.S. at 332.

---

[7] Moreover, because "Congress did not limit an agency's discretion to disclose information when it enacted the FOIA," it "necessarily follows that the Act does not afford … any right to enjoin agency disclosure." *Chrysler Corp.*, 441 U.S. at 294. But if FOIA confers no right to prevent an *agency* from disclosing information, then it certainly confers no right to prevent a *requester* from doing the same. FOIA is "exclusively a disclosure statute" meant to "meet the demand for open government...." *Id.* at 292.

Nor was the district court's admittedly inventive remedy one ever "traditionally accorded by courts of equity" (*Grupo Mexicano*, 527 U.S. at 319) – at least, not in *this* country. Rather, censorship of the press was a uniquely British tradition at the time of the Founding – one that the Framers deliberately disinherited. Indeed, the "chief purpose" of the First Amendment's press clause was "to *prevent* previous restraints upon publication" that had proliferated under the King. *Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 713 (1931) (emphasis added); *see also United States v. Rahimi*, 602 U.S. 680, 720 (2024) (Kavanaugh, J., concurring) ("The Framers drafted and approved many provisions of the Constitution precisely to depart from rather than adhere to certain pre-ratification laws, practices, or understandings."). The district court's prior restraint has no historical basis in American law and so – even aside from the lack of any legal right to be enforced or legal wrong to be remedied – the court lacked equitable jurisdiction to issue it.

Finally, a district court's granting an agency a mulligan for documents it produces, and then regrets having produced, will lead to perverse results. What if a FOIA requester received a production with unredacted information that was not marked in any way, and decided to report on that production? But then, after the first in a three-part article series was published, the agency regretted having produced the records. If the agency *then* claimed an exemption and *then* sought a prior restraint against publication of subsequent article installments, would a gag

order be a valid exercise of equitable authority?  Surely not, "as a disclosure made to any FOIA requester is effectively a disclosure to the world at large.  The courts lack authority to limit the dissemination of documents once they are released under FOIA, or to choose selectively among recipients."  *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 836 (D.C. Cir. 2001).  In other words, FOIA contains no regret clause, and the district court's creation of one must be reversed.[8]

### D. Numerous Courts Have Questioned the Authority Invoked Here.

For the reasons articulated above, numerous courts have doubted whether they even possess the authority to issue the sort of injunctive relief the district court issued here.  For example, another judge of the district court declined to order FOIA clawback "absent legal authority" in *100Reporters*, 602 F. Supp. 3d at 84 (Moss, J.), remarking that to do so would be an "extraordinary step."  Likewise, in *Nat'l Press Club Journalism Inst. v. ICE*, 2023 U.S. Dist. LEXIS 229953, at *57 n.7 (D.D.C. Dec. 28, 2023) (Contreras, J.), the district court explained that "[i]t is not immediately clear whether the Court has the authority to … limit Plaintiffs' use of

---

[8] To affirm the district court's order would create additional perverse results: it would (i) grant agencies non-statutory rights that they do not possess administratively under FOIA; (ii) deter FOIA requesters from relying on courts to enforce their rights; (iii) deter counsel from informing the government of inadvertent productions and instead encourage dissemination of documents prior to review; and (iv) incentivize agencies to delay responding to FOIA requests, forcing requesters into court where the agency would enjoy greater rights.  Each of these reasons counsels against affirmance here.

the inadvertently disclosed documents [or] to compel the[ir] return...." And in *N.Y. Times Co. v. United States*, 403 U.S. 713 (1971), several Justices questioned the existence of *any* "inherent" power to prohibit publication of the news. *See, e.g.*, *id.* at 719 (Black, J., concurring) ("To find that the President has 'inherent power' to halt the publication of news by resort to the courts would wipe out the First Amendment and destroy the fundamental liberty and security of the very people the Government hopes to make 'secure.'"); *id.* at 718 (rejecting "the bold and dangerously far-reaching contention that the courts should take it upon themselves to 'make' a law abridging freedom of the press in the name of equity"); *id.* at 732 (White, J., concurring) (disagreeing "that the inherent powers of … the courts reach so far as to authorize remedies having such sweeping potential for inhibiting publications by the press").

Relatedly, Justice Marshall framed the "issue [as] whether this Court or the Congress has the power to make law," being as it "would … be utterly inconsistent with the … separation of powers for this Court to use its power … to prevent behavior that Congress has specifically declined to prohibit." *N.Y. Times Co.*, 403 U.S. at 741-42 (Marshall, J., concurring). Of course, that is exactly what this Court found in *HRDC* – that Congress specifically declined to grant remedial authority under FOIA, and so "neither FOIA nor any inherent judicial authority enables [an agency] to seek a court order to limit the effects of its error." *See* 126 F.4th at 719

("Congress presumably acted deliberately in omitting general clawback authority from FOIA.").[9]

### E. The District Court Issued a Permanent Injunction Without Analyzing the Four-Factor Test that Courts "Must" First Apply.

Although the district court avoided use of such terminology, its gag order represents a permanent prohibitory injunction barring Plaintiffs from "disseminat[ing], disclos[ing], or us[ing] for any purpose those portions of the records" at issue. Order at 1. App.071. By the district court's own insistence, this remedy was an exercise of its purported "equitable power." Op. 22. App.063. But "[a]ccording to *well-established principles of equity*, a p[arty] seeking a permanent injunction *must* satisfy a four-factor test *before* a court may grant such relief." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (emphases added); *see also Doe v. Mattis*, 889 F.3d 745, 751 (D.C. Cir. 2018) (emphasis added) ("A district court facing a request for a preliminary injunction *must* balance four factors[.] … The same factors apply when a party seeks a permanent injunction...."). Consideration

---

[9] As Justice Marshall noted, "Congress has on several occasions given consideration to the problem of protecting" national security, but never enacted a provision gagging the press. *N.Y. Times Co.*, 403 U.S. at 743 (Marshall, J., concurring). Likewise, "FOIA … has been amended by Congress seven times since … 1966." *FOIA Legislative Materials*, DOJ OIP, https://www.justice.gov/oip/foia-legislative-materials (July 2, 2024). At any time, Congress could have granted the power the district court exercised, but it did not. Thus, "[w]hen Congress specifically declines" to act, "it is not for this Court to redecide those issues – to overrule Congress." *N.Y. Times Co.*, 403 U.S. at 745-46 (Marshall, J., concurring).

of these factors is not optional for such an admittedly "drastic" and "extraordinary" remedy as was granted below. *Dellinger v. Bessent*, 768 F. Supp. 3d 33, 71 (D.D.C.) (Berman Jackson, J.), *vacated*, 2025 U.S. App. LEXIS 7222 (D.C. Cir. Mar. 27, 2025).

Even so, the district court utterly failed to analyze (1) whether Defendant would "suffer[] an irreparable injury"; (2) whether alternative "remedies available at law, such as monetary damages, [we]re inadequate to compensate for that injury"; (3) whether, based on "the balance of hardships between the plaintiff and defendant, a remedy in equity [wa]s warranted"; and (4) whether "the public interest would not be disserved by a permanent injunction." *eBay*, 547 U.S. at 391. Because "a misunderstanding of applicable law generally constitutes reversible error," *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 200 n.* (2022) – especially one as basic as the fundamental test that "must" be applied in *every* case where an injunction issues – this Court should reverse on this basis alone.

## II. THE DISTRICT COURT'S PRIOR RESTRAINT VIOLATES PLAINTIFFS' FIRST AMENDMENT PRESS RIGHTS.

Even were this Court to agree with the district court, sanctioning the exercise of some roving equitable power to dispense 'justice' without any underlying enforceable right or legal wrong, any "equitable," "inherent," or "implied" judicial power must be exercised in accordance with enumerated constitutional rights. Indeed, "FOIA … cannot negate or override the First Amendment inquiry," *Wright*

*v. FBI*, 613 F. Supp. 2d 13, 25 (D.D.C. 2009), because "Congress shall make *no law* … abridging the freedom … of the press...." U.S. Const. Amend. I (emphasis added). For that reason, the district court's prior restraint on the press cannot stand.

## A. The First Amendment's Guarantee of a Free Press Is "Inviolable."

James Madison's original draft of the First Amendment provided that "the freedom of the press, as one of the great bulwarks of liberty, shall be inviolable." 1 Annals of Cong. 434 (1789). There is no equivocation in those words. Eventually adopted as a directive that "Congress shall make no law … abridging the freedom … of the press," the "Framers … wrote in language they earnestly believed could never be misunderstood." *N.Y. Times Co. v. United States*, 403 U.S. 713, 716-17 (1971) (Black, J., concurring). So clear is the First Amendment's text that, "for approximately one hundred and fifty years there [was] almost an entire absence of attempts to impose previous restraints upon publications relating to the malfeasance of public officers...." *Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 718 (1931).

The First Amendment's press clause resulted from "[t]he struggle … [against] censorship of the press … in England," and its "chief purpose" was "to prevent previous restraints upon publication." *Near*, 283 U.S. at 713. As Justice Stewart explained, "without an informed and free press there cannot be an enlightened people." *N.Y. Times*, 403 U.S. at 728 (Stewart, J., concurring). Thomas Jefferson was similarly unequivocal: "Our liberty depends on the freedom of the press, and

that cannot be limited without being lost...." 9 <u>Papers of Thomas Jefferson</u> 239 (J. Boyd ed. 1954). The Continental Congress put it more bluntly: the freedom of the press "advance[s] … diffusion of liberal sentiments on the administration of Government … whereby oppressive officers are shamed or intimidated[] into more honourable and just modes of conducting affairs." *Near*, 283 U.S. at 717 (quoting Continental Cong., A Letter to the Inhabitants of the Province of Quebec (Oct. 26, 1774)). It is for this reason the First Amendment provides such "extraordinary protection against prior restraints [to] the press...." *N.Y. Times*, 403 U.S. at 730-31 (White, J., concurring). The district court's prior restraint clearly violates this original understanding.

**B. Prior Restraints Can Rarely (if Ever) Be Justified.**

As the Supreme Court explains, "[s]unlight is … the best of disinfectants." *Buckley v. Valeo*, 424 U.S. 1, 67 (1976) (quoting Justice Brandeis). Indeed, "openness and accountability in government" are the expressly stated purposes of the Freedom of Information Act. *Jud. Watch, Inc. v. DOJ*, 365 F.3d 1108, 1118 (D.C. Cir. 2004). In contrast, prior restraints are among the most heavy-handed of restrictions on expressive rights, in that they prevent speech from ever occurring and stifle ideas from ever being communicated. *See Bd. of Trs. of Leland Stanford Junior Univ. v. Sullivan*, 773 F. Supp. 472, 474 (D.D.C. 1991) ("a prior restraint on speech … allows the government to suppress the dissemination of information in advance

of publication"). Such harsh restrictions are "especially condemned," *Burstyn v. Wilson*, 343 U.S. 495, 503 (1952), and thus "come[] to [court] bearing a heavy presumption against [their] constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). And so, while the First Amendment's prohibition of prior restraints is (perhaps) "not absolutely unlimited," they are permitted – if ever – "only in exceptional cases" such as "actual obstruction" of "a nation … at war." *Near*, 283 U.S. at 716.

In the seminal Pentagon Papers cases, *N.Y. Times Co. v. United States*, 403 U.S. 713 (1971), the Supreme Court rejected the idea that, even as the Vietnam War raged, a newspaper could be enjoined "from publishing the contents of a classified study" about the "decision-making process on Viet Nam policy." *Id.* at 714. As Justice Brennan noted, "never before ha[d] the United States sought to enjoin a newspaper from publishing information in its possession." *Id.* at 725 (Brennan, J., concurring). And while the Court's holding contained a short three paragraphs upholding the newspapers' right to publish, the Court's voluminous opinion included concurring and dissenting opinions from *every one* of its Justices.

On one end of the spectrum, Justices Black and Douglas asserted that the First Amendment's use of the words "no law" truly means "*no* law" – that there is literally *no circumstance* in which a prior restraint could ever be justified. *Id.* at 717, 720. But Justice Brennan, pointing to the Court's prior dicta in *Near*, opined that there

might be "a single, extremely narrow class of cases" where a prior restraint may be appropriate, that being "actual obstruction … when the Nation 'is at war,'" such as "imperiling the safety of a transport already at sea...." *Id.* at 726, 727 (Brennan, J., concurring); *see also Near*, 283 U.S. at 716. Justices Stewart and White echoed his sentiment, opining that any prior restraint must be preceded by a clear governmental showing of a "direct, immediate, and irreparable damage to our Nation or its people," and noting that even generalized "grave and irreparable danger" in other contexts is insufficient. *N.Y. Times*, 403 U.S. at 730, 732 (White & Stewart, JJ., concurring); *see also Smith v. Daily Mail Pub. Co.*, 443 U.S. 97, 103 (1979) (emphasis added) ("if a newspaper lawfully obtains … information," government "officials may not constitutionally punish publication … absent a need to further a *state interest of the highest order*").

Taking a different approach, Justice Marshall noted that Congress had declined to authorize prior restraints in its national security statutes, and so courts could not override that legislative choice. *N.Y. Times*, 403 U.S. at 741-42; *see also id.* at 722 (Douglas, J., concurring) (same); 732 (White, J., concurring) (same). Finally, even among the three dissenting Justices, each of whom focused on the compressed nature of the proceedings (*id.* at 752 (Burger, C.J., dissenting)); 753 (Harlan, J., dissenting); 760 (Blackmun, J., dissenting), *no one* argued that the power to impose a prior restraint could extend beyond the national security or wartime

realm.[10]  No such justification could possibly exist here, and indeed, Defendant has made no such assertion.

But the district court's gag order reaches far beyond the quintessential prior restraint *on publication* that courts have rejected time and again.  In addition to preventing publication of materials in Plaintiffs' possession, the district court ordered Plaintiffs "not … [to] *use* for any purpose those portions of the records." Order at 1, App.071 (emphasis added)..  A prohibition on "use" raises many questions, as it would appear to restrict undersigned counsel's ability to *think* about the unredacted materials and *advise* Plaintiffs on matters in light of what they know. For example, if Plaintiffs were to file a follow-up FOIA request about a targeted aspect of the NICS Monitoring Program based on their knowledge of the unredacted materials, would that "use" violate the district court's Order?  The district court

---

[10] There are other inapposite circumstances where courts have allowed restrictions on speech in various contents.  For example, Justice Brennan explained that "obscene materials" are "not protected by the freedoms of speech and press" in the first place, while "copyright cases have no pertinence" because they "assert[] an interest in the particular form of words chosen," while prior restraints "seek[] to suppress the ideas expressed therein." *N.Y. Times*, 403 U.S. at 726 n.* (Brennan, J., concurring).  In other words, such restrictions are not prior restraints, because they do not involve protected speech in the first place.  Likewise, even if unfettered on the front end, the right to print the news is not without liability.  As Blackstone explained, although "[e]very freeman has an undoubted right to lay what sentiments he pleases before the public … if he publishes what is improper, mischievous or illegal, he must take the consequence of his own temerity."  4 William Blackstone, Commentaries on the Laws of England 151-52 (1769).  But just because "the liberty of the press may be abused … does not make any the less necessary the immunity of the press from previous restraint...."  *Near*, 283 U.S. at 720.

refused to clarify, asserting "[t]here was nothing unclear" about the Order. Minute Order, No. 1:21-cv-02919-ABJ (D.D.C. Oct. 5, 2023). But if that is true, how else are Plaintiffs to interpret the Order, other than to assume it reaches their very thoughts?

The district court's injunction of "use" therefore presents something far more totalitarian than a mere prohibition on dissemination of the news. This Court should reverse not only to protect the freedom of speech and press, but also the freedom of *thought* itself. *See, e.g.*, *Robb v. Lock Haven Univ. of Pa.*, 2019 U.S. Dist. LEXIS 76762, at *21 (M.D. Pa. May 7, 2019) ("Regardless of the legal theory relied upon, this Court does not have the authority to enjoin Lock Haven from merely *thinking about* actions that would violate Title IX."); *Nat'l Inst. of Family & Life Advocs. v. Becerra*, 585 U.S. 755, 780 (2018) (Kennedy, J., concurring) ("Freedom of speech secures freedom of thought and belief."); *Griswold v. Connecticut*, 381 U.S. 479, 482 (1965) ("The right of freedom of speech and press includes not only the right to utter or to print, but the right to distribute, the right to receive, the right to read … and freedom of inquiry, freedom of thought, and freedom to teach....").

### C. ATF's Disclosure *During* FOIA Litigation Does Not Change the Analysis.

#### 1. Plaintiffs Do Not Seek a "Right of Access" to Information They Already Possess.

Asserting that there is no "right to speak on any subject at any time," Defendant argues that the First Amendment "does not 'carry with it the unrestrained

right *to gather information.*'" Opp. to Stay at 18-19 (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 31-32 (1984) (emphasis added)).[11]  This was the basis of the district court's First Amendment analysis as well – that its gag order was not a prior restraint because "'citizens have no first amendment *right of access* to traditionally nonpublic government information,' and therefore '[a] litigant *seeking release* of government information under FOIA … relies upon a statutory entitlement … not upon his constitutional right to free expression." Op. 29, App.070 (citing *McGehee v. Casey*, 718 F.2d 1137, 1147 (D.C. Cir. 1983) (emphasis added)); *see also id.* ("because plaintiffs do not have a right to the material … the Court's [gag] order … is not a violation of their First Amendment rights").

But plainly – obviously – Plaintiffs are not seeking to "gather" or "access" anything, or to have something "release[d]" to them.  Nor have Plaintiffs alleged that any common law principle or statute – not even FOIA – gives them any right of *access* to exempt information.  Rather, Plaintiffs *already possess* the information about which they now wish to report – because Defendant handed over the documents voluntarily.[12]  Plaintiffs merely seek to report and publish the news about

---

[11] Document #2134607, filed September 12, 2025.

[12] The district court's focus on Plaintiffs' "right of access" is a *non sequitur*. A gag order *definitionally* involves one who wants to say something, not one who is seeking access to information.  Indeed, prior restraint cases often (if not *usually*) involve litigants' possession of information to which they are not entitled and have no "right of access" and yet which, through no fault of their own, they receive into their possession.  *See N.Y. Times*, 403 U.S. at 714 (refusing to enjoin publication of

information that is already in their possession.[13]  Thus, *Am. Commc'ns Ass'n v. Douds*, 339 U.S. 382 (1950) (which involved not a prior restraint but retroactive punishment of "incitements to commit unlawful acts") and *McGehee* (which involved a former CIA officer publishing classified information)[14] have no application here.

---

the Pentagon Papers after a government employee passed them to the New York Times); *Bartnicki v. Vopper*, 532 U.S. 514, 517 (2001) (refusing to enjoin publication of "speech that discloses the contents of an illegally intercepted communication"). Indeed, the Supreme Court has rejected prior restraints even when a "videotape was obtained through the 'calculated misdeeds'" of a plaintiff.  *CBS v. Davis*, 510 U.S. 1315, 1318 (1994); *see also Mortgage Specialists v. Implode-Explode Heavy Indus.*, 999 A.2d 184, 196 (N.H. 2010) (collecting cases) (emphasis added) ("[e]ven when confidential information has allegedly been obtained *unlawfully* by the publisher, courts have invalidated prior restraints on publication").  (Of course, Plaintiffs committed no "misdeeds" or "unlawful" actions in this case.)

[13] The district court's gag order covers not only the documents themselves, but also the "use for any purpose those portions of the records." Order at 1.  App.071.  Undersigned counsel has personal knowledge of the documents and their contents, and the district court's gag order prevents counsel from even accessing memories inside their own heads.  *See Sierra Club v. EPA*, 505 F. Supp. 3d 982, 992 (N.D. Cal. 2020) ("information … will presumably remain within those individuals' knowledge even if the documents are destroyed").

[14] *McGehee* fits comfortably within the *N.Y. Times* framework above, as this Court noted the "critical national interests" at issue, explaining that "a measure of secrecy [is] 'essential to the security of the United States and – in a sense – the free world....'"  *McGehee*, 718 F.2d at 1139, 1142 n.11.  Even so, *McGehee* involved a government employee (Plaintiffs are not) who had signed a confidentiality agreement (Plaintiffs did not) but who wished to publicize classified information (Plaintiffs do not).  In contrast, this Court explained, "[t]he government has no legitimate interest in censoring unclassified materials."  *Id.* at 1141; *cf. Bd. of Trustees of Leland Stanford Junior Univ. v. Sullivan*, 773 F. Supp. 472, 473, 478 (D.D.C. 1991) (examining restriction on publishing "preliminary research results" by "recipient of a government grant," and refusing "without explicit appellate direction, [to] further narrow the speech and expression rights … [through]

If this distinction were somehow unclear, the Third Circuit has explained the difference, finding that "the segment of the newspapers' appeal seeking access to the sentencing memorandum is moot, as the newspapers *already have copies of it*." *United States v. Smith*, 123 F.3d 140, 143 (3d Cir. 1997) (emphasis added).  Thus, as that court explained, "there is (and can be) no prior restraint on the use by the newspapers of material already in their possession...."  *Id.* at 144; *see also Phila. Newspapers, Inc. v. Jerome*, 387 A.2d 425, 432-33 (Pa. 1978) (emphases added) ("[t]he distinction between restraints upon the *content* of publication and limitations upon *access* is well established" and, once members of the press *obtain* information, preventing publication of that information is "[a] prior restraint … and is presumed unconstitutional").[15]

_____

government censorship the publications of institutions of higher learning and others engaged in legitimate research"); *see also United States v. Progressive, Inc.*, 467 F. Supp. 990, 996 (W.D. Wis. 1979) (conducting the analysis required by *N.Y. Times* and *Near*, and finding that publication of an article explaining the operation of a "thermonuclear bomb … could pave the way for thermonuclear annihilation for us all," which "falls within the extremely narrow exception to the rule against prior restraint"); *ACLU v. DOD*, 2012 U.S. Dist. LEXIS 194264, at *15, *11 (S.D.N.Y. Mar. 20, 2012) (requiring "Plaintiffs to return all copies of the Document in their possession," after finding that the document was "properly classified" and that disclosure "could reasonably be expected to harm national security").

[15] Thus, when the press had already *obtained* the name and photograph of a juvenile in *Okla. Publ'g Co. v. Dist. Ct.*, 430 U.S. 308 (1977), the Court could not prohibit their subsequent publication.  But when prison regulations restricted press *access* to prisoners in the first instance in *Pell v. Procunier*, 417 U.S. 817 (1974), the Court upheld the regulations under the First Amendment.

Rejecting this obvious distinction, the district court concluded that, because Defendant *could have* redacted the produced records, Plaintiffs had no right of access and therefore it was not a prior restraint to gag Plaintiffs from reporting about the records. Op. 29. App.070. But this is plainly not the law. Otherwise, the Supreme Court would have upheld the prior restraint in the Pentagon Papers case as soon as the Court determined the records were properly classified. *See* 5 U.S.C. § 552(b)(1)(A). Yet the Court refused to do so, finding that there was no showing of grave irreparable harm to the nation sufficient to justify the prior restraint. *See N.Y. Times*, 403 U.S. at 730 (Stewart, J., concurring) ("I cannot say that disclosure of any of them will surely result in direct, immediate, and irreparable damage to our Nation or its people."); *see also id.* at 731 (White, J., concurring) (believing that "revelation of these documents will do substantial damage to public interests" but "nevertheless agree[ing] that the United States has not satisfied the very heavy burden").

The same is true for *Fla. Star v. B.J.F.*, 491 U.S. 524 (1989). There, the Supreme Court noted that, under Florida law, "the identity of the victim of a sexual offense" is "not among the matters of 'public record' which the public, by law, is entitled to inspect." *Id.* at 536. But as with the Pentagon Papers, that did not end the inquiry, and the Court ultimately found no "state interest of the highest order" and rejected the prior restraint. *Id.* at 541.

These cases squarely foreclose the district court's clearly erroneous issuance of a gag order based on nothing more than its determination the produced records would have been exempt had they been made.[16] That determination was entirely irrelevant, and cannot justify a prior restraint.

## 2. FOIA Productions Are Required by Statute, Not Court Order.

Citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984), Defendant has advanced the repudiated theory – one that not even the district court adopted – that Plaintiffs have "a much more limited right to speech in connection with information obtained in litigation." Opp. to Stay at 19 (citing cases); *see also id.* at 20 (distinguishing "information … obtained from a judicial versus non-judicial source"); 19 (claiming ATF's FOIA production represents "information obtained … only as a result of litigation"). But *Seattle Times* dealt with a protective order which simultaneously "both granted [] access to [] information and placed restraints on the way in which the information might be used." 467 U.S. at 32. No such order exists

_____

[16] Prior opinions that have granted relief similar to the district court (1) were wrongly decided, (2) have been overruled by *HRDC*, and/or (3) gave no consideration to the First Amendment issue. *See, e.g.*, *Cowan v. FCC*, 2022 U.S. Dist. LEXIS 166363, at *44-45, *47 (D.D.C. Sept. 15, 2022) (relying on "implied" and "inherent powers" to grant FCC a "temporary protective order" for "inadvertently disclosed" documents, while seeking supplemental briefing on "the harm that will result from the public disclosure," and noting that a "permanent[] bar" would be a "harder question") (*Cowan* was subsequently settled and dismissed.); *Pub. Citizen Health Rsch. Grp. v. FDA*, 953 F. Supp. 400, 404 (D.D.C. 1996) (relying on "inherent authority" but ducking the First Amendment question, demurring that "this order is only temporary in nature").

in this case – it is FOIA which requires Defendant to produce documents, not the district court.

Moreover FOIA, unlike the "discovery provisions" of various states (*Seattle Times*, 467 U.S. at 29), contains no provision for limiting a requester's use of documents that have been produced. *HRDC*, 126 F.4th at 717 ("FOIA does not provide for the compelled return or destruction of inadvertently produced information."). Thus, Defendant is simply wrong that Plaintiffs obtained the FOIA production in question "only as a result of litigation." Opp. to Stay at 19. Rather, FOIA demanded production *prior to and independent of* Plaintiffs' suit (*see* 5 U.S.C. § 552(a)(3)(A)), not "by virtue of the trial court's … processes" (*Seattle Times*, 467 U.S. at 32). In other words, while civil discovery does not occur outside of court, FOIA productions do.

In fact, Defendant's argument was considered and rejected by this Court in *HRDC*, which found "no support" for the notion that a different rule applies merely "[b]ecause the … materials were produced during the court-ordered meet-and-confer process...." 126 F.4th at 718.[17] Rather, as this Court explained, "Congress designed

---

[17] At times, the Supreme Court has referenced various "inherent" judicial powers over legal proceedings: for example, the "conceded authority of courts to punish for contempt when publications directly tend to prevent the proper discharge of judicial functions," *Near*, 283 U.S. at 715, the "special solicitude for preserving fairness in a criminal trial," *Times-Picayune Publ'g Corp. v. Schulingkamp*, 419 U.S. 1301, 1307 (1974), and control over sealed documents that are considered "judicial records" or presentencing reports prepared for judges in criminal cases. *See, e.g.,*

FOIA to function largely without court compulsion" and, "just because a FOIA requester resorts to litigation to enforce an unfulfilled FOIA entitlement" does not authorize "a court order to limit the effects of [the agency's production] error." *Id.* at 719. No wonder the district court did not adopt this reasoning, as Defendant merely regurgitates an argument that this Court squarely rejected in *HRDC*.

The civil discovery protective order in *Seattle Times* is therefore inapposite to the district court's gag order here.[18] Indeed, the Court's reasoning in *Seattle Times* distinguishes that case from this. There, the Court explained that, when permitting discovery as a matter of "legislative grace," a court can exercise "continued …

---

*Smith*, 123 F.3d at 152 (collecting cases). But *HRDC* rejected any notion that a prior restraint on produced FOIA records is a "valid exercise of inherent judicial authority," distinguishing judicial action taken "to support a core judicial authority" such as the "authority to admit members of the bar, discipline bar members, punish contempt of court, vacate judgments based on fraud on the court, [or] punish bad-faith or vexatious conduct." 126 F.4th at 712, 718. Nor does this case represent "unlawful press access to confidential judicial proceedings," *Smith v. Daily Mail*, 443 U.S. at 105, being that FOIA "is a primarily administrative regime designed to advance governmental transparency." *HRDC*, 126 F.4th at 719; *see also Times-Picayune*, 419 U.S. at 1304, 1307 (rejecting a "total ban on reporting of testimony given" in open court, finding "trials are public events" and "reporters … are plainly free to report whatever occurs"). The same is true of reporting about the content of FOIA productions.

[18] *HRDC* rejects Defendant's civil discovery analogy on its face, concluding that Defendant's "comparison [to Fed. R. Civ. P. 26(b)(5)(B)] hurts more than it helps," and noting that Congress could have but did not include such a provision in FOIA. 126 F.4th at 719. *See also Stonehill v. IRS*, 558 F.3d 534, 538 (D.C. Cir. 2009) ("that a document is exempt from discovery does not necessarily mean it will be exempt from disclosure under FOIA"); *Chiquita Brands Int'l, Inc. v. SEC*, 805 F.3d 289, 300 (D.C. Cir. 2015) ("the FOIA disclosure regime … is distinct from civil discovery").

control" over information to which there is otherwise no "*right of access*." 467 U.S. at 32 (emphasis added). Once again, Plaintiffs here did not need "the court's processes" (*id.* at 34) to oblige Defendant to turn over documents – FOIA already required it.[19] Plaintiffs resorted to litigation only to obtain Defendant's compliance with FOIA's provisions. Plus, the discovery order in *Seattle Times* contained both a contemporaneous grant and limitation, whereas here, Defendant first negligently produced unredacted records, and only later sought "to put the proverbial cat back in the bag." *HRDC*, 126 F.4th at 718.

### D. Plaintiffs Unquestionably Are Members of the Press.

To be sure, Defendant has not disputed that Plaintiffs are members of the press to whom the First Amendment applies. But lest there be any doubt, Plaintiffs already have engaged in a plethora of press activities with respect to the very subject matter at issue here – the FBI's secret NICS Monitoring Program. Plaintiffs have publicized information about this program not only directly on their websites,[20] but also on

---

[19] *In re Rafferty*, 864 F.2d 151, 154 (D.C. Cir. 1988), is not to the contrary, reversing a protective order where the party had obtained the information "*outside* the discovery process."

[20] *See, e.g.* John Crump, *ATF & FBI Monitor Over 1,000 Law-Abiding Gun Owners*, GOA (Oct. 22, 2021), https://tinyurl.com/y2zf8z85; Emily Miller, *EXCLUSIVE: GOA Exposes ATF for Using Financial Info to Block Gun Purchases*, GOA (Mar. 14, 2023), https://tinyurl.com/mumyr943; John Crump, *ATF Attempts to Silence Gun Owners of America*, GOA (Oct. 16, 2023), https://tinyurl.com/ar9bswr4; *FBI NICS Monitoring Scandal*, GOF, https://tinyurl.com/5fdy38d8 (last visited Oct. 12, 2025).

social media accounts including YouTube,[21] X,[22] Facebook,[23] and Instagram,[24] in

their organizational newsletters,[25] in email alerts to members and supporters, through

op-eds,[26] and through information provided to Congress.[27] Plaintiffs also have

provided information about the NICS Monitoring Program to print media, where

journalists have provided robust and ongoing coverage[28] of the issue. But even if

---

[21] *See, e.g.*, GOA, *Background Checks Now Report Addresses of Gun Owners*, YouTube (Sept. 28, 2022), https://tinyurl.com/ysppz3cx; GOF, *The Entire System Is Broken*, YouTube (Apr. 5, 2023), https://tinyurl.com/f7w92cmb; GOA, *FBI Weaponized Background Checks to Enforce California Gun Ban*, YouTube (Apr. 2, 2025), https://tinyurl.com/3pay2w6u.

[22] *See, e.g.*, @GunOwners, X (Apr. 10, 2025), https://tinyurl.com/4s6yt7rs; @GunFoundation, X (July 25, 2025), https://tinyurl.com/5n8juju2.

[23] *See, e.g.*, GOA, Facebook (May 9, 2025), https://tinyurl.com/4e4pap5r; GOF, Facebook (Apr. 6, 2023), https://tinyurl.com/2ytph87c.

[24] *See, e.g.*, @gunownersofamerica, Instagram (May 9, 2025), https://tinyurl.com/4yj8ynwa.

[25] *See, e.g.*, Erich Pratt, *GOA Activists Play Major Role in Repealing Gun Control*, The Gun Owners (May/June 2024), https://tinyurl.com/mywfw7j3.

[26] *See, e.g.*, Erich Pratt, *Gun Owners Aren't Criminals: It's Time to Dismantle NICS Monitoring*, DailyWire+ (May 5, 2025), https://tinyurl.com/mrxjpcth.

[27] *See, e.g.*, *Chairman Paul Seeks Information from ATF on Secret Firearm Surveillance Program*, U.S. Senate Comm. on Homeland Sec. & Governmental Affs. (Apr. 10, 2025), https://tinyurl.com/yvznrdzt.

[28] *See, e.g.*, John Crump, *Leaked Document Shows ATF Spying on Gun Buyers Through NICS ~ VIDEO*, AmmoLand (Apr. 26, 2021), https://tinyurl.com/3fjvxckr; Emily Miller, *EXCLUSIVE: ATF Gains Financial Information on Potential Gun Buyers for Warrantless Tracking, Documents Show*, Epoch Times, https://tinyurl.com/yebs5m7z (Mar. 23, 2023); Emily Miller, *EXCLUSIVE: FBI Carried Out Warrantless Monitoring on Man Who Posted Guns for Sale on Facebook*, Epoch Times, https://tinyurl.com/yv6mm39c (July 25, 2023); *FBI Weaponizes Background Checks to Enforce California Gun Ban*, ZeroHedge (Apr. 1, 2025), https://tinyurl.com/44p2ad9d; Lisa Greene, *GOA Exposes FBI's Abuse of NICS Monitoring System Tracking Gun Owners*, MSN (Apr. 7, 2025), https://tinyurl.com/ynhzu9rt; Lisa Greene, *ATF Faces Backlash After Memo Reveals*

Plaintiffs were not members of the traditional media, the "[f]reedom of the press is a 'fundamental personal right' which 'is not confined to newspapers and periodicals. It necessarily embraces … every sort of publication which affords a vehicle of information and opinion.'" *Branzburg v. Hayes*, 408 U.S. 665, 704 (1972).

### E. First Amendment Rights Override Any Claim of FOIA Exemption.

The district court erroneously disclaimed *HRDC*'s applicability because, in *HRDC*, this Court did not examine the agency's claims of exemption, whereas here, the district court found Defendant's exemptions to have been properly invoked. Op. 21, App.062 (*HRDC* "moved directly to the question of … the authority to issue the clawback order at all, without deciding whether Exemption 6 applied … in the first place"). *But see HRDC v. U.S. Park Police*, 2023 U.S. Dist. LEXIS 151815 (D.D.C. Aug. 29, 2023) (district court analyzing exemption). But this blatant circumvention of *HRDC* is too cute by half. No examination of the agency's post hoc "woulda coulda shoulda" claims of exemption was necessary (in *HRDC* or here), because both cases involve documents that *already were* released. *See* Section I(A), *supra*.

But even if the district court's lengthy analysis of FOIA exemptions and conclusion that Defendant had properly invoked them (Op. 9-17, App.050-58) were somehow relevant to the analysis, First Amendment protections override any claim

---

*Program Tracking Legal Gun Owners*, <u>MSN</u> (Apr. 30, 2025), <u>https://tinyurl.com/53djpuz9</u>.

of FOIA exemption when it comes to documents already possessed by the press. For example, in *Smith v. Daily Mail*, 443 U.S. at 101, the Court rejected a prior restraint despite the asserted "significance of the State's interest in protecting the identity of juveniles." *Cf.* Op. 13-14, App.054-55 (imposing a prior restraint because "Exemptions 6 and 7(C) … shield[] … records that 'could reasonably be expected to constitute an unwarranted invasion of personal privacy'").

In other words, while the government has no obligation to produce exempt records under FOIA, once production has occurred – here, records of a covert surveillance program – the government may not "prohibit … unfavorable sentiments against those who administer the Government … if they should at any time deserve the contempt or hatred of the people...." *Near*, 283 U.S. at 722. Thus, any government action to protect the secrecy of records must occur on the front end, and cannot be retroactively imposed at the cost of First Amendment press rights. As the Court explained in *Cox Broad. Corp. v. Cohn*, 420 U.S. 469 (1975), the government "may not impose sanctions on the publication of truthful information contained in official … records open to public inspection," and "[i]f there are privacy interests to be protected … the [government] must respond by means which avoid public documentation or other exposure of private information" in the first place. *Id.* at 495, 496. But "[o]nce true information is disclosed … the press cannot be sanctioned

for publishing it." *Id.* at 496; *see also HRDC*, 126 F.4th at 718 (government cannot "put the proverbial cat back in the bag").

**F. Defendant Cannot Articulate the Harm Publication Would Cause, Much Less Identify Some "Direct, Immediate, and Irreparable Damage to Our Nation or Its People."**

In order to sustain a prior restraint on First Amendment publication, "disclosure" must "surely result in direct, immediate, and irreparable damage to our Nation or its people." *N.Y. Times*, 403 U.S. at 730 (Stewart, J., concurring).[29] Both here and below, Defendant emphasized the sensitive nature of some of the information at issue, arguing that "the public interest" will be harmed because "Congress expressly foreclosed ATF from disclosing [certain] information...." Opp. to Stay at 13. But while that might pass muster to justify a FOIA exemption, not only does Defendant's showing fail to meet the "very heavy burden" it must bear (*N.Y. Times*, 403 U.S. at 731 (White, J., concurring)), but also Plaintiffs already disclaimed any interest in publicizing sensitive or potentially damaging information contained in the unredacted production – such as Social Security numbers, or the identities of undercover informants. *See* Mot. for Stay at 19-20;[30] *see also* Va. Code

---

[29] *See also Sierra Club v. EPA*, 505 F. Supp. 3d 982, 991 (N.D. Cal. 2020) ("EPA has identified no serious and non-speculative harm likely to result from Sierra Club's continued possession of the lobbyists' names and business email addresses...."); *Cowan v. FCC*, 2022 U.S. Dist. LEXIS 166363, at *43 (D.D.C. Sept. 15, 2022) ("requir[ing] supplemental briefs on the issue of foreseeable harm" to resolve "the merits" of a temporary protective order in a FOIA case).

[30] Document #2132120, filed August 26, 2025

§ 59.1-443.2 (criminalizing publication of SSNs).  In other words, there is *no* risk of *any* harm to the public interest here.  Nor is there any risk of some grave, irreparable harm to Defendant – other than having information about its illegal and unconstitutional mass surveillance regime see the light of day.

In fact, having entirely refused to engage substantively with Plaintiffs, Defendant – and certainly not the district court below – has no idea just what it is that Plaintiffs wish to say publicly about the records at issue.  The district court never had the curiosity to find out, and Defendant refused to discuss Plaintiffs' planned use(s) of the records.  Indeed, Plaintiffs are barred from speaking even generally about the contents of the unredacted production, as they are "ORDERED … not [to] disseminate, disclose, or *use for any purpose* those portions of the records."  Order at 1, App.071 (emphasis added).

In stark contrast to the nonexistent harm Defendant faces here (much less grave harm to "our Nation or its people"), Plaintiffs are irreparably harmed "each passing day" they remain enjoined from reporting the news.  *Neb. Press Ass'n v. Stuart*, 423 U.S. 1327, 1329 (1975) ("Where … a direct prior restraint is imposed upon the reporting of news by the media, each passing day may constitute a separate and cognizable infringement of the First Amendment. … [A]ny First Amendment infringement that occurs with each passing day is irreparable."); *see also Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976) ("A prior restraint … has an immediate

and irreversible sanction. … The damage can be particularly great when the prior restraint falls upon the communication of news and commentary on current events."); *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *Capital Cities Media, Inc. v. Toole*, 463 U.S. 1303, 1304 (1983) (Brennan, J., in chambers) ("It is clear that even a short-lived 'gag' order in a case of widespread concern to the community constitutes a substantial prior restraint and causes irreparable injury to First Amendment interests as long as it remains in effect."). The district court's injunction never should have issued, and this Court should reverse.

### G. The District Court's Prior Restraint Should Be Ended Immediately.

Other than regurgitating precisely the same arguments *HRDC* already rejected, Defendant to date has offered no reason – none – for why the district court's gag order does not constitute a noxious and unsanctionable prior restraint. Indeed, to "[p]rohibit[] the publication of a news story or an editorial is the essence of censorship." *In re Providence Journal Co.*, 820 F.2d at 1345. Notwithstanding the district court's curious conclusion that its order could not possibly be characterized as "an unconstitutional prior restraint" (Op. 29, App.070), the Supreme Court has explained that the term "'prior restraint' is used 'to describe … judicial orders *forbidding* certain communications when issued in advance of the time that such

communications are to occur.' … Temporary restraining orders and permanent injunctions – *i.e.*, court orders that actually forbid speech activities – are classic examples of prior restraints." *Alexander v. United States*, 509 U.S. 544, 550 (1993).

As Judge Moss explained in a similar case, to order a FOIA requester to "return or destroy" inadvertently produced FOIA materials which they "obtained through no unlawful or improper action," would be an "extraordinary step." *100Reporters*, 602 F. Supp. 3d at 84. The district court appears to be the first (at least in this Circuit, *see* Op. 22, App.063)[31] to impose such an "extraordinary" prior restraint in a case where Defendant cannot even credibly articulate any harm that will occur if Plaintiffs were to print the news.

Reversing a district court's entry of a "patently invalid" injunction against the press, the Sixth Circuit chastised a district court for not even having "appear[ed] to realize that it was engaging in a practice that, under all but the most exceptional circumstances, violates the Constitution: preventing a news organization from publishing information in its possession on a matter of public concern." *P&G v. Bankers Tr. Co.*, 78 F.3d 219, 225 (6th Cir. 1996). As another court explained in *Sierra Club v. EPA*, 505 F. Supp. 3d 982, 991 (N.D. Cal. 2020), "[m]any mistakes by litigants have consequences." Judge Moss similarly rejected the notion that an

---

[31] In *Rocky Mountain Wild, Inc. v. U.S. Forest Serv.*, 56 F.4th 913 (10th Cir. 2022), the Tenth Circuit affirmed a district court's FOIA clawback order without any First Amendment analysis.

agency automatically is entitled to a "mulligan" in spite of its negligence. *See 100Reporters*, 602 F. Supp. 3d at 84. Indeed, "[w]here, as here, the government has failed to police itself in disseminating information, it is clear … that [targeting] the press for its subsequent publication can hardly be said to be" a justifiable prior restraint. *Fla. Star*, 491 U.S. at 538.

Even for documents that owe their existence to the judicial process (the documents here do not), courts are loath to enjoin their publication once obtained by the press. One district court recently excoriated trial counsel for the United States after it sought an *ex parte* gag order prohibiting a journalist from disseminating information contained in a defendant's sealed presentence report. As the court remarked at a hearing on the matter:

> [W]e … were highly skeptical that there was any basis for the relief that was being requested. … I would like to understand why … you only have to look so far as the *Pentagon Papers* case to understand that there was no basis for this relief to have been requested. … [T]here isn't legal authority for it. I guess I'm wondering why it was presented in the first place. [Motion Hearing Transcript at 5:25-6:18, *United States v. Hoover*, No. 3:21-cr-00022-MMH-MCR (M.D. Fla. Aug. 14, 2023), ECF #309.]

Perhaps unsurprisingly, counsel for the United States had no answer and sheepishly withdrew that request for an indefensible prior restraint. *See id.* at 7:23.

Yet Plaintiffs now find themselves in the same position: "wondering why" Defendant sought – and a district court *granted* – such a lawless restraint on the

press, when it is clear that there was "no basis" for it in the first place. This Court should not allow this First Amendment violation to persist any longer.

## CONCLUSION

For the foregoing reasons, the district court's prior restraint should be reversed, and judgment entered for Plaintiffs.


Dated: November 6, 2025                    Respectfully submitted,

*/s/ Robert J. Olson*                        */s/ Stephen D. Stamboulieh*
Robert J. Olson                            Stephen D. Stamboulieh
WILLIAM J. OLSON, P.C.                     STAMBOULIEH LAW, PLLC
370 Maple Avenue West, Ste. 4              P.O. Box 428
Vienna, VA 22180                           Olive Branch, MS 38654
T: (703) 356-5070                          T: (601) 852-3440
rob@wjopc.com                              stephen@sdslaw.us

**CERTIFICATE OF COMPLIANCE**

I hereby certify that:

1. This Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this Brief contains <u>12,867</u> words, excluding parts of the Brief exempted by Fed. R. App. P. 32(f); and

2. This Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this Brief has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Stephen D. Stamboulieh*
Stephen D. Stamboulieh

**CERTIFICATE OF SERVICE**

I hereby certify that, on November 6, 2025, a copy of the foregoing brief was filed using this Court's CM/ECF system. All participants in the case are registered CM/ECF users and will be served electronically by that system.

*/s/ Stephen D. Stamboulieh*
Stephen D. Stamboulieh