**ORAL ARGUMENT NOT SCHEDULED**

**No. 25-5309**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———————————

GUN OWNERS OF AMERICA, INC., and GUN OWNERS FOUNDATION,

Plaintiffs-Appellants,

v.

BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES,

Defendant-Appellee.

———————————

On Appeal from the United States District Court
for the District of Columbia
No. 1:21-cv-02919-ABJ
Hon. Amy Berman Jackson

———————————

**APPENDIX**

———————————

Robert J. Olson                           Stephen D. Stamboulieh
WILLIAM J. OLSON, P.C.                     STAMBOULIEH LAW, PLLC
370 Maple Avenue West, Ste. 4             P.O. Box 428
Vienna, VA 22180                          Olive Branch, MS 38654
T: (703) 356-5070                         T: (601) 852-3440
rob@wjopc.com                             stephen@sdslaw.us


*Attorneys for Plaintiffs-Appellants*
*Gun Owners of America, Inc. and Gun Owners Foundation*

# APPENDIX TABLE OF CONTENTS

Docket:                                                                App.001

Plaintiffs' Motion for Extension of Time (Doc. 22)                     App.009

Plaintiffs' Opp. to Defendant's Motion for Protective Order (Doc. 28)  App.013

Order on Protective Order (Doc. 30)                                    App.036

Motion to Lift Protective Order Excerpts (Doc. 36)                     App.040

Opinion (Doc. 42)                                                      App.042

Order (Doc. 43)                                                        App.071

Notice of Appeal (Doc. 48)                                             App.073

APPEAL,CLOSED,TYPE I-FOIA

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:21-cv-02919-ABJ

GUN OWNERS OF AMERICA, INC et al v. BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES

Assigned to: Judge Amy Berman Jackson

Case in other court: USCA, 25-05309

Cause: 05:552 Freedom of Information Act

Date Filed: 11/05/2021
Date Terminated: 07/24/2025
Jury Demand: None
Nature of Suit: 895 Freedom of Information Act
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**GUN OWNERS OF AMERICA, INC.**                    represented by    **George L. Lyon , Jr.**
BERGSTROM ATTORNEYS
1929 Biltmore Street, NW
Washington, DC 20009
202-669-0442
Fax: 202-483-9267
Email: gll@bergstromattorneys.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Jeffrey Olson**
WILLIAM J. OLSON, PC
370 Maple Avenue West
Suite 4
Vienna, VA 22180
(703) 356-5070
Fax: (703) 356-5085
Email: rob@wjopc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephen D. Stamboulieh**
STAMBOULIEH LAW, PLLC
P.O. Box 428
Olive Branch, MS 38654
(601) 852-3440
Email: stephen@sdslaw.us
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**GUN OWNERS FOUNDATION, INC.**                    represented by    **George L. Lyon , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Jeffrey Olson**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephen D. Stamboulieh**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

| | |
|---|---|
| **BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES** | represented by **Sean Michael Tepe**<br>U.S. DEPARTMENT OF JUSTICE<br>555 Fourth Street, NW<br>Washington, DC 20530<br>(202) 252-2533<br>Fax: (202) 252-2599<br>Email: sean.tepe@usdoj.gov<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**Christopher Charles Hair**<br>U.S. ATTORNEY'S OFFICE FOR THE<br>DISTRICT OF COLUMBIA<br>601 D Street, NW<br>Washington, DC 20530<br>202-252-2543<br>Email: christopher.hair@usdoj.gov<br>*TERMINATED: 04/08/2022* |

| Date Filed | # | Docket Text |
|---|---|---|
| 11/05/2021 | 1 | COMPLAINT against BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES ( Filing fee $ 402 receipt number ADCDC-8847691) filed by GUN OWNERS OF AMERICA, INC, GUN OWNERS FOUNDATION. (Attachments: # 1 FOIA to ATF, # 2 ATF Response, # 3 Summons, # 4 Summons, # 5 Summons, # 6 Civil Cover Sheet)(Stamboulieh, Stephen) Modified on 11/18/2021 (znmw). (Entered: 11/05/2021) |
| 11/08/2021 | | Case Assigned to Judge Amy Berman Jackson. (zsb) (Entered: 11/08/2021) |
| 11/08/2021 | 2 | SUMMONS (3) Issued Electronically as to BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, U.S. Attorney and U.S. Attorney General (Attachments: # 1 Notice and Consent)(adh, ) (Entered: 11/08/2021) |
| 11/09/2021 | 3 | NOTICE of Appearance by Robert Jeffrey Olson on behalf of GUN OWNERS FOUNDATION, GUN OWNERS OF AMERICA, INC (Olson, Robert) (Entered: 11/09/2021) |
| 12/16/2021 | 4 | NOTICE of Appearance by Christopher Charles Hair on behalf of All Defendants (Hair, Christopher) (Entered: 12/16/2021) |
| 12/16/2021 | 5 | ANSWER to Complaint by BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES.(Hair, Christopher) (Entered: 12/16/2021) |

| 12/17/2021 | | MINUTE ORDER. Before the Court in this FOIA case are a complaint and an answer. The requirements of Local Civil Rule 16.3 and Rule 26(f) of the Federal Rules of Civil Procedure appear to be inapplicable. Defendant shall file a dispositive motion or, in the alternative, a report setting forth the schedule for the completion of its production of documents to plaintiff, on or before January 14, 2022. SO ORDERED. Signed by Judge Amy Berman Jackson on 12/17/2021. (lcabj1) (Entered: 12/17/2021) |
|---|---|---|
| 12/17/2021 | 6 | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by GUN OWNERS OF AMERICA, INC. (Stamboulieh, Stephen) (Entered: 12/17/2021) |
| 12/17/2021 | 7 | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by GUN OWNERS FOUNDATION, INC. (Stamboulieh, Stephen) (Entered: 12/17/2021) |
| 01/14/2022 | 8 | Joint STATUS REPORT by BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES. (Hair, Christopher) (Entered: 01/14/2022) |
| 01/18/2022 | | MINUTE ORDER. Pursuant to the joint status report 8 , it is ORDERED that the parties submit another joint status report by March 15, 2022. SO ORDERED. Signed by Judge Amy Berman Jackson on 1/18/2022. (lcabj1) (Entered: 01/18/2022) |
| 03/15/2022 | 9 | Joint STATUS REPORT by BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES. (Hair, Christopher) (Entered: 03/15/2022) |
| 03/16/2022 | | MINUTE ORDER. Pursuant to the most recent status report 9 , it is ORDERED that the parties submit another joint status report by May 16, 2022. Signed by Judge Amy Berman Jackson on 3/16/2022. (lcabj1) (Entered: 03/16/2022) |
| 04/08/2022 | 10 | NOTICE OF SUBSTITUTION OF COUNSEL by Sean Michael Tepe on behalf of BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES Substituting for attorney Christopher Hair (Tepe, Sean) (Entered: 04/08/2022) |
| 05/16/2022 | 11 | Joint STATUS REPORT by BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES. (Tepe, Sean) (Entered: 05/16/2022) |
| 05/24/2022 | | MINUTE ORDER. Pursuant to the recent status report 11 , it is ORDERED that the parties submit another joint status report by July 15, 2022. Signed by Judge Amy Berman Jackson on 5/24/22. (DMK) (Entered: 05/24/2022) |
| 07/15/2022 | 12 | Joint STATUS REPORT by BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES. (Tepe, Sean) (Entered: 07/15/2022) |
| 07/15/2022 | | MINUTE ORDER. In light of the most recent status report 12 , it is ORDERED that the parties submit another joint status report by September 13, 2022. Signed by Judge Amy Berman Jackson on 7/15/2022. (lcabj1) (Entered: 07/15/2022) |
| 09/13/2022 | 13 | Joint STATUS REPORT by BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES. (Tepe, Sean) (Entered: 09/13/2022) |
| 09/14/2022 | | MINUTE ORDER. In light of the most recent status report 13 , it is ORDERED that the parties submit another joint status report by November 14, 2022. Signed by Judge Amy Berman Jackson on 9/14/2022. (lcabj1) (Entered: 09/14/2022) |
| 11/14/2022 | 14 | Joint STATUS REPORT by BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES. (Tepe, Sean) (Entered: 11/14/2022) |

| | | |
|---|---|---|
| 11/16/2022 | | MINUTE ORDER. In light of the most recent status report 14 , it is ORDERED that the parties submit another joint status report by January 13, 2023. Signed by Judge Amy Berman Jackson on 11/16/2022. (lcabj1) (Entered: 11/16/2022) |
| 01/13/2023 | 15 | Joint STATUS REPORT by BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES. (Tepe, Sean) (Entered: 01/13/2023) |
| 02/01/2023 | | MINUTE ORDER. In light of the most recent status report 15 , it is ORDERED that the parties submit another joint status report by March 14, 2023. Signed by Judge Amy Berman Jackson on 2/1/2023. (lcabj1) (Entered: 02/01/2023) |
| 03/13/2023 | 16 | Joint STATUS REPORT by BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES. (Tepe, Sean) (Entered: 03/13/2023) |
| 03/14/2023 | | MINUTE ORDER. In light of the most recent status report 16 , it is ORDERED that the parties submit another joint status report by May 15, 2023. Signed by Judge Amy Berman Jackson on 3/14/2023. (lcabj1) (Entered: 03/14/2023) |
| 05/15/2023 | 17 | Joint STATUS REPORT by BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES. (Tepe, Sean) (Entered: 05/15/2023) |
| 05/16/2023 | | MINUTE ORDER. In light of the most recent status report 17 , it is ORDERED that the parties submit another joint status report by July 14, 2023. Signed by Judge Amy Berman Jackson on 5/16/2023. (lcabj1) (Entered: 05/16/2023) |
| 07/14/2023 | 18 | Joint STATUS REPORT by BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES. (Tepe, Sean) (Entered: 07/14/2023) |
| 07/17/2023 | | MINUTE ORDER. In light of the most recent status report 18 , it is ORDERED that the parties submit another joint status report by September 12, 2023. Signed by Judge Amy Berman Jackson on 7/17/2023. (lcabj1) (Entered: 07/17/2023) |
| 09/12/2023 | 19 | Joint STATUS REPORT by BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES. (Tepe, Sean) (Entered: 09/12/2023) |
| 09/13/2023 | | MINUTE ORDER. In light of the most recent status report 19 , it is ORDERED that the parties submit another joint status report by November 14, 2023. Signed by Judge Amy Berman Jackson on 9/13/2023. (lcabj1) (Entered: 09/13/2023) |
| 09/13/2023 | 20 | MOTION for Protective Order *Expedited Motion for Protective Order* by BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES. (Attachments: # 1 Barnett Declaration, # 2 Text of Proposed Order)(Tepe, Sean) (Entered: 09/13/2023) |
| 09/14/2023 | | MINUTE ORDER. Plaintiff must file any opposition to defendant's Motion for Protective Order 20 by Tuesday, September 19, 2023. Signed by Judge Amy Berman Jackson on 9/14/2023. (lcabj1) (Entered: 09/14/2023) |
| 09/14/2023 | 21 | NOTICE of Appearance by George L. Lyon, Jr on behalf of All Plaintiffs (Lyon, George) (Entered: 09/14/2023) |
| 09/15/2023 | 22 | MOTION for Extension of Time to File Response/Reply by GUN OWNERS FOUNDATION, INC., GUN OWNERS OF AMERICA, INC.. (Attachments: # 1 Text of Proposed Order Proposed order)(Lyon, George) (Entered: 09/15/2023) |
| 09/15/2023 | 23 | Memorandum in opposition to re 22 Motion for Extension of Time to File Response/Reply filed by BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES. (Tepe, Sean) (Entered: 09/15/2023) |
| 09/16/2023 | 24 | REPLY to opposition to motion re 22 MOTION for Extension of Time to File Response/Reply filed by GUN OWNERS FOUNDATION, INC., GUN OWNERS OF |

| | | |
|---|---|---|
| | | AMERICA, INC.. (Lyon, George) (Entered: 09/16/2023) |
| 09/18/2023 | | MINUTE ORDER granting [22] Motion for Extension of Time. The Court has considered defendant's motion for a protective order [20] , its request for expedition [20] , plaintiff's request for additional time to respond [22] , defendant's opposition [23] , and the reply [24] , as well as the representations contained in plaintiff's motion concerning how it plans to treat the records covered by the motion while the matter is under advisement. In an effort to balance and accommodate both the circumstances that prompted the request for the protective order as well as plaintiff's counsel's legitimate need for additional time, it is hereby ORDERED in the Court's discretion that plaintiff must file its response by October 13, 2023, and it is FURTHER ORDERED that pending resolution of the motion for protective order, plaintiff must sequester the FOIA records that were inadvertently produced on September 6, 2023, and that it shall not disseminate, disclose, or use those records or their contents for any purpose pending the Court's ruling on the [20] Motion for Protective Order. Signed by Judge Amy Berman Jackson on 9/18/2023.(lcabj1) (Entered: 09/18/2023) |
| 09/29/2023 | [25] | MOTION to Clarify re Order on Motion for Extension of Time to File Response/Reply,,,,, Set/Reset Deadlines,,,, by GUN OWNERS FOUNDATION, INC., GUN OWNERS OF AMERICA, INC.. (Attachments: # [1] Emails between counsel)(Stamboulieh, Stephen) (Entered: 09/29/2023) |
| 10/04/2023 | [26] | RESPONSE re [25] MOTION to Clarify re Order on Motion for Extension of Time to File Response/Reply,,,,, Set/Reset Deadlines,,,, filed by BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES. (Tepe, Sean) (Entered: 10/04/2023) |
| 10/05/2023 | [27] | REPLY to opposition to motion re [25] MOTION to Clarify re Order on Motion for Extension of Time to File Response/Reply,,,,, Set/Reset Deadlines,,,, filed by GUN OWNERS FOUNDATION, INC., GUN OWNERS OF AMERICA, INC.. (Stamboulieh, Stephen) (Entered: 10/05/2023) |
| 10/05/2023 | | MINUTE ORDER. Upon consideration of the [25] motion to clarify, [26] opposition, and [27] reply, the [25] motion to clarify is DENIED. There was nothing unclear about the Court's September 18, 2023 minute order that "pending resolution of the motion for protective order, plaintiff must sequester the FOIA records that were inadvertently produced on September 6, 2023, and that it shall not disseminate, disclose, or use those records or their contents for any purpose." Plaintiffs appear to be asking the Court not to "clarify" the minute order, but to revise it, to permit plaintiffs to review and possibly use the unredacted records in connection with their response to the motion for protective order [20] . This should not be necessary, and it is not consistent with the clear directive from this Court that the inadvertently produced records be "sequestered" until the matter is resolved. The Court also notes that both parties appear to be using the motion for clarification as a means to remind the Court of their positions on the pending motion for a protective order, and that is not a good use of the parties' resources or the Court's time. Plaintiffs' motion for clarification is unnecessarily lengthy and contentious, as it includes a number of factual representations that do not bear on the very limited issue for which they claim they are seeking clarification, and defendants are similarly under the misimpression that aggressive and repetitive pleadings are more persuasive. The Court assures both parties that they are not. Signed by Judge Amy Berman Jackson on 10/5/2023. (lcabj1) (Entered: 10/05/2023) |
| 10/13/2023 | [28] | Memorandum in opposition to re [20] Motion for Protective Order filed by GUN OWNERS FOUNDATION, INC., GUN OWNERS OF AMERICA, INC.. (Attachments: # [1] Dec of Aidan Johnston)(Stamboulieh, Stephen) (Entered: 10/13/2023) |

| 10/20/2023 | 29 | REPLY to opposition to motion re 20 MOTION for Protective Order *Expedited Motion for Protective Order* filed by BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES. (Tepe, Sean) (Entered: 10/20/2023) |
|---|---|---|
| 10/30/2023 | 30 | ORDER granting 20 Motion for Protective Order. See Order for details. Signed by Judge Amy Berman Jackson on 10/30/2023. (lcabj1) (Entered: 10/30/2023) |
| 11/14/2023 | 31 | Joint STATUS REPORT by BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES. (Tepe, Sean) (Entered: 11/14/2023) |
| 11/16/2023 | | MINUTE ORDER. The November 14, 2023 joint status report 31 reveals that while there is little in dispute with respect to the merits of this FOIA action, the parties are still at odds over the unredacted material that was inadvertently produced to the plaintiffs on September 6, 2023 in the defendant's 13th production of records. The Protective Order 30 bars the use or dissemination of this material unless and until the Court determines that the portions of the documents defendant maintains should have been redacted are not properly covered by an exemption and should be disclosed. Plaintiffs state that they are not challenging the withholdings in this case, but at the same time, they are still seeking access to the documents that are subject to the Protective Order. Given the Court's ruling that the Protective Order is to remain in place unless the Court finds that the exemptions were not properly invoked, in its view, the only course of action is to ORDER that the defendant must file its motion for summary judgment with respect to both the validity of the withholdings being invoked in connection with the material and the public domain issue with respect to those documents by December 8, 2023; any opposition and cross-motion, if any, to be supported by a single memorandum of points and authorities, is due December 22, 2023; the reply, and cross-opposition, if necessary, to be supported by a single memorandum, is due January 12, 2024; and the cross-reply, if necessary, is due January 19, 2024. If plaintiffs do not, as they report in the status report, dispute the applicability of the exemptions involved, they can say so in the opposition and simply address the public domain issue. SO ORDERED. Signed by Judge Amy Berman Jackson on 11/16/2023. (lcabj1) (Entered: 11/16/2023) |
| 12/08/2023 | 32 | MOTION for Summary Judgment by BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES. (Attachments: # 1 Statement of Facts, # 2 Text of Proposed Order, # 3 2d Barnett Declaration, # 4 Seidel Declaration)(Tepe, Sean) (Entered: 12/08/2023) |
| 12/20/2023 | 33 | RESPONSE re 32 MOTION for Summary Judgment filed by GUN OWNERS FOUNDATION, INC., GUN OWNERS OF AMERICA, INC.. (Attachments: # 1 Statement of Facts Response to Statement of Facts, # 2 Text of Proposed Order Proposed Order)(Stamboulieh, Stephen) (Entered: 12/20/2023) |
| 01/12/2024 | 34 | REPLY re 32 MOTION for Summary Judgment filed by BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES. (Tepe, Sean) Modified on 1/17/2024 (zdp). (Entered: 01/12/2024) |
| 02/11/2025 | 35 | NOTICE OF SUPPLEMENTAL AUTHORITY by BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES (Tepe, Sean) (Entered: 02/11/2025) |
| 03/12/2025 | | MINUTE ORDER. Plaintiffs and defendant are ORDERED to file supplemental briefing, no more than five pages each, on the effect of the D.C. Circuit's opinion in Human Rights Defense Center v. United States Park Police, 126 F.4th 708 (D.C. Cir. 2025), on defendant's pending motion for summary judgment 32 by March 26, 2025. SO ORDERED. Signed by Amy Berman Jackson on 3/12/2025. (lcabj1) (Entered: 03/12/2025) |
| 03/12/2025 | 36 | MOTION Lift Protective Order re 30 Order on Motion for Protective Order, Order on Motion for Extension of Time to File Response/Reply,,,,, Set/Reset Deadlines,,,, by GUN |

| | | |
|---|---|---|
| | | OWNERS OF AMERICA, INC., GUN OWNERS FOUNDATION, INC.. (Stamboulieh, Stephen) (Entered: 03/12/2025) |
| 03/26/2025 | 37 | SUPPLEMENTAL MEMORANDUM re 32 MOTION for Summary Judgment filed by GUN OWNERS OF AMERICA, INC., GUN OWNERS FOUNDATION, INC.. (Stamboulieh, Stephen) Modified event title and link on 3/27/2025 (znmw). (Entered: 03/26/2025) |
| 03/26/2025 | 38 | SUPPLEMENTAL MEMORANDUM to re 32 MOTION for Summary Judgment filed by BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES. (Tepe, Sean) (Entered: 03/26/2025) |
| 03/26/2025 | 39 | Memorandum in opposition to re 36 Motion for Miscellaneous Relief, *Opposition to Plaintiffs' Motion to Lift Protective Order* filed by BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES. (Tepe, Sean) (Entered: 03/26/2025) |
| 03/28/2025 | 40 | REPLY to opposition to motion re 36 Motion for Miscellaneous Relief, filed by GUN OWNERS OF AMERICA, INC., GUN OWNERS FOUNDATION, INC.. (Stamboulieh, Stephen) (Entered: 03/28/2025) |
| 04/11/2025 | | MINUTE ORDER. Defendant must file under seal a copy of the original 115-page 13th production that identified exempt portions with red boxes and the exemption typed over them, but did not actually redact them by April 18, 2025. SO ORDERED. Signed by Judge Amy Berman Jackson on 4/11/2025. (lcabj1) (Entered: 04/11/2025) |
| 04/18/2025 | 41 | SEALED DOCUMENT filed by BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES re Order,, Set Deadlines, (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Attachment A)(Tepe, Sean) (Entered: 04/18/2025) |
| 07/23/2025 | 42 | MEMORANDUM OPINION. Signed by Judge Amy Berman Jackson on 7/23/2025. (lcabj1) (Entered: 07/23/2025) |
| 07/23/2025 | 43 | ORDER granting 32 defendant's motion for summary judgment, and denying as moot 36 plaintiffs' motion to lift temporary protective order. See Order for details. SO ORDERED. Signed by Judge Amy Berman Jackson on 7/23/2025. (lcabj1) (Entered: 07/23/2025) |
| 08/07/2025 | 44 | MOTION to Stay re 42 Memorandum & Opinion, 43 Order by GUN OWNERS FOUNDATION, INC., GUN OWNERS OF AMERICA, INC.. (Attachments: # 1 Memorandum in Support)(Stamboulieh, Stephen) (Entered: 08/07/2025) |
| 08/07/2025 | | MINUTE ORDER. Defendant must respond to 44 plaintiffs' motion to stay by August 13, 2025. SO ORDERED. Signed by Judge Amy Berman Jackson. (lcabj1) (Entered: 08/07/2025) |
| 08/11/2025 | 45 | MOTION for Extension of Time to File Response/Reply as to 44 MOTION to Stay re 42 Memorandum & Opinion, 43 Order by BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES. (Tepe, Sean) (Entered: 08/11/2025) |
| 08/12/2025 | | MINUTE ORDER granting 45 defendant's motion for extension of time to respond. Defendant must respond to plaintiff's motion to stay by August 20, 2025. No further extensions will be granted. SO ORDERED. Signed by Judge Amy Berman Jackson on 8/12/2025. (lcabj1) (Entered: 08/12/2025) |
| 08/20/2025 | 46 | Memorandum in opposition to re 44 MOTION to Stay re 42 Memorandum & Opinion, 43 Order filed by BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES. (Tepe, Sean) (Entered: 08/20/2025) |

| 08/22/2025 | 47 | ORDER denying 44 plaintiffs' motion to stay. See Order for details. Signed by Judge Amy Berman Jackson on 8/22/2025. (lcabj1) (Entered: 08/22/2025) |
| 08/25/2025 | 48 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 42 Memorandum & Opinion, 43 Order, 47 Order on Motion to Stay by GUN OWNERS FOUNDATION, INC., GUN OWNERS OF AMERICA, INC.. Filing fee $ 605, receipt number ADCDC-11909711. Fee Status: Fee Paid. Parties have been notified. (Stamboulieh, Stephen) (Entered: 08/25/2025) |
| 08/26/2025 | 49 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals fee was paid re 48 Notice of Appeal to DC Circuit Court,. (znmw) (Entered: 08/26/2025) |
| 08/26/2025 |  | USCA Case Number 25-5309 for 48 Notice of Appeal to DC Circuit Court, filed by GUN OWNERS FOUNDATION, INC., GUN OWNERS OF AMERICA, INC.. (znmw) (Entered: 08/26/2025) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 10/20/2025 08:56:02 | | |
| **PACER Login:** | stamboulieh | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:21-cv-02919-ABJ |
| **Billable Pages:** | 7 | **Cost:** | 0.70 |

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| GUN OWNERS OF AMERICA, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 21-2919 (ABJ) |
| | ) | |
| BUREAU OF ALCOHOL, TOBACCO, | ) | |
| FIREARMS AND EXPLOSIVES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFFS' MOTION FOR EXTENSION OF TIME TO RESPOND TO**
**DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

Defendant Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") asks this Court to claw back documents that ATF disclosed through FOIA, but which contain various pieces of unredacted information that ATF now claims should not have been disclosed.

ATF asked this Court to grant it this extraordinary relief on an expedited basis.[1]  A short time ago, the Court entered a minute order instructing Plaintiffs to respond substantively by this Tuesday, September 19, 2023.

However, ATF failed to provide the Court with all the relevant facts in its motion.  Indeed, ATF's counsel filed its request for expedited relief only hours after Plaintiffs' counsel assured ATF's counsel that no dissemination of the unredacted records at issue had been made or would be made until ATF's motion is resolved.  *See* ECF #20-1 at 36.  While ATF's filing includes selective quotations from various of counsel's communications, it entirely omits any reference to

---

[1] Pursuant to LCvR 7(m), undersigned counsel conferred with Defendant's counsel with respect to extending Plaintiffs' time to file a substantive response to Defendant's motion.  Defendant opposes Plaintiffs' requested relief.

App.009

yesterday's extensive email, choosing instead to light a five-alarm fire seemingly in an attempt to provoke the Court to rule before full briefing and argument can take place. On the contrary, "a request for protective relief in a FOIA case is an 'extraordinary' ask that should not be granted as a matter of course." *Cowan v. FCC*, No. 21-cv-895-RMM, 2022 U.S. Dist. LEXIS 166363, at *46 (D.D.C. Sept. 15, 2022).

No such alarm is warranted, and expedited treatment would operate to Plaintiffs' detriment. For starters, one of Plaintiffs' counsel is overseas, while the other counsel and his entire family this week tested positive for Covid, leaving he and his wife not only sick, but without childcare. Additionally, those same attorneys have obligations in numerous other cases, including forthcoming deadlines in at least three other federal cases pending against this very Defendant, challenging ATF rulemakings and actions. While ATF may prefer to distract Plaintiffs' counsel from those other complex cases and force them to respond here on an expedited basis, that would be wholly unjustified.

Consideration of ATF's "extraordinary" request is no emergency matter. On the contrary, a response to ATF's motion will require significant and detailed briefing from Plaintiffs and careful consideration by this Court.

First, while it is true there have been some court orders which have prohibited further *use* of or *dissemination* of certain information, ATF here seeks (at bottom) "*deletion*" of that information (arguing that, "as a practical matter," that is the same thing, ECF #20 at 7 n.2).

Second, Plaintiffs intend to consider whether ATF's request here would violate First Amendment rights by operating as a gag order on the press, a form of prior restraint that has almost no precedent in American law.

App.010

Third, as ATF's motion acknowledges, this Court also will be required to evaluate the unapplied redactions themselves, some of which seem to constitute material evidence of an ongoing program of statutory and constitutional violations by ATF which, as a result of this case, has already received significant coverage not only from the press but also garnered interest by members of Congress. To the extent that Plaintiffs are correct that ATF's warrantless surveillance of gun owners is unlawful, and ATF asks this Court to facilitate ATF's effort to cover its tracks, Plaintiffs are not aware of any legal authority for this Court to order the destruction of evidence of government impropriety.

Finally, ATF no doubt would prefer to have this Court focus on bits information that ATF failed to redact and which must be held, have been held, and will be held confidential, such as Social Security numbers, birth dates, and similar personal information. But ATF counsel knew well before filing its motion that there is no risk of disclosure by Plaintiffs' counsel.

Neither Plaintiffs nor their counsel are in some mad rush to fraudulently open new credit cards with the information. On the contrary, it is the mission of Plaintiff *organizations **to protect** the rights and privacy of gun owners **against** the government*.

All of these (and other) issues must be resolved by this Court before it rules on ATF's unprecedented request, which should occur only after full briefing by the parties.

But again, there is no emergency here. Plaintiffs' counsel clearly and directly communicated to ATF that no dissemination of the records at issue will occur prior to this Court's resolution of ATF's motion. ATF's continued demand for expedited treatment, while omitting relevant information, is therefore baseless, frivolous, and vexatious.

For the reasons set forth above, Plaintiffs respectfully ask this Court to find that good cause exists to issue a briefing schedule that will allow Plaintiffs' counsel to return, recover, regroup, and

App.011

prepare briefing on the numerous constitutional and statutory questions raised by ATF's motion.

Defendant has been advised of the filing of this motion, but as of the time of the filing of this

motion, has not expressed a definitive position with respect to grant thereof.

      To that end, Plaintiffs respectfully request up to and including through Friday, October 13,

2023 (30 days) to respond substantively to Defendants' motion.

      Respectfully submitted,

By: /s/ George L. Lyon, Jr.

George L. Lyon, Jr. (D.C. Bar No. 388678)
Bergstrom Attorneys
4000 Legato Road, Suite 1100
Fairfax, VA 22033
202-669-0442, fax 202-483-9267
gll@bergstromattorneys.com
Counsel for plaintiffs

September 14, 2023

### CERTIFICATE OF SERVICE

      I, George L. Lyon, Jr., a member of the bar of this court, certify that I served the foregoing document on all counsel of record for Defendant via the Court's electronic filing system, this 14th day of September 2023.

/s/ George L. Lyon, Jr., DC Bar 388678

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GUN OWNERS OF AMERICA, INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 21-2919 (ABJ) |
| | ) | |
| BUREAU OF ALCOHOL, TOBACCO, | ) | |
| FIREARMS AND EXPLOSIVES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFFS' OPPOSITION TO
## DEFENDANT'S MOTION FOR PROTECTIVE ORDER

### BACKGROUND AND STATEMENT

This case involves a Freedom of Information Act ("FOIA") Request made by Gun Owners of America, Inc. and Gun Owners Foundation ("Plaintiffs") to the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF" or "Defendant") on April 28, 2021.  ECF #1-1.  In it, Plaintiffs sought records related to a secret surveillance program administered by the Federal Bureau of Investigation ("FBI") and used by federal and state law enforcement agencies, including ATF, to monitor and record the firearm purchases of American citizens who are eligible to purchase and possess firearms.  When ATF failed to respond for well over a year,[1] Plaintiffs filed suit on July 5, 2022.  Over the ensuing months, ATF made a series of 12 productions of records to Plaintiffs, showing in detail how the National Instant Criminal Background Check System ("NICS") Monitoring Program has been used to surveil – without a warrant, and often without any

---

[1] On the same date, Plaintiffs submitted an identical request to the FBI (FOIPA Request No.: 1495550-000).  The FBI, unlike ATF, promptly processed and released responsive records, including spreadsheets demonstrating that the FBI and ATF were *actively* monitoring more than a thousand persons.  *See* https://tinyurl.com/ymr7wprx; https://tinyurl.com/4mm72svw.

App.013

particularized suspicion at all – an untold number of Americans whose firearm transactions *are approved* by the FBI and thus are found *eligible* to purchase and possess firearms.

ATF and FBI justify this monitoring program not based on any authority found in federal law.  In fact, federal law expressly denies the federal government the authority to keep records of guns or gun owners, and requires the FBI to destroy information about approved gun transfers (the "NICS Audit Log") within 24 hours.  Rather, Defendant relies entirely on an FBI regulation adopted in 2004 which purports to permit the FBI, within that 24-hour window, to copy, extract, and share information from the NICS Audit Log "with appropriate authorities responsible for investigating, prosecuting, and/or enforcing such law or regulation."  Not only is the FBI's regulation at odds with the statute (and Congressional intent in requiring destruction of NICS records on gun owners), but also the FBI does not administer the NICS Monitoring Program in compliance even with its own defective regulation.  Further, the warrantless surveillance of gun owners – monitoring in real time how Americans exercise their constitutional rights – violates the Second and Fourth Amendments.  Because of these numerous illegalities inherent in this secret government surveillance program, the redacted documents previously released by ATF have resulted in broad media coverage, attention from state legislators, and significant attention from Members of Congress.

On September 6, 2023, Defendant ATF made a thirteenth production to Plaintiffs, which is the subject of these proceedings.  That ATF production contained FOIA redactions that were indicated, but not actually made.  After Plaintiffs' counsel notified counsel for Defendant of this fact, and asked for a redacted version to be shared with the press, ATF and its counsel responded with an increasingly aggressive series of demands that Plaintiffs' counsel immediately destroy all copies of the unredacted production and provide written confirmation of having done so.  Although

Plaintiffs' counsel explained there was no urgency, representing that no dissemination of the records would take place until the matter could be resolved in court, ATF hurriedly filed a motion seeking an unnecessary protective order.  ECF #20 ("MPO" or "Motion").  On September 18, 2023, this Court entered a minute order granting Plaintiffs additional time to respond, but largely granting (in an interim form) the relief sought by Defendant, ordering that, "pending resolution of the motion for protective order, plaintiff must sequester the FOIA records that were inadvertently produced on September 6, 2023, and that it shall not disseminate, disclose, or use those records or their contents for any purpose pending the Court's ruling on the Motion for Protective Order."

Thereafter, Plaintiffs filed a Motion to Clarify (ECF #25), seeking guidance as to whether the Court's minute order's barring any "use" of the documents should be understood to prohibit counsel from responding substantively to ATF's motion, as a complete bar on "use" would prevent discussion (at any level of generality) of the government activities revealed in the documents. After briefing, the Court entered a second minute order on October 5, 2023, denying Plaintiffs' request and stating that Plaintiffs' Motion "appear[s] to be asking the Court not to 'clarify' the minute order, but to revise it, to permit plaintiffs to review and possibly use the unredacted records in connection with their response to the motion for protective order. This should not be necessary, and it is not consistent with the clear directive from this Court that the inadvertently produced records be 'sequestered' until the matter is resolved."  The Court's October 5 Order did not address (and thus effectively denied) Plaintiffs' alternative request to file a brief under seal (*id.* at 6), or to have the Court consider the unredacted production *in camera* (*id.* at 4).

## ARGUMENT

**I.     A Protective Order in a FOIA Case Is an "Extraordinary Ask" and Should Be Treated as Such.**

At the outset, "FOIA does not provide for the compelled return or destruction of inadvertently produced documents." *Hum. Rts. Def. Ctr. v. U.S. Park Police*, 2023 U.S. Dist. LEXIS 151815, at *15-16 (D.D.C. Aug. 29, 2023); MPO at 4, 7.  *See also Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 174 (2004) ("once there is disclosure, the information belongs to the general public.  There is no mechanism under FOIA for a protective order allowing only the requester to see whether the information bears out his theory, or for proscribing its general dissemination."); *but see Rocky Mountain Wild, Inc. v. U.S. Forest Service*, 56 F.4th 913 (10th Cir. 2022) (concluding that *Favish*'s use of "disclosure" applies only when there is "proper[] disclos[ure]").

Although cases considering agencies' requests for temporary sequestration orders in FOIA matters lack uniformity,[2] courts generally have agreed that they possess certain "inherent powers" that can be employed in appropriate cases to "bar parties from disseminating information inadvertently disclosed in FOIA proceedings, <u>at least temporarily</u>." *Cowan v. FCC*, 2022 U.S. Dist. LEXIS 166363, at *44 (D.D.C. Sept. 15, 2022) (emphasis added).  Beyond such temporary orders (some courts question even that authority), courts also question whether they have any authority *at all* to issue clawback orders on a <u>permanent basis</u>.  *See id.* at *46; *Pub. Citizen Health Rsch. Grp. v. FDA*, 953 F. Supp. 400, 404-05 (D.D.C. 1996) (emphasis added) (opining that no

---

[2] Defendant's Motion for a Protective Order fails to bring to the attention of the court any cases contrary to ATF's position, including those within this district.  *See* ECF #20 (failing to mention *100Reporters*, *Memphis Publ'g Co.*, or *Sierra Club*, and omitting any discussion of *Cowan*'s language questioning judicial authority to provide the relief Defendant seeks).  Defendant's Motion thus gives the impression that there is some united front of legal authority supporting its position, when the reality is far different.

constitutional question arose when "this order is *only temporary* in nature"). Additionally, judicial opinions on the issue routinely caution that "[a] court's inherent power is limited by the necessity giving rise to its exercise" because "there is a danger of overreaching when one branch of the Government, without benefit of cooperation or correction from the others, undertakes to define its own authority." *Degen v. United States*, 517 U.S. 820, 829, 823 (1996). Accordingly, courts recognize that "a request for protective relief in a FOIA case is an 'extraordinary' ask that should not be granted as a matter of course." *Cowan*, 2022 U.S. Dist. LEXIS 166363, at *46; *see also Sierra Club v. EPA*, 505 F. Supp. 3d 982, 991, 992 (N.D. Cal. 2020). As the *Sierra Club* court explained, "[m]any mistakes by litigants have consequences," *id.* at 991, and this Court should reject Defendant's contrary notion that it automatically is entitled to a "mulligan" in spite of its negligence. *See 100Reporters v. U.S. Dep't of State*, 602 F. Supp. 3d 41, 84 (D.D.C. 2022).

## II.   Defendant Advances a Self-Serving and Erroneous Legal Standard.

Defendant's Motion asks the Court to apply an erroneous legal standard, suggesting that a mere finding that a FOIA exemption *could have been applied* automatically authorizes the exercise of judicial power to order destruction, return, and nondisclosure of inadvertently produced unredacted documents. *See, e.g.*, MPO at 3 ("[i]f ATF prevails on the merits of its claim that the material in question is shielded from public disclosure … the Court should then order Plaintiff and its counsel to destroy all copies"); ECF #25 Exhibit 1 (suggesting that the parties move to summary judgment briefing about whether certain redactions would have been appropriate, had they been made).[3]

---

[3] Even though Defendant's declaration (ECF #20-1) goes to great lengths to discuss the propriety of FOIA redactions *that were not made* here, resolution of Defendant's Motion does not involve whether certain FOIA exemptions properly *could have been* applied. *See* MPO at 7 (admitting as much). Indeed, the 'could have, would have, should have' horse has left the barn, and this matter now involves the Court's consideration of various factors (discussed below) to determine whether

Judge Moss recently rejected a nearly identical argument made by the State Department that, "if the Court finds that Defendant correctly asserted FOIA Exemptions," the Court should "direct Plaintiffs to return or destroy" the documents. *100Reporters*, 602 F. Supp. 3d at 84. As Judge Moss put it, this standard would afford the government "a mulligan." *Id.* (noting that the government "cites a single [out-of-circuit] decision" for its position, which "offers no legal analysis and cites no precedent in support of that directive," and concluding that the government "fails to identify any authority that the Court has to … take the extraordinary step of ordering a news organization and a journalist to return materials to a government agency, which they obtained through no unlawful or improper action"). Judge Moss denied the government's motion without prejudice, explaining that he would need "far more" in order to censor a journalist by ordering destruction of inadvertently produced records, but the State Department does not appear to have pursued the matter further. *See* Docket, *100Reporters v. U.S. Dep't of State*, No. 1:19-cv-01753-RDM (D.D.C.).

Judge Moss is not alone. Rather, as another judge of this Court recently explained, a finding that certain information *could have qualified* for an exemption "does not end the matter." *Cowan*, 2022 U.S. Dist. LEXIS 166363, at *31. That opinion (at *47) cited with approval *Sierra Club v. EPA*, 505 F. Supp. 3d 982 (N.D. Cal. 2020), which similarly observed that there is no "compelling rationale for holding that a court should wield its inherent authority to compel the return or destruction of documents produced under FOIA any time the producing agency *could have invoked* a statutory exemption but inadvertently failed to do so." *Id.* at 991 (emphasis added).

---

it is appropriate to exercise an "extraordinary" power to order destruction of records that Defendant *did* release to Plaintiffs.

In other words, Defendant is not entitled to a 'get-out-of-jail-free' card from this Court simply because it *could have* applied various FOIA redactions that it, in fact, did not apply.

### III.   The Appropriate Analysis Requires the Court Consider Several Factors, Which Weigh in Plaintiffs' Favor.

A review of the relatively few reported FOIA clawback cases "illustrate[s] several significant considerations" that guide courts' analyses.  *Cowan*, 2022 U.S. Dist. LEXIS 166363, at *44.  These cases make clear that Defendant is not entitled to a protective order simply because unredacted material may fall within a FOIA exemption.   Instead, to be entitled to such extraordinary relief, the unredacted material must serve "no discernible public interest" and be "reasonably … expected to harm" an interest that FOIA exemptions seek to protect.  *Hum. Rts. Def. Ctr.*, 2023 U.S. Dist. LEXIS 151815, at *16; *Cowan*, 2022 U.S. Dist. LEXIS 166363, at *45; *see, e.g.*, *ACLU v. DOD*, 2012 U.S. Dist. LEXIS 194264 (S.D.N.Y. Mar. 20, 2012) (permanent clawback order appropriate for an inadvertently disclosed classified military document that could harm national security); *Sierra Club*, 505 F. Supp. 3d at 991 (declining to compel destruction of inadvertently disclosed names and email addresses of petroleum lobbyists because "EPA has identified no serious and non-speculative harm likely to result"); *Hum. Rts. Def. Ctr.*, 2023 U.S. Dist. LEXIS 151815, at *16-17 (emphasis added) (order not to disclose, disseminate, or make use of inadvertently disclosed names of people who had brought claims against the Park Police appropriate because "there [wa]s no discernible public interest in having the names of private citizens disclosed" in that case).  Courts also examine whether the agency discovered its own error or instead was notified by the requester (*ACLU*, 2012 U.S. Dist. LEXIS 194264, at *4; *Cowan*, 2022 U.S. Dist. LEXIS 166363, at *11; *100Reporters*, 602 F. Supp. 3d at 83; *cf.* MPO at 2 ("Counsel's email alerted ATF to the inadvertent production")), and the extent and scope of the agency's negligence (*Memphis Publ'g Co. v. FBI*, 189 F. Supp. 3d 28, 30 (D.D.C. 2012)).

At bottom, courts recognize that an order commanding sequestration or destruction of records should not be granted reflexively, merely because the government asks, and that any exercise of such "extraordinary" judicial power must be "'a reasonable response to the problems and needs that provoke it.'"  *Hum. Rts. Def. Ctr.*, 2023 U.S. Dist. LEXIS 151815, at *16 (*citing Degen*, 517 U.S. at 823-24).  Most (if not all) of these factors weigh in Plaintiffs' favor here, and thus this Court should deny Defendant's Motion.

## A. ATF's Covert Surveillance of Lawful Firearm Purchasers Is a Matter of Great Public Concern that Has Sparked Not Only Keen Media Interest, but Also Attention from Congress.

Congress created NICS as a means for licensed dealers to verify quickly whether a prospective firearm purchaser is eligible to receive a firearm under federal and state law.  *See* 18 U.S.C. § 922(t)(2).  But it recently has been revealed that ATF and the FBI have been abusing that verification process to surveil Americans *who are eligible* to purchase firearms.  *See* ECF #20-1 at ¶14 ("Monitoring records is designed for suspects under investigation by ATF that are not otherwise prohibited.").  In April of 2021, journalist John Crump reported that leaked ATF documents revealed the agency's involvement in a covert, warrantless surveillance program of an untold number of law-abiding firearm purchasers, through daily monitoring[4] of all firearm transactions that are processed through the NICS system.[5]

The targets of this surveillance program are those merely suspected of having committed or being engaged in various crimes;[6] they do not receive notice that their transactions are being or

---

[4] This involves a daily check of the NICS Audit Log, because federal law requires information on approved transactions to be deleted within 24 hours.
[5] John Crump, *Leaked Document Shows ATF Spying on Gun Buyers Through NICS ~ VIDEO*, AmmoLand (Apr. 26, 2021), https://tinyurl.com/3fjvxckr.
[6] John Crump, *ATF & FBI Monitor Over 1,000 Law-Abiding Gun Owners*, AmmoLand (Oct. 22, 2021), https://tinyurl.com/y77fpzt7.

have been monitored, and there is no mechanism to appeal such surveillance – which can continue indefinitely, ungoverned by any law or regulation and unmonitored by any court.[7]   Under this surveillance scheme, virtually anyone can request surveillance – ATF records evidence requests not only from federal law enforcement agents (ATF and FBI), but also from state and local officials who participate in various task forces, and requests made even by *regulatory* personnel within ATF who are not supposed to engage in law enforcement.[8]   *See* ECF #20-1 ("agents and personnel").

Finally, although the FBI asks that requesters supply a reason to surveil a target, there is no minimum standard for such reasons (*e.g.*, probable cause, reasonable suspicion, etc.), or procedure for review of such justifications.   Thus, examples of tenuous justifications abound.   Even unverified anonymous tips suffice, suggesting the program is ripe for abuse with zero oversight whatsoever.[9]   In one case, ATF requested NICS monitoring of a man who purchased a shotgun shortly after news of the highly publicized Derek Chauvin verdict was released.   Strikingly, "[t]he agent did not even claim … that his suspect could be a straw purchaser.   He just said he *may* use a gun for rioting."[10]   Other requests arguably are even more troubling.   For example, ATF sought daily surveillance of numerous individuals because, in the agency's opinion after obtaining the

---

[7] Emily Miller, *EXCLUSIVE: Documents Show FBI and ATF Warrantless Surveillance Through Gun Background Checks*, Epoch Times, https://tinyurl.com/ycxf8a62 (Jan. 17, 2023).

[8] *See* ATF Industry Operations Manual at 1 (Oct. 2019), https://tinyurl.com/mpn52pjt (making clear that Industry Operations Investigators are regulatory personnel only and that they should report criminal violations to the appropriate authorities).

[9] Miller, *supra* note 7; Emily Miller, *EXCLUSIVE: ATF Gains Financial Information on Potential Gun Buyers for Warrantless Tracking, Documents Show*, Epoch Times, https://tinyurl.com/yebs5m7z (Mar. 23, 2023).

[10] Miller, *supra* note 7 (emphasis added). The man had commented about wanting to "get the shotgun tonight," which was apparently suspicious. *Id.* With no judicial determination of probable cause or even a legal standard to apply, an expression of one's anticipation of riots and the present desire to defend oneself apparently justified future, warrantless, open-ended transaction monitoring.

App.021

persons' financial records,[11] they were deemed *too poor* to be purchasing firearms for lawful

purposes.[12]  Even seeming firearm hobbyists have been tracked without their knowledge.  In one

such case, FBI monitored a man "for at least six months" on the grounds that "he had a 'habit' of

purchasing new guns, tinkering with them, losing interest, and subsequently selling them" at a loss

– all perfectly lawful conduct.[13]  As of 2021, Defendant[14] and its FBI[15] counterparts were actively

monitoring the NICS transactions of "over 1,000 American citizens," all the while collecting not

only their personal information but also detailed information about their exercise of constitutional

rights.[16]

Defendant, as a result of advocating the wrong standard, devotes only two sentences of its

MPO to arguing there is no public interest in dissemination.  MPO at 6.  But even then, Defendant

only makes that claim as to *some* of the categories of records it claims are at issue.  *Id.* ("names,

social security numbers, birth dates … email addresses, and phone numbers").  Obviously,

Plaintiffs have no interest in anyone's social security number, and that is not what this litigation

involves.

The documents now in question were produced by ATF in response to the request described

above – but that is the entirety of what counsel is permitted to say about the disputed records.  This

Court's minute orders prevent Plaintiffs from saying anything more about those records – including

whether there is a public interest in disclosure of various portions of the redacted records.

---

[11]  Emily Miller, *EXCLUSIVE: Texas Coordinates with ATF to Share Income of Residents for Warrantless Monitoring*, Epoch Times, https://tinyurl.com/4fath9wy (Apr. 18, 2023).
[12]  *See id.*; *see also* Miller, *supra* note 7.
[13]  Emily Miller, *EXCLUSIVE: FBI Carried Out Warrantless Monitoring on Man Who Posted Guns for Sale on Facebook*, Epoch Times, https://tinyurl.com/yv6mm39c (July 25, 2023).
[14]  https://tinyurl.com/ymr7wprx.
[15]  https://tinyurl.com/4mm72svw.
[16]  Crump, *supra* note 6.

Nevertheless, based on the coverage and inquiries about ATF's prior disclosures in this series, it is evident that there has been and continues to be a significant public interest in information related to the FBI and ATF's warrantless NICS Monitoring Program.  The articles cited above are just some of the examples of the broad media coverage this story has inspired.[17]  In addition, Members of Congress have taken interest in the story and called for reform.  *See* Exhibit 1, Declaration of Aidan Johnston at ¶¶9-10.  So too for state legislators.[18]  At least one piece of legislation has been shelved, in part, due to the negative attention brought by this story.  Exhibit 1 at ¶10.  *See Aguirre v. SEC*, 551 F. Supp. 2d 33, 58 (D.D.C. 2008) ("Given the extent to which plaintiff's allegations have been found to be credible by the Senate Report, and the strong public interest in ferreting out possible improprieties at the SEC, disclosure is clearly warranted....").  Thus, even though barred from discussing the public's interest in the documents in question, it is clear the public interest weighs in Plaintiffs' favor here.

## B. The Public Has a Significant Interest in Learning About the NICS Monitoring Program, Which Violates Statutory Prohibitions and Constitutional Rights.

The Brady Handgun Violence Prevention Act of 1993 established the NICS System.  Pub L. No. 103-159, 107 Stat. 1536.  Pursuant to the Brady Act, the FBI is permitted to gather various information about prospective gun purchasers in order to run that information against records contained in various federal databases, to determine whether the prospective transferee is eligible

---

[17] *See, e.g.*, Guns & Gadgets 2nd Amendment News, *SHOCKER!!! FBI & ATF Caught SECRETLY Monitoring Gun Owners!!*, <u>YouTube</u> (Jan. 15, 2023), https://youtu.be/crVB8GRHlGU; God Family and Guns, *ATF Is Monitoring Your Gun Purchases : This Leaked Document Is Proof!!*, <u>YouTube</u> (Apr. 28, 2021), https://youtu.be/qlXCFooQVWo; Ben Whedon, *FBI, ATF Use Gun Background Checks to Track Specific Purchasers, Documents Show*, <u>Just the News</u>, https://tinyurl.com/mtuw3mtn (Jan. 13, 2023); P. Gardner Goldsmith, *Docs Reveal FBI, ATF Have Been Monitoring Law-Abiding Gun Buyers Through Federal Background Checks*, <u>mrcTV</u> (Jan. 17, 2023), https://tinyurl.com/yckzptp8; Dan Zimmerman, *FBI Monitoring Gun Owners Who Sell Firearms via Facebook*, <u>Truth About Guns</u> (July 23, 2023), https://tinyurl.com/mr4ay2mt.
[18] Miller, *supra* note 11.

11

to possess the firearm.  *See* 28 C.F.R. § 25.9(a).  However, aware of the potential for abuse when the government is handed information in real-time about firearm transfers (the exercise of an enumerated constitutional right), Congress explicitly prohibited the federal government from "establish[ing] … any system of registration of firearms, firearms owners, or firearms transactions or dispositions...."  18 U.S.C. § 926(a).  Likewise, Section 103(i) of the Brady Act, now codified at 34 U.S.C. § 40901, prohibits the government from "us[ing] [NICS] to establish any system for the registration of firearms, firearm owners, or firearm transactions or dispositions, except with respect to persons, prohibited by section 922(g) or (n) of title 18 or State law, from receiving a firearm."  In order to give further teeth to those restrictions, starting in 2004 (and made permanent in 2012), Congress included annual appropriations provisions requiring the FBI to destroy all NICS records of "approved" firearm transactions within 24 hours.  Consolidated Appropriations Act of 2004, Pub. L. No. 108-199, 118 Stat. 3, 95; 28 C.F.R. § 25.9(b)(1)(iii).

In 1998, contemporaneously with the effective date of the Brady Act, the FBI enacted a regulation promising that "the FBI will not establish a federal firearms registry.  The FBI is expressly barred from doing so...."  63 *Fed. Reg.* 58303 (Oct. 30, 1998).  The FBI assured that it would use the newly created NICS Audit Log (a record of all firearm transactions that are run through the system) "solely for the purpose of satisfying the statutory requirement of ensuring the privacy and security of the NICS and the proper operation of the system."  *Id.*  Directly responding to "concern that the Audit Log would allow [states] and law enforcement agencies access to records of approved transfers," the FBI promised that this was a non-issue, as "such information is available only to the FBI and only for the purposes of conducting audits...."  *Id.* at 58304.

But the FBI's promise did not last long.  Only one month later, another FBI rulemaking adopted a regulation to permit that very same "disclosure" of Audit Log records to "law

enforcement agencies … [i]f, during the course of any activity or operation of the system authorized by regulations … any record is found by the system which indicates" a violation of law. 63 *Fed. Reg.* 65227 (Nov. 25, 1998).  In 2004, the FBI further watered down that regulatory language, the current form of which now provides that "[i]nformation in the NICS Audit Log, including information not yet destroyed … that indicates … a violation or potential violation of law or regulation, may be shared with appropriate authorities responsible for investigating, prosecuting, and/or enforcing such law or regulation."  28 C.F.R. § 25.9(b)(2)(ii).  The NICS Monitoring Program is purportedly justified based on that regulation.  *See* ECF #20-1 ¶14.

As further detailed below, the NICS Monitoring Program (i) conflicts with the statutory text, (ii) operates without warrant and often without any reasonable or particularized suspicion, (iii) permits requests for monitoring from, and shares information with, non-law enforcement personnel, (iv) violates the Second and Fourth Amendments, (v) defies congressional intent, and (vi) has caused members of Congress serious concerns, irrespective of constitutionality or legality. For each of these reasons, the American public has an overriding interest in learning more about the NICS Monitoring Program.

First, the program conflicts with 18 U.S.C. § 922(t)(2)(C), which flatly requires destruction of "all records of the system with respect to the call (other than the identifying number and the date the number was assigned) and all records of the system relating to the person or the transfer." When ATF (and other) personnel request warrantless NICS surveillance of individuals, FBI's copying, retention, and forwarding of such records necessarily preserves a record "relating to" a NICS-based transaction, contrary to the statute's unyielding imperative that such a record be "destroy[ed]," and in violation of the congressional and regulatory imperative that such destruction take place "within 24 hours after the FFL receives communication of the determination that the

transfer may proceed."  18 U.S.C. § 922(t)(2)(C); 28 C.F.R. § 25.9(b)(1)(iii); 118 Stat. 3, 95. Defendant's claim that the FBI's *regulation* permits such unlawful retention does not cure this *statutory* violation.

Second, the program utilizes warrantless and sometimes even suspicionless surveillance to accumulate firearm purchase records from people *who are not prohibited* from possessing firearms.  *See supra* notes 5-13 (reporting on various instances of surveilling innocuous and lawful behavior).  The NICS Monitoring Program enables unaccountable agency monitoring, in real time, of the time and place of a target's Second Amendment activity, which is analogous to the information gathered via pen registers and "trap and trace" devices for phone calls.  *See* 18 U.S.C. § 3127(3), (4) (providing that the call information gleaned shall "not include the contents of any communication").[19]  The Monitoring Program also provides information about the firearms themselves, linking make, model, and serial number to a person's name, address, and other identifying information – analogous to the government monitoring what books a person borrows from the library, or what websites he visits.[20]

Third, the program has allowed access to NICS information by all sorts of government persons – a "requestor can be a 'Special Agent, Industry Operations Investigator (IOI), Intelligence

---

[19] In the case of pen registers and "trap and trace" devices, Congress recognized the risk of abuse and accordingly made federal law *require* "[c]*ourt approval* … to obtain" such surveilled information.  C.J. Williams & Sean R. Berry, <u>Federal Criminal Practice</u> 31 (2d ed. 2021) (emphasis added); *see* 18 U.S.C. § 3122.  In stark contrast, the NICS Monitoring Program requires no court approval.  Nor could it, as it lacks any statutory basis.  Here, Congress did not even permit court approval to allow retention of NICS Audit Log records, instead requiring their destruction *without exception*.

[20] *See, e.g.*, *Riley v. California*, 573 U.S. 373, 395, 396 (2014) (requiring a warrant to search a cell phone's contents and noting that "[a]n Internet search and browsing history, for example, can be found on an Internet-enabled phone and could reveal an individual's private interests or concerns" and "[d]ata on a cell phone can also reveal where a person has been").

Research Specialist, Intelligence Analyst, etc.'"[21]  Yet such personnel are not law enforcement persons, do not investigate or prosecute criminal violations of federal law, and certainly have no business monitoring and retaining records of Americans' gun purchases.

Fourth, the program violates the Second and Fourth Amendments.  When the Second Amendment's plain text "covers" an individual's conduct (in this case, the acquisition of arms, a threshold step to "keep[ing]" arms by persons that the government concedes are eligible to possess them), such conduct is presumptively protected, and governmental regulations affecting that conduct[22] must find support in widespread Founding-era tradition.  *See N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2126 (2022).  Obviously, no such tradition of government monitoring exists, so Defendant's program violates the right to keep and bear arms.  Further, the "basic purpose of [the Fourth] Amendment[] … is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials."  *Camara v. Mun. Ct. of S.F.*, 387 U.S. 523, 528 (1967).  Just as how "individuals have a reasonable expectation of privacy in the whole of their physical movements" and "society[] expect[s] … that law enforcement agents and others would not – and indeed, in the main, simply could not – secretly monitor and catalogue every single movement of an individual's car for a very long period," so too is there a reasonable expectation of privacy from daily surveillance in one's personal firearm transactions and a societal expectation that law enforcement does not "secretly monitor and catalogue every single" such transaction.  *Carpenter v. United States*, 138 S. Ct. 2206, 2217 (2018).  After all, the public should be able to reasonably *expect* that the government does exactly what the law says – that it destroys "all records of the system relating to the person or the transfer" within "24 hours."  18 U.S.C.

---

[21] Crump, *supra* note 5.
[22] Indeed, news that the government is surveilling unknown targets' firearm purchases can and will discourage people from purchasing firearms for fear of appearing "on a list."

§ 922(t)(2)(C); 28 C.F.R. § 25.9(b)(1)(iii).   If the government does not, such a program is unreasonable, unwarranted, and offensive to the Fourth Amendment.

Fifth, the program operates contrary to Congress's expressly stated plan for the NICS system, which was that the federal government would be barred from keeping or using records related to Americans' firearms purchases beyond the initial check.   It is deeply ironic that the present dispute involves the government's effort to prohibit the use and compel the destruction of records about a secret government program that uses and refuses to destroy records about gun sales in defiance of Congress.

Sixth, aside from the constitutionality or legality of the NICS Monitoring Program, state and federal legislators are concerned about Defendant's overreach.   It is not a stretch to believe that such persons may seek to use legislative means to rectify the FBI and ATF's abuse of the NICS system.

Ultimately, the Court's view of Plaintiffs' arguments regarding ATF abuses with respect to the NICS Monitoring Program does not resolve the issue.   What matters is the fact that there are serious arguments that the program is both unconstitutional and unlawful.[23]   It is clearly in the public interest to learn more about this government surveillance program occurring behind closed doors.

**C. Defendant Has Failed to Argue that Plaintiffs' Possession or Even Limited Use of Certain Redacted Records Will Lead to Harm.**

As to the reasonable expectation of harm factor, *Cowan* is instructive.   Notably, Defendant cites *Cowan*, but only as a prior instance of a court granting a partial protective order.   MPO at 5. Yet the *Cowan* court explicitly noted that even satisfaction of a FOIA exemption's criteria "does

---

[23] Again, the Court's minute orders prevent Plaintiffs from discussing (even generally) the legality or constitutionality of any portion of the redacted records.

not end the matter" because FOIA, as amended, prohibits the government from withholding even properly exempt materials "unless it also 'reasonably foresees that disclosure would harm an interest protected by' the FOIA exemption." 2022 U.S. Dist. LEXIS 166363, at *31. That judge then "request[ed] that the parties supplement the record to demonstrate the harm that will result from the public disclosure of the withheld materials." *Id.* at *47.

This Court's minute orders prevent Plaintiffs from arguing whether there is any legitimate use(s) for any discrete part(s) of the redacted records at issue, or opining whether such use(s) might lead to any sort of harm. But even so, Defendant's Motion completely omits any discussion of this factor that is necessary to the Court's analysis. To be sure, Defendant's declaration contains various allegations (ECF #20-1 ¶¶ 20,[24] 26, 28), but none of them contain citations to legal authority, and none are incorporated into Defendant's Motion, much less buttressed with sound legal argument. Of course, "a court may disregard legal arguments improperly set forth in a declaration." *Elghossain v. Bank Audi S.A.L.*, 2023 U.S. Dist. LEXIS 175684, at *37 (S.D.N.Y. Sept. 29, 2023); *see also Shapiro v. DOJ*, 507 F. Supp. 3d 283, 299 (D.D.C. 2020) ("The Court … assur[ed] Plaintiffs that it would disregard legal arguments in the declarations....").

Even so, Plaintiffs have expressed their desire to narrow the scope of what is in dispute (ECF #25 at 2). Although this Court's minute orders prevent Plaintiffs from discussing even the sorts of redacted records at issue, ATF has already described various categories of information it

---

[24] In its declaration, ATF claims that "[p]ublic release of [the records] would create substantial risks that **ongoing** Federal, state, and local law enforcement **investigations** would be prematurely disclosed and could thereby jeopardize those investigations...." ECF #20-1 at ¶20 (emphasis added). But that claim directly conflicts with ATF's prior claim in its Joint Status Report that the records at issue here are "associated with **now-closed investigations**...." ECF #18 ¶2 (emphasis added). Indeed, that was ATF's professed reason for reprocessing those records. *Id.*

claims are contained in the redacted records. *See, e.g.*, ECF #20-1 at ¶28 (emphasis added) ("*the information ... reveals*").

For example, ATF reports that the redactions contain "personally identifying information of the subjects of its investigation, including **birth dates** and **social security numbers**." ECF #20 at 4 (emphasis added). To the extent that is true, neither Plaintiffs nor counsel have any interest in such information, and would agree to destroy any such records. However, this Court's order effectively prohibits destruction of some *portions* of records without destroying *all* of the records.

Likewise, ATF reports that "each email includes the **names**, **email addresses**, and sometimes **telephone numbers** for multiple ATF and FBI agents and staff." ECF #20-1 at ¶15. To the extent that is true, neither Plaintiffs nor counsel have any interest in the names, email addresses, or telephone numbers of government personnel, and would destroy any such records.

Nor do Plaintiffs or counsel have any interest in the identity of "citizens who provided information to the Government in support of a criminal investigation … witnesses or confidential sources...." ECF #20-1 at ¶¶15, 25. The same for "various law enforcement file numbers and codes." *Id*. ¶28.

Plaintiffs submit that destruction of any such portions of the records would alleviate the harms that Defendant's declaration alleges could occur. This Court should not conclude that any harm is likely to occur from Plaintiffs' possession of any other categories or portions of the redacted records Defendant claims exist, without knowing what those redactions might be, what they might show, and how they might be used.

## IV. The Government's Request that the Court Order Destruction of Inadvertently Disclosed, Newsworthy Documents Invites an Unconstitutional Prior Restraint.

As this Circuit explains, "sunlight is said to be the best of disinfectants." *Jud. Watch, Inc. v. U.S. Dep't of State*, 344 F. Supp. 3d 77, 78 (D.D.C. 2018) (quoting Justice Brandeis). While

Defendant may prefer that various details of its covert monitoring activities never see the light of day, its Motion for Protective Order seeks relief that conflicts with core First Amendment rights. Even in the best of scenarios, an agency's request that a court order a FOIA requester destroy documents is an "'extraordinary' ask that should not be granted as a matter of course." *Cowan*, 2022 U.S. Dist. LEXIS 166363, at *46. Such a request becomes even more suspicious when the government asks a court to command a nonprofit, public-interest organization, that has repeatedly engaged in quintessential press activity with regard to the very matter at issue, to destroy voluntarily disclosed government records of a warrantless surveillance program. The government's ask here thus represents a request for a classic prior restraint that is subject to the strongest presumption of invalidity. *See N.Y. Times Co. v. United States*, 403 U.S. 713, 714 (1971); *see also Times-Picayune Publ'g Corp. v. Schulingkamp*, 419 U.S. 1301, 1307 (1974).[25]

To be sure, the Supreme Court has recognized a few clearly delineated and carefully circumscribed exceptions to the First Amendment's flat ban on prior restraints, such as courts' "special solicitude for preserving fairness in a criminal trial," *Times-Picayune*, 419 U.S. at 1307, sealed documents that are considered "judicial records,"[26] or presentencing reports prepared for

---

[25] Prior restraints are among the most heavy-handed restrictions on expressive rights, in that they prevent speech from ever occurring. *See Bd. of Trs. of Leland Stanford Junior Univ. v. Sullivan*, 773 F. Supp. 472, 474 (D.D.C. 1991) (noting that "a prior restraint on speech … allows the government to suppress the dissemination of information in advance of publication"). Accordingly, "[p]rior restraints are permitted 'only in exceptional cases,'" *id.* (quoting *Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 716 (1931)), because generally, "[e]ven a restraint of speech for a limited period is inconsistent with the First Amendment." *Id.* n.7; *see also Capital Cities Media, Inc. v. Toole*, 463 U.S. 1303, 1304 (1983) (Brennan, J., in chambers) ("It is clear that even a short-lived 'gag' order in a case of widespread concern to the community constitutes a substantial prior restraint and causes irreparable injury to First Amendment interests as long as it remains in effect."); *Neb. Press Ass'n v. Stuart*, 423 U.S. 1327, 1329 (1975) ("Where … a direct prior restraint is imposed upon the reporting of news by the media, each passing day may constitute a separate and cognizable infringement of the First Amendment.").

[26] *Pub. Citizen Health Rsch. Grp.*, 953 F. Supp. at 405; *see also Smith v. Daily Mail Pub. Co.*, 443 U.S. 97, 105 (1979) (distinguishing "unlawful press access to confidential judicial proceedings").

judges in criminal cases.  *See, e.g.*, *United States v. Smith*, 123 F.3d 140, 152 (3d Cir. 1997) (collecting cases).  But none of those scenarios is even arguably implicated here.  Nor does this case involve FOIA documents "inadvertently included with the material supporting defendants' joint motion to dismiss" filed with a court.  *Astley v. Lawson*, 1991 U.S. Dist. LEXIS 21611, at *27 (D.D.C. Jan. 11, 1991).  Nor can Defendant rely on authorities discussing protective orders relating to civil discovery, where "[a] litigant has no First Amendment right of access to information made available *only for purposes of trying his suit*."  *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 (1984) (emphasis added).

None of these exceptions applies when a government party voluntarily, yet allegedly inadvertently, produces FOIA material to a requester outside of a court's docket or discovery procedures.  Indeed, the D.C. Circuit has recognized that *Seattle Times* "emphasized that a 'party may disseminate the identical information covered by the protective order as long as the information is gained through means independent of the court's processes,' and upheld the order at issue in that case in part because it did 'not restrict the dissemination of the information if gained from other sources.'"  *In re Rafferty*, 864 F.2d 151, 155 (D.C. Cir. 1988) (citation omitted); *see also P&G v. Bankers Tr. Co.*, 78 F.3d 219, 225 (6th Cir. 1996) (finding that *Seattle Times* "does not govern the situation where an independent news agency, having gained access to sealed documents, decides to publish them").

Here, Plaintiffs did not "gain[] the information … only by virtue of the trial court's discovery processes" or any other "court[] … process[]."  *Rafferty*, 864 F.2d at 155.  Nor did Plaintiffs employ any deception, ploy, trickery, or other scheme to obtain the unredacted records.  Rather, Plaintiffs (entirely unbeknownst to them) were handed unredacted materials by Defendant

itself, pursuant to Defendant's statutory FOIA obligations that exist separate and apart from this case.

The only cases of which Plaintiffs are aware which have dealt with a First Amendment claim in an "inadvertent disclosure" FOIA case are *ACLU v. DOD*, 2012 U.S. Dist. LEXIS 194264, at *14 (S.D.N.Y. Mar. 20, 2012) (finding that "classified information remains classified notwithstanding 'any unauthorized disclosure,'" notwithstanding "that Plaintiffs acquired the Document innocently"), and *Pub. Citizen Health Rsch. Grp. v. FDA*, 953 F. Supp. 400, 404 (D.D.C. 1996) (finding First Amendment case law "distinguishable" because the case involved a third-party intervenor, and not "the party that disclosed the information [*i.e.*, the government agency] seeking to prevent its dissemination").   However, in deciding that case, Judge Urbina acknowledged that a permanent court order "prohibiting [a party] from disseminating or using the information contained in [an inadvertently released FOIA document]" might create "First Amendment concern[s]," being "'the kind of classic prior restraint that requires exacting First Amendment scrutiny.'"  953 F. Supp. at 404-05 (citing *Seattle Times*, 467 U.S. at 26).

As noted above, Plaintiffs' First Amendment argument should not be construed as a desire to publicize or use the social security numbers or birth dates of subjects of government monitoring, or the identifies of confidential informants (*see* ECF #20-1 ¶25), information for which there is no public interest in dissemination.  Nor do Plaintiffs have any desire to publicize or use contact information for government officials (*see id.* ¶15).  But, as Defendant alleged, the redacted records also "reveal[]" information such as "some discussion of the investigation," including "allegations of wrongdoing" and "specific law enforcement procedures and techniques" and "some discussion of [an] investigation."  *Id.* ¶¶15, 25, 28.  This Court's minute orders prohibit Plaintiffs from "us[ing] [the] records or their contents for any purpose," to include even generally describing what

sorts of information might be in the records, whether any such government activities revealed might be unlawful or unconstitutional, whether the public has any interest in knowing about it, or whether any harm would occur.  *See Multi AG Media LLC v. Dep't of Agric.*, 380 U.S. App. D.C. 1, 8 (2008) (quoting *U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)) (discussing FOIA's "basic purpose" as being "the citizens' right to be informed about what their government is up to").  Nevertheless, this Court certainly could infer from Defendant's persistence that various portions of the documents may be newsworthy.  A court order "[p]rohibiting the publication of a news story or an editorial" is a prior restraint and violates the First Amendment, "the essence of censorship."  *In re Providence Journal Co.*, 820 F.2d 1342, 1345 (1st Cir. 1986).

## CONCLUSION

It is a sad and ironic twist that the ATF professes its desire to protect the privacy of gun owners, considering this case involves ATF's covert surveillance program that for years has been spying on, invading the privacy of, and gathering private information about those very persons.  It is more ironic still that ATF seeks to protect that information vis-à-vis Plaintiffs, nonprofit organizations whose mission is to protect and defend the rights (including the privacy) of gun owners against government infringement.  This Court should deny Defendant's request to force Plaintiffs to sequester, to not use, and to destroy records about a secret government program that fails to sequester, nefariously uses, and fails to destroy records about gun sales that Congress's own *statutory protective order* declares must be destroyed and not used.

App.034

Alternatively, should this Court grant the relief that Defendant seeks, including that Plaintiffs and counsel destroy the records in question, Plaintiffs respectfully ask the Court to stay that part of its ruling pending the opportunity for Plaintiffs to seek appellate review.

Respectfully submitted,

October 13, 2023

_s/ Stephen D. Stamboulieh_
Stephen D. Stamboulieh
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS  38654
(601) 852-3440
stephen@sdslaw.us
DC District Court Bar# MS0009

George L. Lyon, Jr. (D.C. Bar No. 388678)
Bergstrom Attorneys
4000 Legato Road, Suite 1100
Fairfax, VA 22033
202-669-0442, fax 202-483-9267
gll@bergstromattorneys.com

Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I, Stephen D. Stamboulieh, hereby certify that on the 13th of October 2023, I have caused the foregoing document or pleading to be filed with this Court's CM/ECF system which generated a notice and delivered the document to all counsel of record.

_By: Stephen D. Stamboulieh_
Stephen D. Stamboulieh

App.035

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GUN OWNERS OF AMERICA, INC,<br>et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>BUREAU OF ALCOHOL,<br>TOBACCO, FIREARMS AND<br>EXPLOSIVES,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 21-2919 (ABJ) |

## ORDER

Defendant Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") has filed an expedited motion for a protective order to shield from dissemination, disclosure, or use certain unredacted material that was inadvertently produced to plaintiffs in response to a Freedom of Information Act ("FOIA") request. *See* Def.'s Expedited Mot. for Protective Order and Mem. in Support [Dkt. # 20] ("Mot.") at 1, 3. In light of the Court's implied power to issue a temporary protective order for inadvertently produced FOIA materials, the Court will grant defendant's motion for a protective order and order plaintiffs to temporarily sequester the file until a decision regarding defendant's proposed withholding of portions of the records can be made on the merits.

## BACKGROUND

Defendant alleges that on September 6, 2023, in its thirteenth production made to plaintiffs, it inadvertently produced to plaintiffs' counsel a 115-page PDF file of material that did not include the redactions the defendant intended to assert on the grounds that portions of the records were

exempt under FOIA.[1]  Mot. at 1; Pls.' Opp. to Mot. [Dkt # 28] ("Opp.") at 2 ("[The] ATF production contained FOIA redactions that were indicated, but not actually made.").  When defendant learned of its mistake, it asked plaintiffs' counsel to delete the inadvertent production. Mot. at 2; Opp. at 2.  Approximately twenty minutes later, defendant sent a new, redacted version of the 115-page production, and again asked plaintiffs' counsel to delete the file.  Mot. at 2.  After approximately three days, defendant advised that if plaintiffs would not confirm deletion of the file, it would move for a protective order in this Court.  *Id.*  Defendant filed its motion on September 13, 2023.  *See* Mot.  Plaintiffs oppose the motion, and the matter has been fully briefed. *See* Mem. in Opp. to Mot. [Dkt # 28] ("Opp."); Reply to Opp. [Dkt # 29] ("Reply").

### ANALYSIS

Although FOIA does not specifically provide for protective orders or the compelled return or destruction of inadvertently produced material, *see generally* 5 U.S.C. § 552, federal courts have "long 'understood that certain implied powers must necessarily result to our Courts of justice from the very nature of their institution,' which 'are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'"  *Hum. Rts. Def. Cntr. v. United States Park Police*, 2023 WL 5561602, at *6 (D.D.C. Aug. 29, 2023), citing *Wilson v. FCC*, 2022 WL 4245485, at *5 (D.D.C. Sept. 15, 2022). These implied powers have been routinely used by courts in this district to prevent the dissemination of information that has been inadvertently disclosed by the government in a FOIA proceeding, particularly if the information is arguably covered by a FOIA exemption.  *Id.*, citing *Wilson*, 2022 WL 4245485 at *16 (ordering plaintiff not to disclose, disseminate, or make

---

1    Defendant asserts that it has made limited redactions pursuant to FOIA exemptions 3, 6, and 7(C)-(E).  *See* Mot. at 4.

use of the inadvertent disclosure pending further briefing and resolution of the propriety of agency's withholding); *Pub. Citizen Health Rsch. Grp. v. FDA.*, 953 F. Supp. 400, 404 (D.D.C. 1996) (granting temporary protective order prohibiting the dissemination of inadvertently disclosed information and finding this would not infringe on First Amendment concerns because it was temporary in nature). A court's implied power to manage its own affairs is "limited by the necessity giving rise to its exercise," and its use must be "a reasonable response to the problems and needs that provoke it." *Degen v. United States*, 517 U.S. 820, 823–24, 829 (1996).

Plaintiffs argue that the proper standard for FOIA clawback cases requires the court to consider whether the unredacted material serves "no discernible public interest," or whether it can be "reasonably . . . expected to harm" an interest that FOIA exemptions seek to protect. Opp. at 7, citing *Hum. Rts. Def. Cntr.*, 2023 WL 5561602 at *6; *Wilson*, 2022 WL 4245485 at *15. However, it is not apparent from plaintiffs' cited cases that this standard should apply to *temporary* protective orders controlling inadvertently disclosed information,[2] which is what defendant is requesting, or whether it should instead be limited to permanent bars on dissemination. *See Wilson*, 2022 WL 4245485 at *15 ("[C]ourts may appropriately issue *temporary* protective orders controlling mistakenly disclosed information.") (emphasis in original); Mot. at 3.

---

[2]     Plaintiffs also cite *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 174 (2004), for the proposition that "once there is disclosure, the information belongs to the general public." Opp. at 4. But *Favish* is plainly inapplicable to the case at hand because it dealt with information that had been *properly disclosed*, not inadvertently produced. *See Rocky Mountain Wild, Inc. v. United States Forest Serv.*, 56 F.4th 913, 930 (10th Cir. 2022) ("[A]n agency cannot tell a FOIA requester who it can share records with once the agency *properly discloses* the records.") (emphasis added); *see also Pub. Citizen Health Rsch. Grp.*, 953 F. Supp. at 404 (distinguishing "the proposition that once the government has put information into the public domain, a court is powerless to stop publication of such information" from a situation in which the government "*inadvertently* inserted . . . information into the public domain.") (emphasis in original).

In any event, considering the nature of defendant's described redactions – which include birth dates, social security numbers, and contact information for law enforcement, among other confidential and protected information – the material sought to be protected suggests that it *would* be reasonably expected to harm defendant's interests under FOIA.  *See* Mot. at 4.  Further, because a protective order would only be in place pending a resolution on the merits of any challenges to defendant's invocation of FOIA exemptions, the Court finds that no harm will flow from an order preventing dissemination of the redacted material unless and until it determines that it is not covered by an exemption and should be disclosed pursuant to typical FOIA procedures.  *See Pub. Citizen Health Rsch. Grp.*, 953 F. Supp. at 404.  Accordingly, the Court concludes that a protective order is warranted.

## CONCLUSION

For all of these reasons, defendant's motion for a protective order [Dkt. # 20] is hereby **GRANTED,** and it is further

**ORDERED** that, until further order of this Court, plaintiffs and their counsel (1) shall sequester the September 6, 2023, inadvertently produced FOIA records and the contents of those records, and (2) shall not disseminate, disclose, or use for any purpose those records or the contents of those records.

**SO ORDERED.**

AMY BERMAN JACKSON
United States District Judge

DATE:  October 30, 2023

App.039

at *18.  In other words, a clawback order "is of a different species" compared to such basic, implied necessities as "admit[ting] members to the bar, disciplin[ing] bar members, punish[ing] contempt of court," and so on.  *Id.*  Properly understood, the D.C. Circuit's entire decision was grounded in construing what Article III permits.  *See id.* at *16.  The Court's "non-constitutional analysis" therefore referred to its decision not to decide a *First Amendment* question.  *Id.* at *21.

And fourth, even if the D.C. Circuit's decision did not directly foreclose this Court's protective order (it does), the panel's decision expressly did not address the significant constitutional hurdles this Court still would need to address to maintain its order.  Indeed, because its inherent-authority analysis "was dispositive," the D.C. Circuit did not analyze whether "the First Amendment prevents the district court from barring the use or dissemination of FOIA-exempt material a FOIA requester lawfully obtained due to the government's mistake."  *Id.* at *21.  But had it done so, all authorities would have pointed to a finding of unconstitutionality.  Indeed, Judge Moss has described "ordering a news organization and a journalist to return materials to a government agency, which they obtained through no unlawful or improper action," would be an "extraordinary step."  *100Reporters v. U.S. Dep't of State*, 602 F. Supp. 3d 41, 84 (D.D.C. 2022) (refusing to take such a step).  And, at most, "[p]rior restraints are permitted 'only in exceptional cases,'" none of which reach the mere disclosure of unredacted, *non-classified* FOIA materials.  *Bd. of Trs. of Leland Stanford Junior Univ. v. Sullivan*, 773 F. Supp. 472, 474 (D.D.C. 1991); *see also* ECF #28 at 19 (collecting cases).  Defendant would be hard-pressed to identify any historical example of a court *preventing the media from reporting the news*.

## CONCLUSION

The D.C. Circuit has squarely rejected the notion that a court holds the "inherent authority" to impose limitations on the use, dissemination, or reporting of inadvertently disclosed FOIA

App.040

materials, and this Court's "temporary" invocation of such authority has lasted for 17 months. Plaintiffs respectfully request that the protective order be lifted, and that Defendant's Motion for Summary Judgment be denied.

                                   Respectfully submitted,

March 12, 2025

*/s/ Stephen D. Stamboulieh*                    Robert J. Olson
Stephen D. Stamboulieh                          (D.C. Bar No. 1029318)
Stamboulieh Law, PLLC                           William J. Olson, P.C.
P.O. Box 428                                    370 Maple Avenue West, Suite 4
Olive Branch, MS  38654                         Vienna, VA 22180-5615
(601) 852-3440                                  703-356-5070 (telephone)
stephen@sdslaw.us                               703-356-5085 (fax)
DC District Court Bar# MS0009                    rob@wjopc.com (e-mail)

                                                George L. Lyon, Jr. (D.C. Bar No. 388678)
                                                Bergstrom Attorneys
                                                4000 Legato Road, Suite 1100
                                                Fairfax, VA 22033
                                                202-669-0442, fax 202-483-9267
                                                gll@bergstromattorneys.com
                                                Counsel for Plaintiffs


## CERTIFICATE OF SERVICE

I, Stephen D. Stamboulieh, hereby certify that on March 12, 2025, I have caused the foregoing document or pleading to be filed with this Court's CM/ECF system which generated a notice and delivered the document to all counsel of record.

*By: Stephen D. Stamboulieh*
Stephen D. Stamboulieh

App.041

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

—————————————————————————
                                                )
GUN OWNERS OF AMERICA, INC.,      )
*et al.*,                                             )
                                                )
                    Plaintiffs,              )
                                                )
          v.                                    )        Civil Action No. 21-2919 (ABJ)
                                                )
BUREAU OF ALCOHOL,                    )
TOBACCO, FIREARMS AND             )
EXPLOSIVES,                               )
                                                )
                    Defendant.             )
—————————————————————————)

<u>**MEMORANDUM OPINION**</u>

Plaintiffs Gun Owners of America, Inc. and Gun Owners Foundation brought this action against the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF") to "compel compliance" with their request for information under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  Compl. [Dkt. # 1] at 1.  Over the course of litigation, ATF produced documents in response to plaintiffs' FOIA request in thirteen separate productions.  *See* Joint Status Reports [Dkt. ## 8–9, 11–19].  But in its final production, the agency inadvertently produced documents to plaintiffs showing information that had been marked for redaction under FOIA's statutory exemptions, but was not actually redacted.  Joint Status Report [Dkt # 19] ¶ 4.  The Court issued a temporary protective order sequestering the inadvertently produced records until it could determine whether the information the agency marked for redaction fell properly within the claimed FOIA exemptions.  Temporary Protective Order (Oct. 30, 2023) [Dkt. # 30] ("TPO") at 1.

Now before the Court is ATF's motion for summary judgment, Def.'s Mot. for Summ. J. [Dkt. # 32] ("Def.'s Mot."), and plaintiffs' motion to lift the temporary protective order.  *See* Pls.'

Mot. to Lift Protective Order [Dkt. # 36] ("Pls.' Mot."). Both motions are fully briefed. *See* Pls.' Resp. to Def.'s Mot. [Dkt. # 33] ("Pls.' Resp."); Def.'s Reply in Supp. of Def.'s Mot. [Dkt. # 34] ("Def.'s Reply"); *see also* Def.'s Opp. to Pls.' Mot. [Dkt. # 39] ("Def.'s Opp."); Pls.' Reply to Def.'s Opp. [Dkt. # 40] ("Pls.' Reply").

For the reasons stated below, plaintiffs' motion to lift the temporary protective order is **DENIED** as moot, and defendant's motion for summary judgment is **GRANTED**.

## BACKGROUND

Plaintiffs are two non-profit organizations that conduct "activities in defense of the Second Amendment" and educate the public about the right to bear arms. Compl. ¶¶ 3–4. On April 28, 2021, they submitted a Freedom of Information Act request to the Bureau of Alcohol, Tobacco, Firearms & Explosives seeking records related to the agency's use of the National Instant Criminal Background Check System ("NICS"). *See* Ex. A to Compl. [Dkt. # 1-1] ("Ex. A"); Compl. ¶ 8. The NICS is the system used "to determine if an individual is prohibited from purchasing a firearm." Second Decl. of Ginae Barnett [Dkt. # 32-3] ("Barnett Decl.") ¶ 14. Specifically, plaintiffs requested:

> (a) records showing the number of individuals for whom ATF is requesting or has requested NICS monitoring, during the 12-month period preceding this request;
>
> (b) records demonstrating the purpose(s) for which each individual has been monitored (*i.e.*, suspected straw purchases, false statements, etc.);
>
> (c) records discussing the legality of NICS monitoring;
>
> (d) records demonstrating the number of individuals prosecuted as a result of being "monitored" by the program (criminal case docket numbers will suffice); and
>
> (e) records demonstrating any reported unlawful or otherwise improper misuse of NICS monitoring by ATF personnel (or contractors of ATF).

App.043

Ex. A at 2.  ATF acknowledged plaintiffs' FOIA request by a letter dated August 24, 2021, *see* Ex. B to Compl. [Dkt. # 1-2], and it "proceeded to search for responsive records."  Barnett Decl. ¶ 4.

Having received no further response from ATF, on November 5, 2021, plaintiffs filed this suit to compel the agency to release the requested information.  Compl. at 1, 5.  ATF answered the complaint and then, over the next year-and-a-half, it reviewed 4,559 potentially responsive documents, and it "produced all responsive records in 13 monthly productions."  Barnett Decl. ¶ 6; *see* Def.'s Answer [Dkt. # 5].

On September 6, 2023, ATF emailed its thirteenth production to plaintiffs' counsel.  *Id*. ¶ 8. It was compromised of  "a cover letter and a PDF file" consisting of 115-pages.  *Id.*  Like the previous twelve productions, the production contained emails in which ATF agents submitted "NICS monitoring" requests to the Federal Bureau of Investigation ("FBI").  *Id.* ¶ 13.  The emails showed the "names, email addresses, and sometimes telephone numbers" of the ATF agents, FBI agents, and staff involved.  *Id*. ¶ 15.  Most of the emails also included "the underlying investigative target's name" and discussion of the investigation.  *Id.* ¶ 15.  And each monitoring request also included a "standard form" regarding the individual, or "subject," for whom monitoring was requested.  *Id*. ¶¶ 13, 15.  The forms enabled the requesters to input the following categories of information:

- Submit date
- Requester's name, contact number, and e-mail address
- Case number
- Subject's name, date of birth, gender, race, social security number, state of residence, and place of birth
- FBI number
- State record number
- Monitoring time frame
- Suspected violation(s) of the Gun Control Act or National Firearms Act
- Detailed information about why the subject is under investigation

- Detailed information about the investigation. What does the requester know and how do they know it?

*Id.* ¶ 15.  The last two bullet points on the form calling for "detailed information" allow the requester to provide "narrative responses," and some of the responses in the produced documents included: "information furnished by witnesses or confidential sources," *id.* ¶ 15; information from the agency's "Firearms Tracing System" database, *id.* ¶ 19; and information about the "specific law enforcement procedures and techniques" used during the investigation.  *Id.* ¶ 31.

In advance of the production, ATF marked multiple pieces of information for redaction pursuant to FOIA Exemptions 3, 6, 7(C), 7(D), and 7(E).  Barnett Decl. ¶ 16.  Under Exemption 3, it marked for redaction the "records of specific firearms traces" from the Firearms Tracing System database.  *Id.* ¶ 19.  Under Exemptions 6, 7(C), and 7(D), it marked for redaction the "personally identifiable information" of ATF agents, FBI agents, agency personnel, and the subjects, associates, and informants involved in the agency's investigations.  *Id.* ¶¶ 23–25, 27.  Finally, under Exemption 7(E), it marked for redaction information revealing "specific law enforcement procedures and techniques" used during the agency's investigations.  *Id.* ¶ 31.

In accordance with the procedure utilized in the previous productions, ATF marked the records to be included in the thirteenth production with "red boxes" outlining the information it intended to redact.  *Id.* ¶ 7.  The material in each red box was overlaid with text indicating the applicable FOIA exemption.  *Id.*  The procedure to be followed required the processor to select "Apply" to create a new, redacted document.  *Id.*  Although the separate, redacted document was created for the thirteenth production, the agency inadvertently emailed plaintiffs a copy of the previous version that still showed red boxes outlining the redactions and the contents of the boxes, not the version that actually applied the redactions.  *Id.* ¶¶ 7–8.

On September 8, 2023, two days after the agency released the thirteenth production, plaintiffs' counsel asked ATF's counsel in an email, "[c]an I get a *redacted* version of the final Production #13?"  Attachment B to Barnett Decl. [Dkt. # 32-3] (emphasis in original).  Fifteen minutes later, ATF's counsel responded, "It seems there was an inadvertent production.  Would you please delete any copy that you may have downloaded?  ATF will send you a replacement production." Attachment C to Barnett Decl. [Dkt. # 32-3].  Nine minutes later, ATF's counsel sent "the proper version of production 13," containing the permanently applied redactions.  Attachment D to Barnett Decl. [Dkt. # 32-3].

On September 10, ATF's counsel asked plaintiffs' counsel to "confirm in writing that [he] deleted any copy of the inadvertent production," noting the "significant privacy interests in the material[.]"  Attachment E to Barnett Decl. [Dkt. # 32-3].  The next day, plaintiffs' counsel responded tartly: "I do not have time today to consider much less respond to this request to delete what I was sent."  Attachment F to Barnett Decl. [Dkt # 32-3] at 1.  ATF's counsel replied, "if you do not confirm deletion of the materials, ATF plans to move for a protective order."  *Id.*

The next day, a different attorney emailed ATF's counsel to say that he would "be representing" plaintiffs with respect to the "planned motion for protective order."  Attachment H to Barnett Decl. [Dkt. # 32-3] at 1.  At that point, plaintiffs had both the redacted version and the inadvertently unredacted version of the thirteenth production in its possession, and one could easily ascertain whether anything had been omitted that did not fall within a FOIA exemption.  Yet counsel took the following position:

> [O]ur review of these documents demonstrates that they may, like other documents received in this FOIA, and perhaps to a greater extent, reveal unauthorized or even illegal activity by ATF and the FBI, violating statutory requirements and jeopardizing the constitutional rights of federal firearms licensees and other Americans.  Thus, we are concerned that, if we agree to your proposal and destroy the documents in our possession, those

> unauthorized or even illegal activities will be covered up by ATF. We do not agree voluntarily to be complicit in such a coverup. You have asked for our position on a protective order. We oppose . . . . [T]he error here is the government's alone, and we will resist any effort to make it appear that we have done anything wrong, or that ATF is somehow the "good guy" here by, under the guise of protecting certain private information that it negligently disclosed, attempting to coverup its potential violations of statutes and constitutional rights.

*Id.* at 2.

On September 13, ATF moved for a protective order to shield the "material inadvertently produced" from dissemination, disclosure, or use until the Court decided the merits of its FOIA exemptions. Def.'s Expedited Mot. for Protective Order [Dkt. # 20] at 1, 7–8. Plaintiffs opposed the motion. *See* Pls.' Opp. to Def.'s Mot. for Protective Order [Dkt. # 28] ("Pls.' Opp. to Protective Order"). The Court granted the motion, and it ordered plaintiffs to "temporarily sequester" the inadvertently produced file until a decision regarding the redactions could be made on the merits. TPO at 1.[1] Defendant moved for summary judgment on December 8, and the parties fully briefed the motion. *See* Def.'s Mot.; Pls.' Resp.; Def.'s Reply.

On February 11, 2025, ATF filed a notice of supplemental authority pointing to the D.C. Circuit's decision in *Human Rights Defense Center v. United States Park Police*, 126 F.4th 708 (D.C. Cir. 2025), and the parties were directed to file submissions addressing its impact on the dispute. *See* Def.'s Notice of Suppl. Authority [Dkt. # 35]; Minute Order (Mar. 12, 2025); Pls.' Suppl. Mem. [Dkt. # 37]; Def.'s Suppl. Mem. [Dkt. # 38]. Plaintiffs also moved to lift the Court's protective order in light of the Circuit's ruling. *See* Pls.' Mot. That motion is also fully briefed. *See* Def.'s Opp.; Pls.' Reply. The Court then ordered ATF to submit the unredacted thirteenth

---

1    The order did not limit plaintiffs' use of the version of the thirteenth production with the redactions properly applied.

production to the Court for *in camera* review, *see* Minute Order (Apr. 11, 2025), and ATF submitted the materials under seal. *See* Sealed Doc. [Dkt. # 41].

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

## ANALYSIS

When a federal agency receives a request for records under the Freedom of Information Act, the statute requires it to disclose the requested information unless it falls into one of FOIA's

nine exemptions.  5 U.S.C. §§ 552(a)(3)(A), (b)(1)–(9).  In a "typical FOIA case concerning the withholding of requested documents," the court decides "the applicability of a claimed FOIA exemption," *Al-Fayed v. Cent. Intel. Agency*, 254 F.3d 300, 308 (D.C. Cir. 2001), and if it determines that the information does not fall within the exemption, the requester is entitled to it. 5 U.S.C. § 552(a)(4)(B).

This is not the typical case.  During the process of responding to plaintiffs' FOIA request, the agency inadvertently produced a set of documents that were marked for redaction, but not actually redacted.  Barnett Decl. ¶ 7.  The agency maintains in its motion for summary judgment that all of the information designated for redaction falls within Exemptions 3, 6, 7(C), 7(D), and 7(E), Def.'s Mot. at 4–15, and plaintiffs do not dispute that assertion.  Plaintiffs "take no position" on the FOIA exemptions; indeed, they announce that they "have no interest in the vast majority of the . . . information ATF disclosed."  Pls.' Resp. at 6.  In other words, plaintiffs do not claim that they are entitled to any of the information the agency meant to withhold, and having seen it, they are not suggesting that they have any reason to disseminate the bulk of it further.  Nonetheless, they object to any order extending restrictions on the use of the material on principle.

The agency asks the Court to order plaintiffs to:  (1) "sequester the September 6, 2023, inadvertently produced FOIA records and the contents of those records"; and (2) "not disseminate, disclose, or use for any purpose those records or the contents of those records."  Def.'s Mot. at 19. Plaintiffs argue that the D.C. Circuit's recent opinion in *Human Rights Defense Center v. United States Park Police* bars the Court from ordering that relief and requires it to lift the temporary protective order.  *See* Pls.' Suppl. Mem.; Pls.' Mot.  They also contend that an order sequestering the inadvertent production would constitute an unconstitutional prior restraint in violation of the First Amendment.  Pls.' Resp. at 27–32.

App.049

The Court finds that defendant's motion and supporting declaration and its own review of the materials *in camera* confirm that all the information marked for redaction in the inadvertent production falls properly within a FOIA exemption. Therefore, defendant's motion for summary judgment in its favor will be granted on the propriety of the exemptions. This also means that the Court's interim order restricting the use of the information that defendant meant to redact until the legitimacy of the redactions had been determined expires under its own terms, TPO at 1,[2] and that the challenge to that order is now moot.

The Court also finds that it has equitable authority to grant ATF's requested relief to bar plaintiffs from using or disseminating the inadvertently produced information. Plaintiffs have already agreed to destroy the majority of the information at issue, which is properly exempt under Exemptions 6, 7(C), and 7(D). Pls.' Reply at 23. As for the rest of the information, *Human Rights Defense Center v. United States Park Police* is distinguishable and does not control the instant suit, and both Supreme Court and D.C. Circuit precedent regarding the Court's equitable authority under FOIA support a remedy that bars the use of FOIA-exempted information.

## I. All of the information marked for redaction falls properly within the FOIA exemptions claimed by the ATF.

The ATF marked several sets of information for redaction in the thirteenth production, and its motion for summary judgment argues that those redactions were proper under FOIA Exemptions 3, 6, 7(C), 7(D), and 7(E). Def.'s Mot. at 4–15. Plaintiffs have "repeatedly" stated

---

[2]    Plaintiffs argued that the Court lacked authority to let the temporary protective order stand. *See* Pls.' Suppl. Mem. at 2–5.

that they "do not challenge" the "legality" of the redactions, Pls.' Resp. at 5–6,[3] and indeed, their opposition does not argue against any of the exemptions that ATF claimed.  *Id.* at 6–33; *see id.* at 6 ("ATF spends the majority of its briefing arguing that various redactions . . . would have been appropriate under various FOIA exemptions . . . .  Plaintiffs take no position with respect to these arguments.").

Although plaintiffs make no effort to challenge the agency's FOIA exemptions, "[u]nder the Federal Rules of Civil Procedure, a motion for summary judgment cannot be 'conceded' for want of opposition."  *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016).  "The burden is always on the movant to demonstrate why summary judgment is warranted," and "[t]he nonmoving party's failure to oppose summary judgment does not shift that burden."  *Id.*, quoting *Grimes v. District of Columbia*, 794 F.3d 83, 97 (D.C. Cir. 2015).  Therefore, the Court must still determine whether the information marked for redaction falls properly within the FOIA exemptions claimed, even though plaintiffs do not contest the exemptions.

The Court has reviewed the agency's declaration in support of its motion, as well as the unredacted version of the thirteenth production *in camera*, and it concludes that all of the information ATF marked for redaction was properly exempt under FOIA Exemptions 3, 6, 7(C), 7(D), and 7(E).

---

3    *See also* Joint Status Report [Dkt. # 31] at 2 ("Plaintiffs do not intend to challenge the FOIA redactions that could have been claimed, but were not made, on Production 13."); Pls.' Resp. at 1 n.1 (explaining that plaintiffs "style[d]" their opposition to defendant's motion for summary judgment as a "Response" rather than an "Opposition" because "the only disputed issue between the parties is Defendant's motion for a permanent protective order . . . not summary judgment"); Pls.' Resp. to Def.'s Statement of Undisputed Material Fact [Dkt. # 33-1] at 1 ("Plaintiffs generally do not contest ATF's Statement of Material Facts . . . ."); Pls.' Suppl. Mem. at 1 n.1 ("The only disputed issue between the parties is Defendant's Motion for Protective Order . . . , not summary judgment."); Pls.' Reply at 2 n.2 ("Plaintiffs have not contested any of Defendant's claims of exemption. . . .  Defendant can invoke all the FOIA exemptions it wants.").

## A.  Exemption 3

Exemption 3 authorizes agencies  to withhold information that is "specifically exempted from disclosure by statute."  5 U.S.C. § 552(b)(3).  The statute must either: (1) "require[] that the matters be withheld from the public in such a manner as to leave no discretion on the issue," or (2) "establish[] particular criteria for withholding or refer[] to particular types of matters to be withheld."  *Id.* § 552(b)(3)(A)(i)–(ii).  And if the statute was "enacted after the date of enactment of the OPEN FOIA Act of 2009," it must "specifically cite[] to" FOIA.  *Id.* § 552(b)(3)(B).  To justify its withholding, the agency "need only show that the statute claimed is one of exemption as contemplated by Exemption 3 and that the withheld material falls within the statute."  *Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009).

ATF invoked Exemption 3 to withhold information regarding "specific firearms traces" derived from ATF's Firearms Tracing System ("FTS") database, most of which appears in the NICS monitoring request forms to explain "why [ATF's] subject [was] under investigation."  Barnett Decl. ¶ 19.  The agency asserts that the Consolidated and Further Continuing Appropriations Act of 2012, Pub. L. No. 112-55, 125 Stat. 552 (2011) ("the Act of 2012"), bars it from disclosing the contents of the Firearms Tracing System.  Def.'s Mot. at 5.

Congress restricted the ATF's ability to disclose firearms tracing information in 2003, when it passed the Tiahrt Amendment to the Consolidated Appropriations Resolution of 2003, Pub. L. No. 108-7, 117 Stat. 11 (2003).  *See id.* § 644 ("No funds appropriated under this Act . . . shall be available to take any action based upon any provision of [FOIA] with respect to records collected or maintained . . . in connection with . . . the tracing of a firearm[.]"); Barnett Decl. ¶ 18.  Iterations of this restriction have appeared in most, if not all, of the consolidated

App.052

appropriations acts since 2003,[4] until its most recent version in the Act of 2012.  The current Act requires:

> That, during the current fiscal year and in each fiscal year thereafter, no funds appropriated under this or any other Act may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms and Explosives . . . pursuant to section 923(g) of title 18, United States Code, or required to be reported pursuant to paragraphs (3) and (7) of such section, except to: (1) a Federal, State, local, or tribal law enforcement agency, or a Federal, State, or local prosecutor; or (2) a foreign law enforcement agency solely in connection with or for use in a criminal investigation or prosecution; or (3) a Federal agency for a national security or intelligence purpose; . . . and no person or entity described in (1), (2) or (3) shall knowingly and publicly disclose such data; and all such data shall be immune from legal process, shall not be subject to subpoena or other discovery, shall be inadmissible in evidence, and shall not be used, relied on, or disclosed in any manner, nor shall testimony or other evidence be permitted based on the data, in a civil action in any State (including the District of Columbia) or Federal court or in an administrative proceeding other than a proceeding commenced by the Bureau of Alcohol, Tobacco, Firearms and Explosives to enforce the provisions of chapter 44 of such title, or a review of such an action or proceeding . . . .

Consolidated and Further Continuing Appropriations Act of 2012, Pub. L. No. 112-55, 125 Stat. 552, 609–610.

Based on this language, most courts in this district have held that the government may withhold trace information from the Firearms Trace System under Exemption 3.  *See, e.g.*, *Abdeljabbar v. Bureau of Alcohol, Tobacco & Firearms*, 74 F. Supp. 3d 158, 172–77

---

4        *See* Consolidated Appropriations Act of 2010, Pub. L. No. 111-117, 123 Stat. 3034, 3128–29 (2009) ("[N]o funds appropriated under this or any other Act may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms and Explosives . . . ."); Consolidated Appropriations Act of 2008, Pub. L. No. 110-161, 121 Stat. 1844, 1903–04 (2007) (same); Consolidated Appropriations Act of 2005, Pub. L. No. 108-447, 118 Stat. 2809, 2859–60 (2004) ("[N]o funds appropriated under this or any other Act with respect to any fiscal year may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms, and Explosives . . . .").

(D.D.C. 2014); *Higgins v. U.S. Dep't of Just.*, 919 F. Supp. 2d 131, 145 (D.D.C. 2013); *Watkins v. Bureau of Alcohol, Tobacco & Firearms*, Civ. Action No. 04-800, 2005 WL 2334277, at *1 (D.D.C. Sept. 1, 2005); *McRae v. U.S. Dep't of Just.*, 869 F. Supp. 2d 151, 163 (D.D.C. 2012). And although one court has held that the ATF cannot rely on the Act because it does not "expressly" reference FOIA, *see Fowlkes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 67 F. Supp. 3d. 290, 300–01 (D.D.C. 2014), the Court is persuaded by the reasoning in *Abdeljabbar* that:

> [T]he disclosure prohibitions set forth by Congress in the 2005 and 2008 appropriations bills are still effective prospectively and beyond those fiscal years as a permanent prohibition, until such time as Congress expresses the intent to repeal or modify them. . . . Congress's uninterrupted use of this language in appropriations bills after 2009 supports the conclusion that Congress did not intend for the judiciary to depart from this long-standing position.

74 F. Supp. 3d at 175–76.  For their part, plaintiffs offer no reason as to why the Court should come to a contrary conclusion; they do not argue against the agency's application of Exemption 3 at all.

The Court has observed the information at issue and confirmed that it contains the firearms tracing information that the ATF is barred from publicly releasing.  Therefore, the Court finds that the agency's invocation of Exemption 3 is proper.

## B.  Exemptions 6, 7(C), and 7(D)

ATF invoked Exemptions 6, 7(C), and 7(D) for the bulk of the information it marked for redaction:  the personal information of ATF and FBI agents, agency personnel, and the subjects, associates, and informants involved in the agency's investigations.  Barnett Decl. ¶¶ 23–25, 27.

Exemptions 6 and 7(C) serve similar goals.  Exemption 6 shields any "personnel and medical files and similar files" where "disclosure . . . would constitute a clearly unwarranted

invasion of personal privacy." 5 U.S.C. § 552(b)(6). The exemption is "construed broadly to cover essentially all information sought from Government records that 'appl[y] to a particular individual,'" *Pinson v. U.S. Dep't of Just.*, 202 F. Supp. 3d 86, 99 (D.D.C. 2016), quoting *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982), including "personal information, such as names and addresses." *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015), quoting *Jud. Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 152 (D.C. Cir. 2006). Similarly, Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(c).

Although the application of both exemptions "turns on a balance of the individual's right of privacy against the basic policy of opening agency action to the light of public scrutiny," *CEI Wash. Bureau, Inc. v. U.S. Dep't of Just.*, 469 F.3d 126, 128 (D.C. Cir. 2006), (citation omitted), the D.C. Circuit has held that Exemption 7(C) "establishes a lower bar for withholding material" than Exemption 6. *Am. C.L. Union v. Dep't of Just.*, 655 F.3d 1, 6 (D.C. Cir. 2011) (citations omitted). So "when an agency seeks to withhold records 'compiled for law enforcement purposes' as implicating personal privacy, only Exemption 7(C) need be considered, since 'all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C.)'" *Battle Born Invs. Co., LLC v. U.S. Dep't of Just.*, Civ. Action No. 24-067, 2024 WL 5246515, at *4 (D.D.C. Dec. 30, 2024), quoting *Roth v. U.S. Dep't of Just.*, 642 F.3d 1161, 1173 (D.C. Cir. 2011).

ATF has shown that its redactions were appropriate under Exemption 7(C). As the agency's declarant explained, ATF "applied minimal redactions as necessary to prevent the disclosure of information that might reveal the identities of third parties" within the production,

including:  (1) the personally identifiable information of ATF and FBI agents, and agency staff;

(2) the social security numbers, birth dates, addresses, cell phone numbers, and family

relationships of the subjects of agency investigation; and (3) the identities of cooperating sources

who provided information to the government.  Barnett Decl. ¶ 27.  There is a well-recognized and

substantial privacy interest in withholding the identities of the law enforcement officers and

support personnel conducting investigations.  *See, e.g.*, *Lesar v. U.S. Dep't of Just.*, 636 F.2d 472,

487 (D.C. Cir. 1980).  The Court of Appeals has also held that Exemption 7(C) protects the privacy

interests of all persons mentioned in law enforcement records, including suspects, witnesses, and

informants, *Schrecker v. U.S. Dep't of Just.*, 349 F.3d 657, 661 (D.C. Cir. 2003), and that such

third-party information is "categorically exempt" from disclosure in the absence of an overriding

public interest.  *Nation Mag., Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 894, 896 (D.C.

Cir. 1995).

Further, the agency's claimed redactions under Exemption 7(D) were proper.  Exemption

7(D) protects from disclosure information compiled for law enforcement purposes that "could

reasonably be expected to disclose the identity of a confidential source . . . [who] furnished

information on a confidential basis."  5 U.S.C. § 552(b)(7)(D).  A source is "confidential" within

the meaning of Exemption 7(D) if they "provided information under an express assurance of

confidentiality or in circumstances from which such an assurance could be reasonably inferred."

*Williams v. Fed. Bureau of Investigation*, 69 F.3d 1155, 1159 (D.C. Cir. 1995).  Here, the agency's

declaration explains that the sources it redacted had provided tips to the ATF "regarding potential

illegal acquisition of firearms . . . with the implied assurance of confidentiality."  Barnett  Decl. ¶

25.  The sources "have ongoing relationships with ATF" and "would likely be subject to retaliation

for that cooperation," so it is reasonable to infer that they provided information to the agency with the understanding that their identities would be kept confidential. *Id.*

Again, plaintiff does not contest any of ATF's arguments regarding the application of Exemptions 6, 7(C), or 7(D), and the Court's review confirms the agency's assertions. Therefore, the Court finds that ATF properly claimed these exemptions.

### C.  Exemption 7(E)

Exemption 7(E) protects from disclosure law enforcement records "to the extent that the production of such . . . information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  Exemption 7(E) "sets a relatively low bar for the agency to justify withholding." *Blackwell v. Fed. Bureau of Investigation*, 646 F.3d 37, 42 (D.C. Cir. 2011).  "Rather than requiring a highly specific burden of showing how the law will be circumvented," it "only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Mayer Brown LLP v. Internal Revenue Serv.*, 562 F.3d 1190, 1194 (D.C. Cir. 2009) (internal quotation marks and citations omitted).

ATF's declarant stated that the information claimed under Exemption 7(E) "reveals specific law enforcement procedures and techniques" used to "identify certain individuals as investigative subjects."  Barnett Decl. ¶ 31.  The information appears in the sections of the NICS forms asking for "why" the subject is under investigation and "how" ATF knows information about the subject. *Id.*  The Court agrees with ATF that disclosure of how the agency finds its

App.057

investigative subjects could logically enable individuals to "circumvent" those techniques, *id.*, so it finds that the agency's claim under Exemption 7(E) is proper.[5]

### D. Segregability

"[N]on-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Wilderness Soc'y v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1, 18 (D.D.C. 2004), quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). ATF's declaration explains that responsive records were reviewed "on a line-by-line and page-by-page basis" to identify reasonably segregable information, and that all "meaningful segregable information was disclosed" to plaintiffs. Barnett Decl. ¶ 32. The Court has also reviewed the un-redacted version of the production, and it came to the same conclusion. Therefore, it finds that the agency's redactions satisfy the segregability requirement.

## II.   The Court has authority to grant ATF's requested order.

What is left to determine is what, if anything, should happen now. Because the unredacted copy of the thirteenth production was inadvertently produced to plaintiffs, ATF asks the Court for an order directing plaintiffs and their counsel to: (1) "sequester the . . . inadvertently produced

---

5      Citing *Conservation Force v. Jewell*, 66 F. Supp. 3d 46, 64 (D.D.C. 2014), plaintiffs assert that the ATF cannot withhold information regarding its law enforcement techniques and procedures under Exemption 7(E) because those "techniques and procedures . . . <u>are unlawful and unconstitutional</u>." Pls.' Resp. at 26 (emphasis in original). Indeed, plaintiffs spend a large portion of their brief arguing that the ATF and FBI's use of the NICS is illegal. *Id.* at 12–26. But plaintiffs have not brought a suit against the agencies challenging the legality of the use of NICS; they chose to bring a claim under the Freedom of Information Act to enforce their request for information about the ATF's use of NICS. Compl. ¶¶ 16–18. FOIA is a statute concerned with the disclosure of information in the government's possession.

At any rate, *Conservation Force* is not on point. In that case, the agency withheld information pursuant to the attorney-client privilege under Exemption 5, and the court analyzed whether the crime-fraud exception to the privilege applied. 66 F. Supp. 3d at 64; *see id.* ("Plaintiff has failed to prove that any crime or fraud was committed here, let alone that the communications at issue were made with an intent to further the unlawful act."). This case involves withholdings under Exemption 7(E), which does not recognize an exception for crime or fraud.

FOIA records and the contents of those records"; and (2) "not disseminate, disclose, or use for any purpose those records or the contents of those records."  Def.'s Mot. at 19; Def.'s Reply at 14.

Plaintiffs take issue with the remedy only as it pertains to "small portions of [the] unredacted information."  Pls.' Resp. at 6.  They do not "have any interest in" and "agree to destroy" such records related to personally identifying information of the ATF and FBI agents, agency staff, and the subjects, associates, and informants of ATF investigation.  *Id.* at 23–24.  But they do challenge the issuance of an order limiting the use of the unredacted information "related to the FBI and ATF's warrantless NICS Monitoring Program."  *Id.* at 6, 15; *see id.* at 16–21 (arguing that the public has significant interest in learning about how the "NICS Monitoring Program" violates statutory prohibits and constitutional rights).

Since plaintiffs have already agreed to destroy the personal information that the agency redacted under Exemptions 6, 7(C), and 7(D), the Court will order it to do so.  As to the rest of the information marked for redaction under Exemptions 3 and 7(E), the Court finds that it has the authority to issue an order barring that information from dissemination or use.

> **a.** ***Human Rights Defense Center v. United States Park Police* does not bar the Court from granting relief.**

Plaintiffs argue that *Human Rights Defense Center v. United States Park Police ("HRDC")*, 126 F.4th 708 (D.C. Cir. 2025), "squarely rejected the notion" that district courts have inherent authority to limit the use or dissemination of inadvertently disclosed FOIA material, and therefore, the Court cannot grant ATF's relief.  Pls.' Suppl. Mem. at 5; Pls.' Mot. at 3–7.  Defendant counters that *HRDC* does not bar the relief sought here because:  (1) it is distinguishable from this case; and (2) the Court can rely on its "equitable power" under FOIA, as opposed to its "inherent authority," to enforce its judgment.  Def.'s Suppl. Mem. at 4–5; Def.'s Opp. at 2–3.

In *HRDC*, the plaintiff submitted FOIA requests to the Park Police for records of certain "claims or lawsuits brought against the agency or its employees." 126 F.4th at 714. The agency Police released the records and "withheld the names of four police officers" under Exemption 6. *Id.* But "due to errors in its redaction process," the Park Police accidentally disclosed two names of private claimants that also should have been withheld under Exemption 6. *Id.* at 713–14. The district court held that the Exemption 6 withholdings were justified as to both the officers and the private claimants, and it "invoked its inherent authority to manage judicial proceedings . . . to issue a clawback order for the erroneously produced names." *Id.* at 712, 714–15.

The D.C. Circuit reversed both rulings. First, it held that the withholding of the four officers' names was improper because the agency failed to satisfy "its burden to show that disclosure . . . would compromise a substantial privacy interest." *Id.* at 715. The Court observed that the Park Police's *Vaughn* index and supporting declarations were "wholly conclusory," lacked "even minimal substantiation of the officers' privacy interest or the potential harm from disclosing their names," and "merely recite[d] the elements of the analysis for whether Exemption 6 applie[d]." *Id*. at 715–16.

Then, without commenting on whether the inadvertently produced private citizens' names fell under Exemption 6, the Court vacated the clawback order. 126 F.4th at 719–720. It took issue with the lower court's use of its inherent authority to manage judicial proceedings as a "mechanism" for compelling the return of inadvertently produced information when FOIA itself did not provide for that remedy. *Id.* at 717. It stated that "[t]he court's invocation of an inherent power must" be either: (1) "documented by historical practice"; or 2) "supported by an irrefutable showing that the exercise of an undoubted authority would otherwise be set to naught." *Id.* at 718, quoting *Cobell v. Norton*, 334 F.3d 1128, 1141 (D.C. Cir. 2003) (internal quotation marks

omitted).  The Park Police did not argue that clawback was a "documented historical practice," so the Court only analyzed whether it was "necessary to buttress the district court's undoubted authority over FOIA litigation."  *Id.* at 718 (internal quotation marks omitted).

The Circuit found that the order was not necessary, rejecting the agency's argument that it was proper given the lower court's ruling that the inadvertently produced names fell under Exemption 6.  *Id.* at 718–19.  The Circuit explained that "necessary" orders were "limited to those which . . . are necessary to the exercise of all others," and it then listed the "powers" previously "recognized as necessary," including:  admitting members to the bar, disciplining bar members, punishing contempt of court, vacating judgments based on fraud on the court, and punishing bad-faith or vexatious conduct.  *Id.* at 718, citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–45 (1991) (internal quotation marks omitted).  Because, in the Circuit's view, the "primary function" of the clawback order at issue was "not to support a core judicial authority, but to fill a perceived hole in the FOIA statute by enabling the government to put the proverbial cat back in the bag," the Court held that it was an improper use of inherent authority.  *Id.* at 718–19.

The Court went on to note that the clawback remedy could not "be squared with the terms" or "structure" of FOIA, given that the statute does not explicitly enable an agency to seek an order correcting an inadvertent disclosure.  126 F.4th at 719.  The Court opined that "Congress presumably acted deliberately in omitting general clawback authority from FOIA," and that, "[u]nlike litigation, which is an adversarial process to determine the parties' rights and obligations, FOIA is a primarily administrative regime designed to advance governmental transparency."  *Id.*  Still, the Court observed:

> Importantly, the information at issue here is not subject to any independent legal prohibition on disclosure such as applies to classified documents, and we express no opinion on how any such prohibition could affect the analysis.

*Id.*

One problem with applying *HRDC* to the facts of the instant case is that the Circuit's analysis on whether the agency properly invoked Exemption 6 referred only to the "officer names" redacted by the agency, *id.* at 715–17, not the private claimants' names that were inadvertently produced.  As to that information, the Circuit moved directly to the question of whether the lower court had the authority to issue the clawback order at all, without deciding whether Exemption 6 applied to the names in the first place.  *Id.* at 718–19.  So, it is not clear whether the Court's discussion about the clawback order was meant to reach inadvertently disclosed information that is properly, or as in this case, concededly, exempt.

Furthermore, a close reading of *HRDC* reveals several important distinctions between that case and this one.  First, *HRDC* involved a plaintiff that was disputing the agency's withholdings under FOIA, so the Circuit did not deal with the circumstances here:  plaintiffs who did not contest the agency's FOIA withholdings at all, and who have "no interest" in the majority of the information at issue.  Pls.' Resp. at 6.  Given *HRDC*'s determination that the Park Police failed to support its withholdings, it makes sense that clawback would not be available, whether or not it was a proper exercise of authority, because the agency was not entitled to withhold the information in the first place.  That is not the case here.  As the Court has detailed, everything marked for redaction by the ATF was properly exempt, and the plaintiffs have agreed to destroy most of the inadvertently produced information.

Second, the majority of the information that plaintiffs seek to retain and to be able to disseminate falls under Exemption 3, which authorizes ATF to withhold information that is "specifically exempted from disclosure" by the Consolidated and Further Continuing Appropriations Act of 2012.  5 U.S.C. § 552(b)(3).  *HRDC* specifically carved Exemption 3 out of

its ruling, noting that the information at issue was "not subject to any independent legal prohibition on disclosure" and that it expressed "no opinion on how any such prohibition could affect the analysis." 126 F.4th at 719. So, by its own language, the case does not bar the Court from granting relief as to the Exemption 3 information, and it would be consistent with FOIA and the Act of 2012 to restrain plaintiffs from disseminating such material.

Given the differences between the posture of this case and what the Court addressed in *HRDC*, that opinion does not control the outcome here.[6]

### III.    The law supports the Court's exercise of its equitable powers under FOIA to fashion a remedy in accordance with Exemptions 3 and 7(E).

As far as the Court is aware, no court in this district has invoked its equitable power to bar a plaintiff from disseminating or using information obtained by virtue of an agency's inadvertent production of FOIA-exempted information. The Freedom of Information Act itself says very little about the remedies available under the statute. Its only language regarding the court's authority is section 552(a)(4)(B), which vests "the district court" with "jurisdiction to enjoin the agency from

---

6    The Court of Appeals in *HRDC* opined that the district court lacked inherent authority to manage the case before it because "*[u]nlike litigation*, which is an adversarial process to determine the parties' rights and obligations, FOIA is a primarily administrative regime designed to advance governmental transparency." 126 F.4th at 719 (emphasis added). In this Court's view, that sentence ignores the fact that in many of the FOIA cases pending in this courthouse, the plaintiff had to bring a lawsuit to activate the administrative process, and that often, it takes the court's oversight and involvement to bring it to its conclusion. Once a lawsuit has been filed, the relationship between the parties is not simply governed by agency regulations; it is the district court that establishes the schedule for the review and production of records by issuing orders. That is litigation. And during FOIA litigation, as in other civil litigation, the court may be called upon to manage and resolve disputes between the parties, or to direct them to take certain action by issuing other orders. Indeed, the FOIA statute explicitly recognizes this fundamental distinction between FOIA compliance as an administrative matter and FOIA litigation since it provides for an award of attorneys' fees and litigation costs when a plaintiff has "substantially prevailed" in an action before the Court. 5 U.S.C. § 552(a)(4)(E)(i). For those reasons, this Court takes issue with the reasoning underlying that portion of the *HRDC* decision. But for the purposes of its ruling here, the Court is adhering to Circuit authority, and its ruling with respect to the protective order is not predicated on "inherent authority."

withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). But both the Supreme Court and the D.C. Circuit have commented on the relationship between FOIA and the court's equitable powers, and the extent to which a district court can fashion equitable remedies under the statute.

In *Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1 (1974), a consolidation of three cases, the FOIA requesters were companies that had contracts with the United States that were subject to renegotiation under the Renegotiation Act. *Id.* at 3. During the negotiation process, the government took the position that the companies had "realized excessive profits" under their contracts, and when it refused to provide the documents supporting that determination, each company sought the information through FOIA requests. *Id.* at 4–5. After the government failed to respond to the requests, the companies filed suit under FOIA to compel the release of the information, and to enjoin "any further renegotiation proceedings" until the production. *Id.* at 5–6. The district courts enjoined the renegotiation proceedings for each company. *Id.* at 6–8.

Although the Supreme Court ultimately found "it unnecessary" to decide whether the district court could enjoin the negotiation proceedings because the companies had failed to exhaust their administrative remedies under the Renegotiation Act, *id.* at 20, it did comment on FOIA's effect on the court's equitable power to do so. First, the Court noted FOIA's purpose of "opening administrative processes to the scrutiny of the press and general public," *id.* at 17, and the statute's language conferring "jurisdiction to grant injunctive relief of a described type, namely, 'to enjoin the agency from withholding agency records . . . improperly withheld from the complainant.'" *Id.* at 18, citing 5 U.S.C. § 522(a)(3). It then explained that while the statute's purpose and language "might suggest" that "compelled production was intended to be the exclusive enforcement method," there was "little to suggest" that FOIA "limit[s] the inherent powers of an equity court."

23

*Id.* at 19–20.  In particular, the Court was persuaded that enjoining the release of information was not the "exclusive remedy" under FOIA because of:  "[t]he broad language of the FOIA, with its obvious emphasis on disclosure and with its exemptions carefully delineated as exceptions";  "the truism that Congress knows how to deprive a court of broad equitable power when it chooses so to do"; and "the fact that [FOIA], to a definite degree, makes the District Court the enforcement arm of the statute."  *Id.* at 19–20.

The D.C. Circuit has provided further analysis on the extent and nature of the court's remedial power in FOIA cases, which it summarized and applied in *Citizens for Responsibility and Ethics in Washington v. United States Department of Justice* ("*CREW*"), 846 F.3d 1235 (D.C. Cir. 2017).

In *CREW*, the plaintiff sued to compel the Office of Legal Counsel ("OLC")'s compliance with FOIA's "reading-room" provision, which "requires agencies to 'make available for public inspection . . .' certain records, including . . . 'statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register.'"  *Id.* at 1239, quoting 5 U.S.C. § 552(a)(2).  The plaintiff asserted that OLC opinions were subject to the reading-room provision, and it sought an injunction directing OLC to disclose all such documents.  *Id.* at 1239–40.  But in addition to that primary form of relief, the requested injunction had four additional "features":

> (1) it would apply prospectively . . . to documents not yet created; (2) it would impose an affirmative obligation to disclose . . . documents regardless of whether someone specifically requests a given document; (3) it would mandate that OLC make documents available to the *public*, as opposed to just [the plaintiff]; and (4) it would require OLC to make available to the public an index of all such documents.

*Id.* at 1240 (emphasis in original).  Concerned that FOIA did not give a district court the power to order the requested relief, the plaintiff sued under section 704 of the Administrative Procedure

Act, which authorizes review of agency actions "for which there is no other adequate remedy in

a court." *Id.* at 1241, quoting 5 U.S.C. § 704.  But the district court dismissed the case because it

found that FOIA would provide for the plaintiff's requested remedy.  *Id.* at 1238, 1240.

On appeal, the D.C. Circuit considered whether the plaintiff could obtain the relief it was

seeking under FOIA.  *Id.* at 1241–42.  First, it drew lessons from the Supreme Court's opinion in

*Renegotiation Board*:

> FOIA section 552(a)(4)(B) vests courts with broad equitable authority.
> True, as the Supreme Court explained in *Renegotiation Board v.*
> *Bannercraft Clothing Co.*, . . . that provision "explicitly confers jurisdiction
> to grant injunctive relief of a described type, namely, 'to enjoin the agency
> from withholding agency records and to order the production of any agency
> records improperly withheld from the complainant.'" . . .  But as the Court
> made clear in the same decision, Congress did not intend that language "to
> limit the inherent powers of an equity court" in FOIA cases. . . .  "Once
> invoked, the scope of a district court's equitable powers is broad, for breadth
> and flexibility are inherent in equitable remedies." . . .  This is especially so
> where, as here, "federal law is at issue and 'the public interest is involved,'
> as a federal court's 'equitable powers assume an even broader and more
> flexible character than when only a private controversy is at stake.'"

*Id.* at 1241–42 (citations, alterations, and quotation marks omitted).

The Court then explained that its own "case law reflects the wide latitude courts possess to

fashion remedies under FOIA, including the power to issue prospective injunctive relief."  *Id.* at

1242.  It pointed to *Payne Enterprises, Inc. v. United States*, 837 F.2d 486 (D.C. Cir. 1988), where

the Court said it was confronted with the Air Force's "repeated failure to disclose documents in

response to" the plaintiff's valid FOIA requests.  *CREW*, 846 F.3d at 1242, citing *Payne*, 837 F.2d

at 487.  The Air Force eventually complied with the requests during the lawsuit, but because the

government exhibited a pattern of "repeated delays" and the plaintiff had an "undeniable right" to

the requested information, the Court of Appeals instructed the district court to:  "evaluate the

likelihood that the Air Force will return to its illicit practice of delay in the absence of an

injunction" and to "consider the propriety of injunctive relief" to prevent future delay. *Payne*, 837 F.2d at 488, 495.

*CREW* then pointed to *Morley v. Central Intelligence Agency*, 508 F.3d 1108, 1120 (D.C. Cir. 2007), as an example where it "recognized courts' power to order relief beyond the simple release of extant records." *CREW*, 846 F.3d at 1242. In *Morley*, the Court determined that the agency had failed to search for responsive material in a portion of records that were likely to be responsive. 508 F.3d at 1119–20. Because FOIA has a "policy of full agency disclosure," and a refusal to release documents for reasons unrelated to the FOIA exemptions would constitute withholding, the Court ordered the agency to conduct a more adequate search of its records, *id.* (internal citation and quotation marks omitted), even though FOIA does not specifically provide for that remedy.

*CREW* cautioned, though, that "[a]lthough broad, courts' remedial authority under section 552(a)(4)(B) is not boundless," 846 F.3d at 1242, and it pointed to two previously recognized limits. First, it noted the Supreme Court's holding in *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136 (1980), that "federal courts have no authority to order the production" of records no longer in the agency's possession. *Id.* at 139.

Then it described the Circuit's decision in *Kennecott Utah Copper Corp. v. United States Department of the Interior*, 88 F.3d 1191 (D.C. Cir. 1996). In that case, the plaintiff sought an order requiring an agency to publish its regulations in the Federal Register in accordance with section 552(a)(1) of FOIA. *Id.* at 1201–02. Although that section requires agencies to "publish . . . substantive rules of general applicability," 5 U.S.C. § 552(a)(1)(D), the Circuit looked to the remedial provision of FOIA to determine whether the relief sought was proper, and the Court found that it could not order publication. *Kennecott*, 88 F.3d at 1202–03. The remedial provision

App.067

authorizes courts "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from complainant." 5 U.S.C. § 552(a)(4)(B). The Court reasoned that the language focusing on the "production" of records to "the complainant" was aimed at "relieving the injury suffered by the individual complainant, not by the general public," so it could not order the publication of regulations to the public. *Kennecott*, 88 F.3d at 1202–03.[7]

After that discussion, the Court held in *CREW* that the district court had authority under FOIA to grant two of the forms of relief requested by the plaintiff: a prospective injunction to disclose OLC opinions that had not yet been created, and an affirmative duty to disclose regardless of whether the plaintiff submitted a FOIA request. *CREW*, 846 F.3d at 1242. But, relying on *Kennecott*, it held that FOIA did not authorize the court to order OLC to make documents available to the public at large, as opposed to just the plaintiff. *Id.* at 1243.

Considering that authority, the Court finds that it falls within its equitable powers under FOIA to fashion a remedy that would bar the plaintiff from publishing inadvertently disclosed information that falls squarely within Exemptions 3 and 7(E). The Freedom of Information Act vests the district court with "jurisdiction" to settle disputes brought under the statute. 5 U.S.C. § 552(a)(4)(B). Although section 552(a)(4)(B) states that courts can "enjoin" an agency from withholding records, the Supreme Court recognized in *Renegotiation Board* that enjoining the agency is not the "exclusive" power under the statute, and that the language of that provision does not "limit" the Court's equitable power to grant other relief. 415 U.S. at 20. While FOIA is a disclosure statute, Congress included nine exemptions that authorize the government to withhold

---

7       The Court acknowledged, though, that "it might seem strange for Congress to command agencies to 'currently publish' . . . documents, without in the same statute providing courts with power to order publication." *Kennecott*, 88 F.3d at 1202.

information, to advance a number of important interests.  5 U.S.C. §§ 552(b)(1)–(9).  The exemption at issue here, Exemption 3, makes it clear that FOIA disclosure cannot frustrate other statutes that mandate against dissemination.  And Exemption 7(E), which is involved to a lesser extent, gives special protection to law enforcement procedures and techniques to guard against future circumvention of the law.  These interests, which were absent in *HRDC*, support the injunction.  Also, since this case involves the agency's attempt to withhold information that the statute expressly exempts from public disclosure, it does not present the problem posed in *Kennecott Utah Copper Corp.*, where the court was being asked to take action that fell well outside the statutory scheme.

Therefore, the Court will exercise its equitable jurisdiction to enter an order barring the use of inadvertently disclosed information covered by Exemption 3 and 7(E).

## IV.    The relief does not violate plaintiffs' First Amendment rights.

Finally, plaintiffs contend that a protective order forbidding the dissemination of the inadvertently released information constitutes "a classic prior restraint" in violation of the First Amendment.  Pls.' Opp. to Protective Order at 19.

"The term prior restraint is used to describe . . . judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550 (1993) (internal quotation marks and citation omitted).  A "classic" case of prior restraint involves a governmental actor seeking a temporary restraining order or permanent injunction to prevent the news media from publishing specific information.  *Id.* at 550; *see, e.g.*, *New York Times Co. v. United States*, 403 U.S. 713 (1971) (featuring the President's attempt to secure a permanent injunction preventing the publication of the Pentagon Papers after a whistleblower covertly shared them with the news media); *Near v.*

*Minnesota ex rel. Olson*, 283 U.S. 697 (1931) (featuring local government officials seeking to permanently enjoin a local newspaper's publication of periodicals critical of the government).

This case does not present an unconstitutional prior restraint. "As a general rule, citizens have no first amendment right of access to traditionally nonpublic government information," and therefore "[a] litigant seeking release of government information under FOIA . . . relies upon a statutory entitlement – as narrowed by statutory exceptions – and not upon his constitutional right to free expression." *McGehee v. Casey*, 718 F.2d 1137, 1147 (D.C. Cir. 1983). Again, plaintiffs did not contest the ATF's claimed FOIA exemptions, and the Court has already found that the information was properly exempt under the statute. So, because plaintiffs do not have a right to the material found to be exempt under Exemptions 3 and 7(E) in the first place, the Court's order sequestering it is not a violation of their First Amendment rights.

## CONCLUSION

For the reasons stated above, the Court will **GRANT** defendant's motion for summary judgment [Dkt. # 32], and it will **DENY AS MOOT** plaintiffs' motion to lift the temporary protective order [Dkt. # 36]. A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: July 23, 2025

App.070

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

|  |  |  |
|---|---|---|
| GUN OWNERS OF AMERICA, INC., *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 21-2919 (ABJ) |
| BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, | ) ) ) ) | |
| Defendant. | ) ) ) | |

---

## <u>ORDER</u>

Pursuant to Federal Rules of Civil Procedure 56 and 58, and for the reasons stated in the accompanying memorandum opinion [Dkt. # 42], it is hereby **ORDERED** that defendant's motion for summary judgment [Dkt.# 32] is **GRANTED**, and plaintiffs' motion to lift the temporary protective order [Dkt. # 36] is **DENIED AS MOOT**.

Furthermore, for the reasons set forth in the memorandum opinion:

It is **ORDERED** that plaintiffs: (1) shall sequester the unredacted portions of the records produced in defendant's thirteenth production; and (2) they shall not disseminate, disclose, or use for any purpose those portions of the records.

This order places no restrictions on material disclosed in defendant's first twelve productions or any of the material that was not redacted from the "proper version of production 13." *See* Attachment D to Barnett Decl. [Dkt. # 32-3].

**SO ORDERED.**

App.071

AMY BERMAN JACKSON
United States District Judge

DATE:  July 23, 2025

2

App.072

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| GUN OWNERS OF AMERICA, INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 21-2919 (ABJ) |
| | ) | |
| BUREAU OF ALCOHOL, TOBACCO, | ) | |
| FIREARMS AND EXPLOSIVES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>NOTICE OF APPEAL</u>

Come now Gun Owners of America, Inc. and Gun Owners Foundation ("Plaintiffs") and hereby appeal to the United States Court of Appeals for the District of Columbia, from the Opinion and Order granting Defendant's Motion for Summary Judgment [Docket No. 42] and Judgment [Docket No. 43] entered on July 23, 2025, and the Order denying Plaintiffs' Motion to Stay [Docket No. 47] entered on August 22, 2025.

Dated: August 25, 2025

*/s/ Stephen D. Stamboulieh*
Stephen D. Stamboulieh (MS # 102784)
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS 38654
601-852-3440 (T)
stephen@sdslaw.us

Robert J. Olson (VA # 82488)
William J. Olson, PC
370 Maple Ave. West, Suite 4
Vienna, VA 22180-5615
703-356-5070 (T)
703-356-5085 (F)
rob@wjopc.com

*Counsel for Gun Owners of America, Inc.*
*and Gun Owners Foundation*

App.073

## **CERTIFICATE OF SERVICE**

I Stephen D. Stamboulieh, hereby certify that I have on this day, caused the foregoing document or pleading to be filed with this Court's CM/ECF system, which caused a notice of the filing and a true and correct copy of the same to be delivered to all counsel of record.

Dated: August 25, 2025.

/s/ Stephen D. Stamboulieh
Stephen D. Stamboulieh

App.074