No. 25-5309

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

GUN OWNERS OF AMERICA, INC., ET AL.,

*Plaintiffs-Appellants,*

v.

BUREAU OF ALCOHOL, TOBACCO, FIREARMS & EXPLOSIVES,

*Defendant-Appellee.*

---

On Appeal from the United States District Court for the District of Columbia
(No. 21-cv-2919, Hon. Amy Berman Jackson)

---

BRIEF OF AMICUS CURIAE
AMERICANS FOR PROSPERITY FOUNDATION
IN SUPPORT OF PLAINTIFFS-APPELLANTS AND REVERSAL

---

Ryan P. Mulvey
AMERICANS FOR PROSPERITY FOUNDATION
4201 Wilson Boulevard, Suite 1000
Arlington, VA 22203
Telephone: (571) 444-2841
rmulvey@afphq.org

Dated: November 13, 2025        *Counsel for Amicus curiae AFPF*

## CERTIFICATE OF PARTIES, RULINGS UNDER REVIEW, AND RELATED CASES

Under Circuit Rule 28(a)(1), the undersigned counsel certifies the following:

### A. Parties and Amici

Plaintiffs-Appellants are Gun Owners of America, Inc. and Gun Owners Foundation. Defendant-Appellee is the Bureau of Alcohol, Tobacco, Firearms, and Explosives. *Amicus curiae* Americans for Prosperity Foundation ("AFPF") is a nonprofit corporation. It has no parent companies, subsidiaries, or affiliates that have issued shares or debt securities to the public. No *amici* or intervenors appeared in the district court, and no other *amici* have yet entered an appearance in this Court.

### B. Rulings Under Review

The ruling under review is the district court's memorandum opinion and order on Defendant-Appellee's motion for summary judgment in *Gun Owners of America, Inc., et al. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 21-cv-2919 (ABJ), ECF Nos. 42–43 (July 23, 2025). The case is electronically reported at 2025 WL 2061705.

### C. Related Cases

This case has not previously been before this Court, and AFPF is unaware of any related cases pending in this or any other court.

*/s/ Ryan P. Mulvey*
Ryan P. Mulvey
Counsel for *Amicus curiae* AFPF

## CERTIFICATE UNDER CIRCUIT RULE 29(D)

Under Circuit Rule 29(d), counsel for Americans for Prosperity Foundation ("AFPF") represents that, as of the filing of this brief, AFPF was the only *amicus curiae* supporting Plaintiffs-Appellants.

AFPF's brief builds on arguments that AFPF proffered as *amicus curiae* in *Human Rights Defense Center v. U.S. Park Police*, 126 F.4th 708 (D.C. Cir. 2025). Specifically, AFPF contends that the *Human Rights Defense Center* decision, which ought to have controlled below, forecloses the issuance of so-called "clawback" orders when agencies subject to the Freedom of Information Act ("FOIA") allege that records have been inadvertently disclosed. Clawback is neither a proper exercise of an Article III court's inherent power, nor can it be justified as an equitable remedy provided to federal courts under the FOIA.

*/s/ Ryan P. Mulvey*
Ryan P. Mulvey
Counsel for *Amicus curiae* AFPF

# RULE 26.1 CORPORATE DISCLOSURE STATEMENT

*Amicus curiae* Americans for Prosperity Foundation ("AFPF") is a nonprofit corporation. It has no parent companies, subsidiaries, or affiliates that have issued shares or debt securities to the public.

AFPF states, in compliance with Circuit Rule 26.1(b), that it is a 501(c)(3) nonprofit organization committed to educating and training Americans to be courageous advocates for the ideas, principles, and policies of a free and open society. One of those ideas is open and accountable government. To that end, AFPF considers the Freedom of Information Act ("FOIA") an integral tool to ensuring openness and accountability in the federal government. As part of its mission, AFPF requests records under the FOIA, and prosecutes those requests before agencies and federal courts. AFPF also appears as *amicus curiae* before federal and state courts.

*/s/ Ryan P. Mulvey*
Ryan P. Mulvey
Counsel for *Amicus curiae* AFPF

# TABLE OF CONTENTS

Certificate of Parties, Rulings Under Review, and Related Cases .......................... ii

Certificate Under Circuit Rule 29(d) ...................................................... iii

Rule 26.1 Corporate Disclosure Statement.............................................. iv

Table of Authorities............................................................................... vi

Glossary.................................................................................................. xi

Interest of *Amicus Curiae* ........................................................................1

Summary of Argument..............................................................................2

Argument...................................................................................................3

I.  Circuit precedent squarely precludes any general authority for courts to order clawback of records released, even inadvertently, under the FOIA. .....3

II.  The district court misread *HRDC* and erred by ordering clawback. ..............5

    A.  The district court failed to distinguish *HRDC*. ......................................6

    B.  The district court's apparent refusal to admit the difference between FOIA cases and other civil litigation should be rebuked......10

III.  The Court should reject any invitation to treat clawback as an exercise of "equitable authority" under the FOIA.....................................................13

    A.  Clawback deviates from the expected use of a court's equitable power to enforce the FOIA.................................................................13

    B.  The disclosure of a record, even when inadvertent, moots any further controversy over its withholding...........................................17

IV.  Clawback orders infringe on requesters' First Amendment rights. ...............20

V.  Agencies may start seeking clawback orders more regularly if the district court is not reversed...................................................................24

Conclusion ...............................................................................................26

Certificate of Compliance .........................................................................27

Certificate of Service ................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*100Reporters v. Department of State*,
602 F. Supp. 3d 41 (D.D.C. 2022) ................................................................4, 19

*Alvarez v. Smith*,
558 U.S. 87 (2009) .............................................................................................17

*American Civil Liberties Union v. Department of Defense*,
No. 09-8071, 2012 WL 13075284 (S.D.N.Y. Mar. 20, 2012) ......................9, 10

*Americans for Prosperity Foundation v. Bonta*,
141 S. Ct. 2373 (2021) ......................................................................................20

*Better Government Ass'n v. Department of State*,
780 F.2d 86 (D.C. Cir. 1986) ............................................................................20

*Butterworth v. Smith*,
494 U.S. 624 (1990) ...........................................................................................21

*Cause of Action Institute v. Department of Veterans Affairs*,
No. 20-0997, 2021 WL 1549668 (D.D.C. Apr. 20, 2021) ................................19

*Center for Investigative Reporting v. Department of Justice*,
14 F.4th 916 (9th Cir. 2021) ...............................................................................8

*Chesapeake Bay Foundation, Inc. v. U.S. Army Corp of Engineers*,
722 F. Supp. 2d 66 (D.D.C. 2010) ................................................................18, 19

*Chiquita Brands International Inc. v.*
*Securities & Exchange Commission*,
805 F.3d 289 (D.C. Cir. 2015) ...........................................................................21

*Chrysler Corp. v. Brown*,
441 U.S. 281 (1979) ...........................................................................................23

*Citizens for Responsibility & Ethics in Washington v.*
*Department of Justice*,
846 F.3d 1235 (D.C. Cir. 2017) .........................................................................16

*In re Columbia University Patent Litigation*,
330 F. Supp. 2d 18 (D. Mass. 2004).................................................21

*Cottone v. Reno*,
193 F.3d 550 (D.C. Cir. 1999).........................................................18

*Crooker v. Department of State*,
628 F.2d 9 (D.C. Cir. 1980)............................................................17

*Degen v. United States*,
517 U.S. 820 (1996).......................................................................10

*Ecological Rights Foundation v.
Federal Emergency Management Agency*,
No. 15-4068, 2017 WL 24859 (N.D. Cal. Jan. 3, 2017) ....................11

*Environmental Protection Agency v. Mink*,
410 U.S. 74 (1973).........................................................................12

*Everytown for Gun Safety Support Fund v.
Bureau of Alcohol, Tobacco, Firearms & Explosives*,
984 F.3d 30 (2d Cir. 2020) ..............................................................8

*Fowlkes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
67 F. Supp. 3d 290 (D.D.C. 2014).....................................................8

*Gun Owners of America, Inc. v.
Bureau of Alcohol, Tobacco, Firearms & Explosives*,
No. 21-2919, 2025 WL 2061705 (D.D.C. July 23, 2025)
.................................................................... 5, 6, 7, 8, 9, 10, 13, 22

*Human Rights Defense Center v. U.S. Park Police*,
126 F.4th 708 (D.C. Cir. 2025)..................... 3, 4, 5, 7, 10, 14, 20, 23

*Human Rights Defense Center v. U.S. Park Police*,
No. 19-1502, 2023 WL 5561602 (D.D.C. Aug. 29, 2023)...................6

*Kennecott Utah Copper Corp. v. Department of the Interior*,
88 F.3d 1191 (D.C. Cir. 1996)..........................................................16

*Kissinger v. Reporters Committee for Freedom of the Press*,
445 U.S. 136 (1980)........................................................................17

vii

*Long v. Internal Revenue Service*,
 693 F.2d 907 (9th Cir. 1982) ............................................................14

*McGehee v. Casey*,
 718 F.2d 1137 (D.C. Cir. 1983) ........................................................24

*National Archives & Records Administration v. Favish*,
 541 U.S. 157 (2004) ....................................................................12, 18

*National Press Club Journalism Institute v.*
*Immigration & Customs Enforcement*,
 No. 18-2932, 2023 WL 9001337 (D.D.C. Dec. 28, 2023) ....................4

*New York Times Co. v. United States*,
 403 U.S. 713 (1971) ....................................................................20, 22

*North Carolina v. Rice*,
 404 U.S. 244 (1971) ..........................................................................17

*North v. Walsh*,
 881 F.2d 1088 (D.C. Cir. 1989) ........................................................13

*Payne Enterprises, Inc. v. United States*,
 837 F.2d 486 (D.C. Cir. 1988) ................................................15, 16, 18

*Perry v. Block*,
 684 F.2d 121 (D.C. Cir. 1982) ....................................................17, 20

*In re Providence Journal Co.*,
 820 F.2d 1342 (1st Cir. 1986) ..........................................................21

*Public Citizen Health Research Group v.*
*Food & Drug Administration*,
 953 F. Supp. 400 (D.D.C. 1996) ..............................................4, 10, 19

*In re Rafferty*,
 864 F.2d 151 (D.C. Cir. 1988) ..........................................................21

*Renegotiation Board v. Bannercraft Clothing Co., Inc.*,
 415 U.S. 1 (1974) ....................................................................14, 15, 16

*Rocky Mountain Wild, Inc. v. U.S. Forest Service*,
 56 F.4th 913 (10th Cir. 2022) ..........................................................23

*Schindler Elevator Corp. v. United States ex rel. Kirk*,
  563 U.S. 401 (2011)..................................................................................18

*Seattle Times Co. v. Rhinehart*,
  467 U.S. 20 (1984)....................................................................................21

*Sierra Club v. Environmental Protection Agency*,
  505 F. Supp. 3d 982 (N.D. Cal. 2020)..................................14, 17, 19

*Sorrell v. IMS Health Inc.*,
  564 U.S. 552 (2011)..................................................................................20

*Stonehill v. Internal Revenue Service*,
  558 F.3d 534 (D.C. Cir. 2009)......................................11, 12, 13, 18

*Students Against Genocide v. Deparment of State*,
  257 F.3d 828 (D.C. Cir. 2001)..............................................................18

*The Florida Star v. B.J.F.*,
  491 U.S. 524 (1989)..................................................................................22

*Wilson v. Federal Communications Commission*,
  No. 21-0895, 2022 WL 4245485 (D.D.C. Sept. 15, 2022) ..........11, 19

**Statutes**

Consolidated and Further Continuing Appropriations Act of 2012,
  Pub. L. No. 112-55, 125 Stat. 552 ........................................................8

5 U.S.C. § 552(a)(3)(A) ..............................................................................12

5 U.S.C. § 552(a)(4)(A)(ii) ........................................................................22

5 U.S.C. § 552(a)(4)(B) ..............................................................................14

5 U.S.C. § 552(a)(6)(C) ..............................................................................15

5 U.S.C. § 552(a)(8)(A)(i) ....................................................................12, 23

5 U.S.C. § 552(b) ..........................................................................................12

5 U.S.C. § 552(b)(1)......................................................................................9

18 U.S.C. § 798 ..............................................................................................9

18 U.S.C. § 1924 ..............................................................................................9

**Other Authorities**

Executive Order No. 13,526, 75 Fed. Reg. 707 (Jan. 5, 2010).................................9

Federal Rule of Civil Procedure 26(b)(1) ...............................................................12

Kevin Schmidt, "Everything Wrong with the FOIA Process, In One
    Single Email," Americans for Prosperity Foundation,
    (Jan. 29, 2025)...........................................................................................25

# GLOSSARY

FOIA        Freedom of Information Act

## INTEREST OF *AMICUS CURIAE*

*Amicus curiae* Americans for Prosperity Foundation ("AFPF") is a 501(c)(3) nonprofit organization committed to educating and training Americans to be courageous advocates for the ideas, principles, and policies of a free and open society.[1]  One of those ideas is open and accountable government.  To that end, AFPF considers the Freedom of Information Act ("FOIA") an integral tool for ensuring openness and accountability in the federal government.  AFPF requests records under the FOIA and prosecutes those requests before agencies and federal courts.  AFPF also appears as *amicus curiae* before federal and state courts.

AFPF is familiar with clawback.  It was previously engaged in a clawback dispute with a federal agency.  It also served as one of the *amici* in *Human Rights Defense Center v. U.S. Park Police*—the significance of which is at the heart of the instant appeal.  As a frequent FOIA requester, AFPF has a strong interest in this Court reiterating that clawback is not an appropriate exercise of a federal court's authority—whether that authority is considered "inherent" or "equitable"—because it conflicts with the mandate of the FOIA and raises First Amendment concerns.

---

[1] All parties have consented to the filing of this brief.  Under Federal Rule of Appellate Procedure 29(a)(4)(E), *amicus curiae* states that no counsel for a party other than AFPF has authored this brief, in whole or in part.  No party or party's counsel contributed money that was intended to fund the preparation or submission of this brief.  And no person other than *amicus curiae* or its counsel made a monetary contribution intended to fund the preparation or submission of this brief.

# SUMMARY OF ARGUMENT

This case presents a straightforward question: Was this Circuit serious when it decided earlier this year, in *Human Rights Defense Center v. U.S. Park Police*, that federal courts may not demand the return or destruction of records released under the Freedom of Information Act ("FOIA") simply because the government regrets their disclosure?

The FOIA's mandate is simple: once an agency releases a record, the public's right to know prevails. An agency cannot claim a "do over" if it realizes it inadvertently released records that it could have withheld. And federal courts, for their part, do not have "inherent" or "equitable" powers to rewrite the statute's plain text and purpose to help the agency "put the proverbial cat back in the bag." The district court's attempt to sidestep *Human Rights Defense Center* is not just unpersuasive—it is a legal sleight of hand that threatens the transparency Congress intended when it created the FOIA.

Clawback is a stranger to the FOIA's sixty-year history. The statute provides no mechanism for the compelled return or destruction of records, and courts have no business inventing one. To allow them to do so would not only flout the design of the FOIA but also controlling Supreme Court and Circuit caselaw that explains how equitable remedies are supposed to benefit requesters. On top of that, clawback violates the First Amendment by imposing an unlawful prior restraint on speech.

2

If allowed to stand, the district court's decision would embolden agencies to treat FOIA as a game of take-backs, undermining public trust and government accountability. The statute, the Constitution, and common sense all point in one direction: once records are out the door, they stay out.

For these reasons, the Court should reverse the district court.

## ARGUMENT

### I. Circuit precedent squarely precludes any general authority for courts to order clawback of records released, even inadvertently, under the FOIA.

In *Human Rights Defense Center*, this Court clarified that the "FOIA does not provide for the compelled return or destruction of inadvertently produced information." 126 F.4th 708, 717 (D.C. Cir. 2025) [hereinafter "*HRDC*"]. Once an agency releases a record, it loses its ability to assert exemptions. An agency is also barred from seeking a court order prohibiting a requester's use of that lawfully obtained record. At the end of the day, if an agency "during th[e] administrative stage fails to make intended redactions, neither FOIA nor any inherent judicial authority enables it to seek a court order to limit the effects of its error." *Id.* at 719. Nothing in the "FOIA . . . enable[es] the government to put the proverbial cat back in the bag." *Id.* at 718.

The *HRDC* decision should have been uncontroversial. Neither this Circuit nor the Supreme Court has ever recognized clawback authority in the near-sixty-year history of the FOIA. Several district courts that contemplated clawback before

*HRDC* was decided even acknowledged there was a lack of clear authorization for the practice. *See, e.g.*, *Nat'l Press Club Journalism Inst. v. Immigration & Customs Enf't*, No. 18-2932, 2023 WL 9001337, at *19 n.7 (D.D.C. Dec. 28, 2023) ("It is not immediately clear whether the Court has the authority to take either of these steps [to compel the return or destruction of records]."); *100Reporters v. Dep't of State*, 602 F. Supp. 3d 41, 84 (D.D.C. 2022) (noting the dearth of "authority indicating that the Court has the authority to order that a FOIA recipient return records that were inadvertently released").

At the heart of *HRDC* is the holding that a court cannot turn to "'implied' or inherent judicial power to create a mechanism" requiring requesters to return or destroy agency records. 126 F.4th at 717. Clawback orders do not represent "an exercise of Article III courts' well-established authority to manage judicial proceedings." *Id.* at 717. *First*, they lack any foundation in historical practice. *See id.* at 718. Indeed, the earliest use of clawback in this jurisdiction seems to have been roughly thirty years ago in *Public Citizen Health Research Group v. Food & Drug Administration*, 953 F. Supp. 400, 404–06 (D.D.C. 1996)—a full three decades after initial passage of the FOIA.

*Second*, clawback is unnecessary to preserve another authority of a court. *See HRDC*, 126 F. 4th at 718 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–45 (1991)). The power to compel a requester to return or destroy a record produced

under an agency's independent statutory obligation—and not as a matter of court procedure—does not serve judicial economy, does not implicate concerns about institutional integrity, and is not needed to ensure submission to lawful orders. The same is true for a supposed power to prohibit a requester from using or disseminating a lawfully obtained record post-disclosure.

But the *HRDC* court went further than just considering whether clawback could be justified an exercise of inherent Article III power. It also examined whether clawback made sense as "a means of effectuating the court's judicial authority under FOIA," that is, as an exercise of a court's equitable remedial power under the statute. *HRDC*, 126 F.4th at 719. The conclusion was no different: FOIA does not allow for clawback, even as a matter of equity. To reframe clawback as a kind of remedy—as a mechanism for "redress[ing] the agency's mistaken disclosures," as this Court phrased it—is unavailing. *Id.* "That argument cannot be squared with the terms of FOIA and the structure of its disclosure process." *Id.* "Nothing suggests [an] agency acquires an otherwise absent clawback remedy just because a FOIA requester resorts to litigation." *Id.* (citing 5 U.S.C. § 552(a)(4)(B)).

## II. The district court misread *HRDC* and erred by ordering clawback.

The district court presumed it had "equitable authority" to order clawback, despite this Court's clear holding in *HRDC*, because it concluded that decision was "distinguishable and d[id] not control." *Gun Owners of Am., Inc. v. Bureau of*

*Alcohol, Tobacco, Firearms & Explosives*, No. 21-2919, 2025 WL 2061705, at \*5 (D.D.C. July 23, 2025) [hereinafter "*Gun Owners*"].  The district court also reasoned that other "precedent regarding . . . equitable authority under FOIA support[ed] a remedy that bars the use of FOIA-exempted information."  *Id.*  On both counts, the district court seriously erred by misreading the FOIA and relevant case law.

## A.    The district court failed to distinguish *HRDC*.

The district court offered three grounds for distinguishing *HRDC*.  None is compelling.  *First*, it suggested *HRDC* failed to address whether the inadvertently disclosed information at issue had been, in fact, exempt.  It was apparently "not clear whether the [Circuit's] discussion about the clawback order [under review] was meant to reach inadvertently disclosed information that is properly, or as in this case, concededly, exempt."  *Gun Owners*, 2025 WL 2061705, at \*11.  But this is not a viable distinction.  The district court in *HRDC* concluded, like the district court here, that the disputed records were protected by Exemption 6.  *Human Rights Def. Ctr. v. U.S. Park Police*, No. 19-1502, 2023 WL 5561602, at \*6 (D.D.C. Aug. 29, 2023). This Court's apparent silence on the propriety of the government's Exemption 6 claims on appeal underscores that its holding vis-à-vis clawback was *not* premised on a colorable post-hoc withholding claim.  That much was quite explicit: "The primary function of the [clawback] order, then, was . . . to fill a perceived hole in the

FOIA statute by enabling the government to put the proverbial cat back in the bag." *HRDC*, 126 F.4th at 718.

*Second*, the district court reasoned it was important that, in *HRDC*, the "plaintiff . . . was disputing the agency's withholding[s]," whereas Appellants here "did not contest the . . . withholdings at all." *Gun Owners*, 2025 WL 2061705, at *11. Put differently, the court believed clawback was permissible because Appellee was "entitled to withhold the information in the first place." *Id.* Yet that distinction is hardly different from the first. It similarly turns on whether a court can entertain a withholding claim after records have gone out the door. But on that point, this Court was again clear: If an agency "fails to make intended redactions, neither FOIA nor any inherent judicial authority enables it to seek a court order to limit the effects of its error." *HRDC*, 126 F.4th at 719.

*Third*, the district court pointed to dicta in *HRDC* suggesting a caveat to the general rule against clawback whenever records are "subject to any independent legal prohibition on disclosure, such as applies to classified documents." *HRDC*, 126 F.4th at 719; *see Gun Owners*, 2025 WL 2061705, at *11. At the outset, it is vital to remember this Court had merely surmised that such an "independent legal prohibition on disclosure" could change the outcome in *HRDC*. 126 F.4th at 719 ("[W]e express no opinion on how any such prohibition could affect the analysis."). And it is just as important to note that, contrary to the district court's suggestion,

*HRDC* never "specifically carved [out] Exemption 3" from the general rule against clawback. *Gun Owners*, 2025 WL 2061705, at *11. The district court assumed—without explanation—that an "independent legal prohibition on disclosure" was synonymous with an Exemption 3 statute.

There are reasons to doubt Exemption 3, at least in this case, is the sort of independent prohibition on disclosure that might justify clawback. The underlying statute cited by Appellee is the so-called Tiahrt Amendment, a rider that Congress has repeatedly added to appropriations bills to prohibit Appellee from expending funds to disclose information from the national Firearms Tracing System database. *See* Consolidated and Further Continuing Appropriations Act of 2012, Pub. L. No. 112-55, 125 Stat. 552, 609–10. It is hardly settled law that the Tiahrt Amendment qualifies as a withholding provision for FOIA purposes. This Circuit has yet to settle the matter, and at least one district court has rejected the Amendment's use with Exemption 3. *See Fowlkes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 67 F. Supp. 3d 290, 300–01 (D.D.C. 2014). There is a split between the courts of appeals, too. *Compare Ctr. for Investigative Reporting v. Dep't of Justice*, 14 F.4th 916, 927–32 (9th Cir. 2021), *with Everytown for Gun Safety Support Fund v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 984 F.3d 30, 42–43 (2d Cir. 2020). It seems unlikely this Court imagined clawback being used when the government's alleged independent basis for nondisclosure is not even universally recognized.

The Tiahrt Amendment, assuming it is a legitimate bar to disclosure, also functions differently than the example provided in *HRDC*. The Amendment imposes no duties on members of the public, either in terms of the possession or the use of information originating from the Firearms Trace System database. In this respect, the district court was wrong to describe the Amendment as a broad "mandate against dissemination." *Gun Owners*, 2025 WL 2061705, at *15. The Amendment only limits the ability of an agency, or certain other government entities or individual officials, from disclosing (or re-disclosing) database information.

Such a disclosure prohibition, which only proscribes agency action, is unlike laws that generally forbid the receipt, possession, or use of records based on their content. Consider classified records, which are protected by Exemption 1. *See* 5 U.S.C. § 552(b)(1); *see also* Executive Order No. 13,526, 75 Fed. Reg. 707 (Jan. 5, 2010). Apart from the FOIA's express grounds for protecting classified information, Congress has passed laws that make it unlawful for certain persons to remove or retain classified documents, *see* 18 U.S.C. § 1924, or for anyone to publish or use them. *See id.* § 798. Thus, no matter if a requester might have "innocently" acquired a classified document via FOIA production, that requester is probably still "not authorized to possess it." *Am. Civil Liberties Union v. Dep't of Def.*, No. 09-8071, 2012 WL 13075284, at *5 (S.D.N.Y. Mar. 20, 2012).[2] This Court likely anticipated

---

[2] There are, however, constitutional objections to consider. *See infra* at pp. 20–24.

a narrow exception to the general rule against clawback for such rare situations, and not whenever an agency might claim that Exemption 3 applies.

### B. The district court's apparent refusal to admit the difference between FOIA cases and other civil litigation should be rebuked.

In a lengthy footnote, the district court objected to this Court's observation in *HRDC* that FOIA cases are unlike other kinds of civil litigation, such that judicial supervision of an agency's fulfillment of its disclosure obligations is sufficiently analogous to discovery to allow for clawback. *See Gun Owners*, 2025 WL 2061705, at *12 n.6. But this Court was forthright about why FOIA cases are special: They build on an "administrative regime designed to advance government transparency" and, "[u]nlike [civil] litigation," do not implicate the same "adversarial process to determine the parties' rights and obligations." *HRDC*, 126 F.4th at 719. Appellee, for its part, has hinted it might attempt to relitigate this issue or muddle the Circuit's reasoning. *See* Appellee's Opp'n to Pls.' Mot. for a Stay Pending Appeal at 19–20.

The most analogous authority to clawback is a federal court's power to oversee discovery, which complements its enforcement of the rules of procedure and evidence. *See generally Degen v. United States*, 517 U.S. 820, 826 (1996). Reliance on this analogy to support clawback is evident in the pre-*HRDC* caselaw. *See, e.g.*, *Am. Civil Liberties Union*, 2012 WL 13075284, at *5. Federal Rule of Civil Procedure 26 was cited, too. *See, e.g.*, *Pub. Citizen Health Research Grp.*, 953 F. Supp. at 404. Other courts described clawback as a type of "protective order." *See,*

*e.g.*, *Wilson v. Fed. Commc'ns Comm'n*, No. 21-0895, 2022 WL 4245485, at *14–15 (D.D.C. Sept. 15, 2022).  And still others looked to Federal Rule of Evidence 502. *See, e.g.*, *Ecological Rights Found. v. Fed. Emergency Mgmt. Agency*, No. 15-4068, 2017 WL 24859, at *6–7 (N.D. Cal. Jan. 3, 2017).

The foregoing decisions were all misguided because they relied on a superficial similarity between disclosure under the FOIA—which proceeds under a statutory obligation that operates independent of litigation or court intervention—and the production of documents responsive to a discovery request, which can only occur once the parties have initiated litigation.  Although a court's authority to enter a protective order in discovery may be uncontroversial, the same cannot be said for its management of production under the FOIA, at least beyond setting a timeline for production.  *See Stonehill v. Internal Revenue Serv.*, 558 F.3d 534, 538 (D.C. Cir. 2009) ("The FOIA disclosure regime . . . is distinct from civil discovery.").  Courts that have ordered clawback inevitably admit, as they must, that the "FOIA [itself] does not provide for protective orders or the compelled return or destruction of inadvertently produced documents."  *Wilson*, 2022 WL 4245485, at *5.  The district court here seems to be a notable exception.

The most important difference between the FOIA process and discovery concerns the standard for keeping material out of the hands of another party.  In civil discovery, a propounding party can obtain information about "any nonprivileged

matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]"  Fed. R. Civ. P. 26(b)(1).  The basic standard for withholding responsive information is the technical application of a privilege.  The FOIA, on the other hand, affords any person with access to any records, so long as those records are reasonably described and the request conforms with applicable regulations.  *See* 5 U.S.C. § 552(a)(3)(A).  The sole basis for withholding is one of nine statutory exemptions, *id.* § 552(b), and the government must also satisfy the foreseeable-harm standard.  *Id.* § 552(a)(8)(A)(i).  A mere claim of privilege will be insufficient to prevail at summary judgment.[3]  The burden for securing a protective order and blocking discovery, however, is altogether distinct.  *See Stonehill*, 558 F.3d at 538 ("[T]hat a document is exempt from discovery does not necessarily mean it will be exempt from disclosure under FOIA.").

The FOIA also does not limit a requester's right of access based on relevance or proportionality.  *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004) ("[W]hen documents are within FOIA's disclosure provisions, citizens should not be required to explain why they seek the information."); *see also Envtl. Prot. Agency v. Mink*, 410 U.S. 74, 86 (1973).  "Discovery limitations, civil or criminal, . . . do not apply when FOIA requests are presented in a discrete civil

---

[3] The distinction between FOIA production and discovery is even clearer in a case such as this one, where the records at issue are not even privileged but contain information ostensibly protected by Exemptions 3, 6, and 7.

action." *North v. Walsh*, 881 F.2d 1088, 1096 (D.C. Cir. 1989); *see Stonehill*, 558 F.3d at 538 ("[W]hile information disclosed during discovery is limited to the parties and can be subject to protective orders against further disclosure, when a document must be disclosed under FOIA, it must be disclosed to the general public[.]").

Discovery—or civil litigation, more broadly—and FOIA processes are distinct. The authority of a court to manage the former (and to enter protective orders) cannot, by analogy, extend to supervision of the latter, at least if that entails ordering clawback or otherwise barring the use or dissemination of records.

### III. The Court should reject any invitation to treat clawback as an exercise of "equitable authority" under the FOIA.

#### A. Clawback deviates from the expected use of a court's equitable power to enforce the FOIA.

Apart from trying to distinguish *HRDC*, the district court took the unprecedented step of claiming clawback was impliedly authorized by the FOIA itself, as part of a court's power to fashion equitable remedies. *See Gun Owners*, 2025 WL 2061705, at *12–15. This was clear error. To start, this Court did not limit its reasoning in *HRDC* to the boundaries of inherent Article III power. It expressly considered whether clawback could alternatively be understood as "a means of effectuating the court's judicial authority under FOIA"—that is, as part of its equitable remedial authority under 5 U.S.C. 552(a)(4)(B). This Court's response was inescapable: "No." Characterizing clawback as a type of equitable remedy

13

"cannot be squared with the terms of FOIA and the structure of its disclosure process," as "neither FOIA nor any inherent judicial authority enables" an agency "to seek a court order to limit the effects of its error." *HRDC*, 126 F.4th at 719.

The FOIA empowers a court "[(1)] to enjoin [an] agency from withholding agency records and [(2)] to order the production of any agency records improperly withheld[.]" 5 U.S.C. § 552(a)(4)(B). The role of the court is limited, as a matter of plain text, to determining "what documents the [agency] *must* produce." *Sierra Club v. Envtl. Prot. Agency*, 505 F. Supp. 3d 982, 991 (N.D. Cal. 2020). To be sure, the Supreme Court has recognized that Congress wrote the FOIA to make courts the "enforcement arm of the statute" and did not intend "to limit the[ir] inherent powers." *Renegotiation Bd. v. Bannercraft Clothing Co., Inc.*, 415 U.S. 1, 19–20 (1974). But the exercise of equitable power must always be "'consistent with the statutory language and policy [of the FOIA], legislative background[,] and the public interest.'" *Id.* at 19 (citation omitted). The silence of the FOIA with respect to clawback cannot be construed as *carte blanche* for a court to invent implied equitable powers that flout the statute's purpose. "Congress presumably acted deliberately in omitting general clawback authority from FOIA." *HRDC*, 126 F.4th at 719.

A court's equitable power under the FOIA should be exercised only in remedial fashion against agencies for failure to abide by the statute. *See Long v. Internal Revenue Serv.*, 693 F.2d 907, 909 (9th Cir. 1982) ("In determining whether

14

injunctive relief is appropriate to resolve a FOIA dispute, the court's prime consideration should be the effect on the public of disclosure or nondisclosure."); *accord Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988). Equitable power should not be weaponized against requesters for the benefit of agencies, which only enjoy limited options to seek temporary relief from their disclosure obligations. *See, e.g.*, 5 U.S.C. § 552(a)(6)(C) (authorizing a stay of proceedings if an agency can show "exceptional circumstances"). A requester who receives a record without redaction has not, in any way, violated the FOIA. It would be entirely backwards for a court to reverse such disclosure by ordering the return or destruction of a record, let alone prohibit a requester from using it. Either outcome is discordant with the FOIA's text and spirit.

None of the authorities cited by the district court say anything different. *Renegotiation Board v. Bannercraft Clothing Co.*, for example, merely stated in dicta the uncontroversial point that the FOIA's remedial provision should not be read in a literal way as embodying a "prescribed and exclusive remedy." 415 U.S. at 19–20. As much as the decision might suggest anything further, it is important to remember the equitable remedy in dispute—an injunction against further renegotiation of federal contracts pending the production of records—depended on rights and obligations detailed in the Renegotiation Act. *See id.* at 20. The Supreme

Court clearly cautioned against FOIA (and a court's equitable power under it) "supplant[ing] and defeat[ing]" another statutory scheme. *Id.*; *see id.* at 23 & 24.

*Payne Enterprises* built on *Renegotiation Board*'s holding by clarifying that equitable authority under the FOIA must be oriented towards "enforcing *its*"—that is, the statute's—"terms." 837 F.2d at 494. Thus, an agency cannot, for instance, moot a case by disclosing a record while maintaining a "policy or practice [that] will impair [a] party's lawful access to information in the future." *Id.* at 491.

In *Citizens for Responsibility & Ethics in Washington v. Department of Justice*, this Circuit explained a court could enter a "prospective injunction" imposing an ongoing "affirmative duty to disclose" records subject to the FOIA's "reading-room" provision to an individual complainant. 846 F.3d 1235, 1242 (D.C. Cir. 2017). The lodestar of the court's reasoning was ensuring that any equitable remedy was limited to "'relieving the injury suffered by the individual complainant.'" *Id.* at 1243 (citation omitted). Yet again, the focus was on providing some form of relief to an aggrieved requester—not a defendant-agency.

\*     \*     \*

The relevant caselaw appears unanimous: a court's equitable authority under the FOIA should be limited to fashioning remedies that aim to "fully relieve[] whatever informational injury may have been suffered by [a] particular complainant[.]" *Kennecott Utah Copper Corp. v. Dep't of the Interior*, 88 F.3d

1191, 1203 (D.C. Cir. 1996). Agencies can have no cognizable injuries under the statute and enjoy no right to enforce against the public.

Clawback is nonexistent at the administrative stage. That a requester chooses to enforce *its* rights by filing a complaint should not expand the agency's ability to revisit the treatment of records once they have gone out the door. Clawback orders will never resolve the basic dispute presented in *any* FOIA action—whether an agency is (1) "improperly" (2) "withholding" (3) "agency records." *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980).

**B.    The disclosure of a record, even when inadvertent, moots any further controversy over its withholding.**

The role of a court under the FOIA is largely limited to determining "what documents [the agency] *must* produce." *Sierra Club*, 505 F. Supp. 3d at 991. But when a requester no longer challenges the treatment of a record, there is no basis for the agency to press the matter further, even if the record *could* have been redacted. FOIA claims are routinely dismissed as moot once a requester receives a record and raises no further objection. *See Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982); *Crooker v. Dep't of State*, 628 F.2d 9, 10 (D.C. Cir. 1980) ("Once the records are produced the substance of the controversy disappears[.]"). Such cases no longer present a justiciable controversy. *Cf. Alvarez v. Smith*, 558 U.S. 87, 92 (2009); *N. Carolina v. Rice*, 404 U.S. 244, 246 (1971). *But see Payne Enters, Inc.*, 837 F.2d

486. For this reason, clawback makes little logical sense, as it cannot remedy a live controversy.

An agency's attempt to assert an exemption retroactively is moot under the FOIA's equitable-waiver doctrine, too. A withholding claim should fail when the information at issue has been previously "acknowledged" or "disclosed." "[M]aterials normally immunized from disclosure . . . lose their protective cloak once disclosed and preserved in a permanent public record." *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999). An agency cannot backtrack and re-process a record once it is in a requester's hands. At that point, the record is a "permanent public record," *id.*, that lives in the public domain. *See Students Against Genocide v. Dep't of State*, 257 F.3d 828, 836 (D.C. Cir. 2001) ("[A] disclosure made to any FOIA requester is effectively a disclosure to the world at large. The courts lack authority to limit the dissemination of records once they are released[.]"); *see also Favish*, 541 U.S. at 174; *Stonehill*, 558 F.3d at 538; *cf. Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401, 410–11 (2011) (FOIA response and production of records is an agency "report" that triggers the False Claims Act's "public disclosure bar").

It does not matter if disclosure was inadvertent, mistaken, or otherwise regretted. "[T]hrough such inadvertence" an agency "irretrievably place[s] . . . [the record] in the public domain." *Chesapeake Bay Found., Inc. v. U.S. Army Corp of Eng'rs*, 722 F. Supp. 2d 66, 72 n.3 (D.D.C. 2010). Of course, there may be rare

exceptions. If a rogue employee at an intelligence agency, for example, leaks unredacted national-security material outside the FOIA process, an "inadvertent" disclosure might lack "official acknowledgment" and defease "the public domain exception." *Id.* But in the normal course, agency inadvertence and "mistakes by litigants have consequences." *Sierra Club*, 505 F. Supp. 3d at 991.

Finally, when some courts (like the district court here, before entering final judgment) issue "temporary protective orders" prohibiting a requester from using a record until a lawsuit is complete, *see Wilson*, 2022 WL 4245485, at *14–15; *Pub. Citizen Health Research Grp.*, 953 F. Supp. at 404, they misconceive the issue at hand. *See 100Reporters*, 602 F. Supp. 3d at 84. These "protective orders" raise the same justiciability concerns as permanent clawback. If an agency seeks a "protective order," its motion presupposes an opportunity later in litigation to argue that an inadvertently disclosed record should be exempt. But once a requester has a copy of a record in unredacted form, any further dispute is moot. *See supra* at pp. 17–19. A court has no basis to rule on a legal question that is no longer a live issue, *see Cause of Action Inst. v. Dep't of Veterans Affairs*, No. 20-0997, 2021 WL 1549668, at *5 n.2 (D.D.C. Apr. 20, 2021), or which may never be raised be at summary judgment if the requester seeks dismissal of the case. Any other outcome would commit a court to offering an advisory opinion. Thus, a court's consideration of an exemption claim against the wishes of a requester could be constitutionally

barred. *See Perry*, 684 F.2d at 125; *see also Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 90–92 (D.C. Cir. 1986).

## IV. Clawback orders infringe on requesters' First Amendment rights.

A court's exercise of equitable authority is circumscribed by the Constitution and controlling caselaw that bars prior restraints on speech. "The First Amendment prohibits government from 'abridging the freedom of speech,'" *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2382 (2021), and "[a]n individual's right to speak is implicated when information he or she possesses is subjected to 'restraints on the way in which the information might be used.'" *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 568 (2011); *see N.Y. Times Co. v. United States*, 403 U.S. 713, 714 (1971) ("'Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity.'").

This Court had no reason to address the First Amendment in *HRDC* because it viewed its "non-constitutional analysis" as "dispositive." 126 F.4th at 719. Unfortunately, the district court's attempt to sidestep *HRDC* now warrants a comprehensive exposition of clawback's constitutional infirmities. A requester's right to use records obtained under the FOIA is seriously threatened by clawback. The government must be strictly required to produce a compelling interest that would justify abridging the constitutionally protected right to speech to allow an

agency a second bite at the FOIA-exemption apple. *Cf. Butterworth v. Smith*, 494 U.S. 624, 632 (1990).

The distinction between the production of records under the FOIA and during coercive civil discovery is helping for contextualizing this debate. *See supra* at pp. 10–13. As the Supreme Court explained in *Seattle Times Co. v. Rhinehart*, although "a litigant [does not have] . . . an unrestrained right to disseminate information that has been obtained through pretrial discovery," 467 U.S. 20, 31 (1984), courts can "not restrict the dissemination of . . . information if gained from other sources[.]" *Id.* at 37. This Court has confirmed that *Seattle Times* limits any claimed judicial power to control the use of records obtained by a litigant outside of discovery, *see, e.g.*, *In re Rafferty*, 864 F.2d 151, 155 (D.C. Cir. 1988), including in the FOIA context. *See Chiquita Brands Int'l Inc. v. Sec. & Exch. Comm'n*, 805 F.3d 289, 300 (D.C. Cir. 2015); *accord In re Providence Journal Co.*, 820 F.2d 1342, 1344–45, 1349 n.51 (1st Cir. 1986); *cf. In re Columbia Univ. Patent Litig.*, 330 F. Supp. 2d 18, 19 n.1 (D. Mass. 2004) ("The court has expressed serious doubts [post-*Seattle Times*] as to whether it would ordinarily be permissible or appropriate to restrict distribution of information obtained [under the FOIA] independently of discovery . . . in view of the heavy presumption against prior restraints[.]") (citing *Pub. Citizen Health Research Grp.*, 953 F. Supp. at 404–05).

An agency's claim that it inadvertently disclosed a record does not change the First Amendment calculus. In *The Florida Star v. B.J.F.*, the Supreme Court rejected the argument that lawful receipt of information—there, the name of a rape victim "erroneous[ly], if inadvertent[ly]," included in a police report, 491 U.S. 524, 538 (1989)—turned on whether it was properly disclosed. *Id.* at 536 ("But the fact that state officials are not required to disclose such reports does not make it unlawful for a newspaper to receive them when furnished by the government."); *see N.Y. Times Co.*, 403 U.S. at 713 (recognizing government inability to prevent publication of the Pentagon Papers). If the First Amendment protects the dissemination of information inadvertently disclosed outside of civil discovery, even when such dissemination impinges on the privacy interests of non-governmental third parties, then it must protect, *a fortiori*, the right of a FOIA requester to use an agency record, no matter if it has been mistakenly released or could be withheld under a FOIA exemption.[4]

The court below failed to recognize the import of *The Florida Star*, concluding instead there could be no prior restraint as Appellants never had "a right to the material found to be exempt under Exemptions 3 and 7(E)." *Gun Owners*, 2025 WL 2061705, at *16. The district court's reasoning, in this regard, is much

---

[4] Although many First Amendment cases involve traditional news-media organizations, the holdings of those cases and their constitutional protections apply to all Americans. A citizen-watchdog or a "representative of the news media," *see* 5 U.S.C. § 552(a)(4)(A)(ii), among others, are just as entitled to be free from prior restraints as a classic news entity.

like the Tenth Circuit's faulty logic in *Rocky Mountain Wild, Inc. v. U.S. Forest Service*, where it insisted the relevant question with clawback was "not one of who received [records], but whether any member of the public had a *right to receive them*" in the first place."  56 F.4th 913, 930 (10th Cir. 2022) (emphasis added). Because the Tenth Circuit held the requester did not enjoy a "right" to receive mistakenly disclosed records, the agency could never have "waiv[ed] the ability to exempt" them, even retroactively.  *Id.*

Notwithstanding this Court's rejection of *Rocky Mountain Wild* in *HRDC*, 126 F.4th at 719, it is deeply confusing to characterize a person's right of access under the FOIA in terms of whether disclosure will be (or was) authorized.  If a requester receives a determination letter and records, the reasonable conclusion is that release has been authorized and any records intentionally processed.  That an agency could have withheld something under an exemption is largely irrelevant as the FOIA's exemptions are not "mandatory bars to disclosure."  *Chrysler Corp. v. Brown*, 441 U.S. 281, 293 (1979).  The mere fact an agency failed (knowingly or otherwise) to redact a record says nothing about whether a requester had a "right" to obtain it. This is doubly so given Congress's codification of the foreseeable-harm standard, which adds a burden to withholding on top of an agency's required demonstration of the technical application of an exemption.  *See* 5 U.S.C. § 552(a)(8)(A)(i).

Ultimately, the exemption question distracts from the real issues with clawback, including the First Amendment infirmities. The brutal truth is Appellants already have the records at issue. Their acquisition and possession of those records is undisputably lawful.[5] They do not seek access to anything else. Yet despite all this, the district court entered a prohibitory injunction that, as Appellants demonstrate, can be interpreted very expansively. *See* Appellants' Br. at 33–34. Such an example of an unlawful prior restraint is hornbook stuff.

## V. Agencies may start seeking clawback orders more regularly if the district court is not reversed.

Although clawback is relatively rare, in the lead up to *HRDC*, agencies were increasingly trying to obtain it. AFPF, for its part, went through a clawback dispute with the Federal Trade Commission ("FTC")—a dispute that involved one of the more incredible attempts to obtain the return or destruction of a record long after it has been disclosed. *See generally Ams. for Prosperity Found. v. Fed. Trade Comm'n*, No. 21-3207 (D.D.C. filed Dec. 8, 2021).

During the summer of 2022, the FTC disclosed several records to AFPF, including an email chain reflecting communications between lawyers at the FTC and

---

[5] For this reason, the district court's reliance on *McGehee v. Casey* is inapt. *McGehee*, which is not even a FOIA case, involved a Central Intelligence Agency officer's challenge to a non-disclosure agreement prohibiting his intended publication of classified records obtained during his official duties. *See generally* 718 F.2d 1137 (D.C. Cir. 1983). Appellants are not similarly situated, as they are not subject to a voluntary legal agreement limiting their rights to use agency records.

another agency about a couple of lawsuits. There was nothing in the FTC's determination letter—let alone the email chain—to suggest the disputed record should have been withheld under an exemption, and even if it could have been technically privileged (and protected by Exemption 5), it was not self-evident there was any foreseeable harm in disclosure.

For seven months, the email chain was freely accessible to all AFPF employees. Then, at the end of February 2023, the FTC claimed its release of the email had been inadvertent. That claim came in the middle of negotiations to narrow the scope of summary judgment briefing. The FTC asked AFPF to sequester and destroy all copies of the email chain, but AFPF declined to do so. Despite AFPF's consistent refusal to destroy or return the email chain, the FTC waited another three months before moving the district court for entry of a briefing schedule for a clawback motion. *See* Pre-Mot. J. Statement at 6–10, *Ams. for Prosperity Found. v. Fed. Trade Comm'n*, No. 21-3207 (D.D.C. July 28, 2023), ECF No. 29.

After this Court issued its opinion in *HRDC*, the FTC agreed to settle AFPF's case and allow it to keep and use the contested record. *See generally* Kevin Schmidt, "Everything Wrong with the FOIA Process, In One Single Email," Ams. for Prosperity Found., Jan. 29, 2025, https://americansforprosperityfoundation.org/ blog/everything-wrong-with-the-foia-process-in-one-single-email. While the FTC never made its case for clawback on the merits, the arguments that it previewed ran

the gamut from appealing to the court's inherent authority to preserve the integrity of judicial proceedings *à la* management of civil discovery, to the supposed relevance of FRE 502 to the FOIA, and the need for a "temporary protective order" to serve the ends of justice.

If the district court's ruling here is not reversed, *HRDC* will lose any real precedential force. Swapping out "inherent authority" for "equitable authority" will open the door to agencies again viewing clawback as a reasonable litigation strategy. That would be an intolerable result. District court judges should be directed that neither their inherent Article III authority *nor* their equitable remedial authority under the FOIA permit clawback.

## CONCLUSION

For these reasons, this Court should reverse the district court.

Dated: November 13, 2025       Respectfully submitted,

*/s/ Ryan P. Mulvey*
Ryan P. Mulvey
AMERICANS FOR PROSPERITY FOUNDATION
4201 Wilson Boulevard, Suite 1000
Arlington, VA 22203
Telephone: (571) 444-2841
rmulvey@afphq.org

*Counsel for Amicus curiae* AFPF

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B) because it contains 6,420 words. The brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it was prepared using Microsoft Word for Microsoft 365 in Times New Roman 14-point font.

Dated: November 13, 2025

*Ryan P. Mulvey*
Ryan P. Mulvey
Counsel for *Amicus curiae* AFPF

**CERTIFICATE OF SERVICE**

I hereby certify that on November 13, 2025, I electronically filed the above Brief of *Amcius Curiae* Americans for Prosperity Foundation in Support of Plaintiffs-Appellants with the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system. I further certify that the participants in this case are registered CM/ECF users, and service will be accomplished through the appellate CM/ECF system.

/s/ Ryan P. Mulvey
Ryan P. Mulvey
Counsel for *Amicus Curiae* AFPF