**NOT YET SCHEDULED FOR ORAL ARGUMENT**

**No. 25-5309**

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

GUN OWNERS OF AMERICA, INC.; GUN OWNERS FOUNDATION,

*Plaintiffs-Appellants*,

v.

BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES,

*Defendant-Appellee.*

Appeal from the United States District Court for the District of
Columbia, Case No. 1:21-cv-02919 (Hon. Amy Berman Jackson)

**CONSENT BRIEF OF AMICI CURIAE
REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS
AND 25 NEWS AND MEDIA ORGANIZATIONS
IN SUPPORT OF APPELLANTS AND REVERSAL**

Bruce D. Brown
Lisa Zycherman
Mara Gassmann
Adam A. Marshall
Rachel Seller*
REPORTERS COMMITTEE FOR
   FREEDOM OF THE PRESS
1156 15th St. NW, Ste. 1020
Washington, DC 20005
bruce.brown@rcfp.org
(202) 795-9300
   *Counsel for Amici Curiae*
   * Of Counsel

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), amici curiae Reporters Committee for Freedom of the Press, The Atlantic Monthly Group LLC, Axios Media Inc., Dow Jones & Company, Inc. (*The Wall Street Journal*), First Amendment Coalition, Forbes Media LLC, The Intercept Media, Inc., The Media Institute, MediaNews Group Inc., National Freedom of Information Coalition, The National Press Club, National Press Photographers Association, National Public Radio, Inc., The New York Times Company, News/Media Alliance, The NewsGuild - CWA, Online News Association, POLITICO LLC, Pro Publica, Inc., Radio Television Digital News Association, Reuters News & Media Inc., Society of Environmental Journalists, Society of Professional Journalists, Student Press Law Center, Vox Media, LLC, and The Washington Post (collectively, "amici"), certify as follows:

A.     Parties and Amici

All parties appearing before the District Court and in this Court as of the filing of this brief are listed in the brief for Plaintiffs-Appellants.  According to the docket immediately prior to the filing of this brief, three amicus curiae briefs have since been filed in support of

Appellants or in support of neither party by the following: Americans for Prosperity Foundation, The Buckeye Institute, and the Mayor and City Council of Baltimore.

B.    Rulings Under Review

References to the rulings at issue appear in Plaintiffs-Appellants' brief.

C.    Related Cases

Amici are aware of no related cases within the meaning of Circuit Rule 28(a)(1)(C).

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1, amici certify as follows:

The Reporters Committee for Freedom of the Press is an unincorporated association of reporters and editors with no parent corporation and no stock.

The Atlantic Monthly Group LLC is a privately-held media company, owned by Emerson Collective and Atlantic Media, Inc. No publicly held corporation owns 10% or more of its stock.

Axios Media Inc. is a privately owned company, and no publicly held company owns 10% or more of its stock.

Dow Jones & Company, Inc. ("Dow Jones") is an indirect subsidiary of News Corporation, a publicly held company. Ruby Newco, LLC, an indirect subsidiary of News Corporation and a non-publicly held company, is the direct parent of Dow Jones. News Preferred Holdings, Inc., a subsidiary of News Corporation, is the direct parent of Ruby Newco, LLC. No publicly traded corporation currently owns ten percent or more of the stock of Dow Jones.

First Amendment Coalition is a nonprofit organization with no parent company.  It issues no stock and does not own any of the party's or amicus' stock.

Forbes Media LLC is a privately owned company and no publicly held corporation owns 10% or more of its stock.

The Intercept Media, Inc., publisher of The Intercept, is a non-profit non-stock corporation. It has no parent, subsidiaries, or affiliates.

The Media Institute is a 501(c)(3) non-stock corporation with no parent corporation.

MediaNews Group Inc. is a privately held company.  No publicly-held company owns ten percent or more of its equity interests.

The National Freedom of Information Coalition is a nonprofit organization that has not issued any shares or debt securities to the public, and has no parent companies, subsidiaries, or affiliates that have issued any shares or debt securities to the public.

The National Press Club is a not-for-profit corporation that has no parent company and issues no stock.

National Press Photographers Association is a 501(c)(6) nonprofit organization with no parent company. It issues no stock and does not own any of the party's or amicus' stock.

National Public Radio, Inc. is a privately supported, not-for-profit membership organization that has no parent company and issues no stock.

The New York Times Company is a publicly traded company and has no affiliates or subsidiaries that are publicly owned. No publicly held company owns 10% or more of its stock.

News/Media Alliance represents the newspaper, magazine, and digital media industries, including nearly 2,200 diverse news and magazine publishers in the United States and internationally. It is a nonprofit, non-stock corporation organized under the laws of the commonwealth of Virginia. It has no parent company.

The News Guild – CWA is an unincorporated association. It has no parent and issues no stock.

Online News Association is a not-for-profit organization. It has no parent corporation, and no publicly traded corporation owns 10% or more of its stock.

POLITICO LLC is wholly owned by POLITICO Media Group LLC, which is, in turn, wholly owned by Axel Springer SE, and no publicly held corporation owns ten percent or more of its stock.

Pro Publica, Inc. ("ProPublica") is a Delaware nonprofit corporation that is tax-exempt under section 501(c)(3) of the Internal Revenue Code.  It has no statutory members and no stock.

Radio Television Digital News Association is a nonprofit organization that has no parent company and issues no stock.

Reuters News & Media Inc. is a Delaware corporation whose parent is Thomson Reuters U.S. LLC, a Delaware limited liability company. Reuters News & Media Inc. and Thomson Reuters U.S. LLC are indirect and wholly owned subsidiaries of Thomson Reuters Corporation, a publicly-held corporation, which is traded on the New York Stock Exchange and Toronto Stock Exchange. There are no intermediate parent corporations or subsidiaries of Reuters News & Media Inc. or Thomson Reuters U.S. LLC that are publicly held, and

vi

there are no publicly-held companies that own 10% or more of Reuters News & Media Inc. or Thomson Reuters U.S. LLC shares.

The Society of Environmental Journalists is a 501(c)(3) non-profit educational organization.  It has no parent corporation and issues no stock.

Society of Professional Journalists is a non-stock corporation with no parent company.

Student Press Law Center is a 501(c)(3) not-for-profit corporation that has no parent and issues no stock.

Vox Media, LLC has no parent corporation. NBCUniversal Media, LLC, a publicly held corporation, owns at least 10% of Vox's stock.

WP Company LLC d/b/a The Washington Post is a wholly-owned subsidiary of Nash Holdings LLC, a holding company owned by Jeffrey P. Bezos. WP Company LLC and Nash Holdings LLC are both privately held companies with no securities in the hands of the public.

# <u>TABLE OF CONTENTS</u>

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ................................................................................................i

CORPORATE DISCLOSURE STATEMENT........................................ iii

TABLE OF AUTHORITIES ...................................................... x

STATUTES AND REGULATIONS ......................................... xv

STATEMENT OF IDENTITY, INTEREST, AND AUTHORITY TO FILE.............................................................................. xv

RULE 29(A)(4)(E) CERTIFICATION ......................................xvii

CERTIFICATE REGARDING SEPARATE BRIEFING ....................xviii

INTRODUCTION AND SUMMARY OF ARGUMENT...........................1

ARGUMENT ................................................................6

   I.   The District Court Order imposes an unconstitutional prior restraint that must be vacated. ........................................6

       A.   The Order is a prior restraint and was issued without First Amendment scrutiny. ....................................6

       B.   That the information released could or should have been withheld does not relieve the government from meeting its constitutional burden. ........................11

       C.   Only in the rare "exceptional" case does the First Amendment countenance a prior restraint, and this is not such a case........................................................16

   II.  Allowing clawbacks of records released during public records litigation would disincentivize timely, pre-litigation compliance with FOIA requests....................................19

III.   Agency efforts to restrict dissemination of records released under FOIA are increasing and jeopardize reporting in the public interest. ..................................................................25

CONCLUSION ............................................................31

CERTIFICATE OF COMPLIANCE .......................................32

CERTIFICATE OF SERVICE..............................................33

ADDENDUM:  STATEMENTS OF INTEREST OF INDIVIDUAL AMICI CURIAE ..................................................34

# <u>TABLE OF AUTHORITIES</u>

## Cases

*100Reporters v. U.S. Dep't of State*,
    602 F. Supp. 3d 41 (D.D.C. 2022) ........................................................ 14

*Alexander v. United States*,
    509 U.S. 544 (1993) ................................................... 2, 7, 8, 13

*Bartnicki v. Vopper*,
    532 U.S. 514 (2001) ........................................................ 7

*Carroll v. President & Comm'rs of Princess Anne*,
    393 U.S. 175 (1968) ................................................... 6

*CBS Inc. v. Davis*,
    510 U.S. 1315 (1994) ..................................................... 7

*CBS, Inc. v. U.S. District Court*,
    729 F.2d 1174 (9th Cir. 1984) ........................................ 16

*Cox Broad. Corp. v. Cohn*,
    420 U.S. 469 (1975) ................................................. 19

*EEOC v. Whiting-Turner Contracting Co.*,
    No. 3:21-CV-00753, 2022 WL 3221825 (M.D. Tenn. Aug. 9, 2022) ..... 16

*Fla. Star v. B.J.F.*,
    491 U.S. 524 (1989) ........................................... 7, 12, 13, 18

*Gray Media Grp., Inc. v. W. Va. Dep't of Health & Hum. Res.*,
    No. 22-P-197, 2023 WL 5682352 (W. Va. Cir. Ct. Aug. 28, 2023) ....... 14

*Houchins v. KQED, Inc.*,
    438 U.S. 1 (1978) ................................................... 19

*Hum. Rts. Def. Ctr. v. U.S. Park Police*,
    126 F.4th 708 (D.C. Cir. 2025) ................................. 2, 3, 8, 14, 16

*In re Sealed Case*,
    77 F.4th 815 (D.C. Cir. 2023) .............................................. 6

*Madsen v. Women's Health Ctr., Inc.,*
    512 U.S. 753 (1994) ................................................................ 6

*McGehee v. Casey,*
    718 F.2d 1137 (D.C. Cir. 1983) ................................... 9, 10, 11

*N.Y. Times Co. v. United States,*
    403 U.S. 713 (1971) ..................... 1, 7, 8, 11, 12, 17, 18, 19

*Near v. Minnesota ex rel. Olson,*
    283 U.S. 697 (1931) ............................................. 1, 6, 11, 16

*Neb. Press Ass'n v. Stuart,*
    427 U.S. 539 (1976) .................................... 6, 7, 9, 11, 15, 17

*Okla. Publ'g Co. v. District Court,*
    430 U.S. 308 (1977) .............................................................. 19

*Org. for a Better Austin v. Keefe,*
    402 U.S. 415 (1971) ................................................................ 6

*Rocky Mountain Wild, Inc. v. U.S. Forest Serv.,*
    56 F.4th 913 (10th Cir. 2022) .............................................. 16

*Se. Promotions, Ltd. v. Conrad,*
    420 U.S. 546 (1975) ................................................................ 1

*Sierra Club v. EPA,*
    505 F. Supp. 3d 982 (N.D. Cal. 2020) ................................. 15

*Smith v. Daily Mail Publ'g Co.,*
    443 U.S. 97 (1979) .............................................................. 1, 7

*Snepp v. United States,*
    444 U.S. 507 (1980) .............................................................. 10

*Zaid v. Dep't of Homeland Sec.,*
    No. DKC 22-1602, 2025 WL 2592221 (D. Md. Sept. 8, 2025) ............. 16

**Statutes**

5 U.S.C. § 552(a)(4) ...................................................................... 19

5 U.S.C. § 552(a)(6) ......................................................................... 19

5 U.S.C. § 552(b)(1) ......................................................................... 12

Fla. Stat. § 119.07(3)(h) (1983) ..................................................... 13

**Other Authorities**

Associated Press, *122 levees across the nation at risk of failing*,
    NBC News (Feb. 1, 2007),
    https://www.nbcnews.com/id/wbna16932664 ...................................... 24

Ben Gittleson, *An inside look at how Donald Trump's name came
    to appear on stimulus checks*, ABC News (May 7, 2021),
    https://abcnews.go.com/Politics/inside-donald-trumps-stimulus-
    checks/story?id=77534116 .................................................... 25

Brody Mullins et al., *Inside the U.S. Antitrust Probe of Google*,
    Wall St. J. (Mar. 19, 2015),
    https://www.wsj.com/articles/inside-the-u-s-antitrust-probe-of-
    google-1426793274 ............................................................ 30

*Ensuring Transparency Through the Freedom of Information Act:
    Hearing Before the H. Comm. on Oversight & Gov't Reform*,
    114th Cong. 16 (June 2, 2015),
    https://oversight.house.gov/wp-content/uploads/
    2015/06/2015-06-02-FC-Ensuring-Transparency-Through-the-
    FOIA.pdf ...................................................................... 21

*FOIA Backlogs Hinder Government Transparency and
    Accountability*, U.S. Gov't Accountability Off. (Mar. 14, 2024),
    https://www.gao.gov/blog/foia-backlogs-hinder-government-
    transparency-and-accountability .............................................. 20

*FOIA Suits Rise Because Agencies Don't Respond Even As
    Requesters Wait Longer To File Suit*,
    The FOIA Project (Dec. 15, 2019),
    https://foiaproject.org/2019/12/15/foia-suits-rise-because-
    agencies-dont-respond-even-as-requesters-wait-longer-to-file-
    suit/ ........................................................................ 22

Juliet Eilperin, *Trump administration officials dismissed benefits of national monuments*, Wash. Post (July 23, 2018), https://wapo.st/3WPDInF .................................................................... 29

Lizette Chapman & Jason Leopold, *The Big Names That Got Backstop for Billions in Uninsured SVB Deposits*, Bloomberg News (June 23, 2023), https://www.bloomberg.com/news/articles/2023-06-23/fdic-insured-billions-in-deposits-for-sequoia-other-top-svb-customers ......................................................................... 26

Margaret Kwoka, *Returning FOIA to the Press*, Knight First Amend. Inst. (June 11, 2024), https://knightcolumbia.org/blog/returning-foia-to-the-press ............. 20

Matt Egan, *FDIC accidentally reveals details about Silicon Valley Bank's biggest customers*, CNN (June 23, 2023), https://www.cnn.com/2023/06/23/investing/svb-bank-fdic/index.html ................................................................... 27

Melville B. Nimmer, Nimmer on Freedom of Speech (1984) ................... 8

Nate Jones, *Document Friday: Someone from the Department of State thought that punishing Pakistan for "providing refuge and assistance" to Osama bin Laden was "a bunch of crap!!"*, Unredacted (May 13, 2011), https://unredacted.com/2011/05/13/document-friday-the-department-of-state-was-hiding-this/ ................................ 24

Off. of Info. Pol'y, U.S. Dep't of Just., 2024 Annual FOIA Report Summary (2025), https://www.justice.gov/oip/media/1398111/dl?inline ................... 20

Off. of Info. Pol'y, U.S. Dep't of Just., Fiscal Year 2024 Annual Freedom of Information Act Report (2025), https://www.justice.gov/oip/media/1392121/dl?inline ......................... 21

Patty Reinert, *NASA has lost $34 million in property since '97*,
    Houston Chron. (Feb. 27, 2004),
    https://www.chron.com/news/nation-world/article/NASA-has-
    lost-34-million-in-property-since-97-1508285.php .............................. 24

Rachel Rabkin Peachman, *While They Were Sleeping*,
    Consumer Reports (Dec. 30, 2019),
    https://www.consumerreports.org/child-safety/while-they-were-
    sleeping/ ................................................................................................ 27

Ryan Felton, *A Tiny Lab Found Benzene in Sunscreen and Hand
    Sanitizer. Why Did the FDA Go After It?*,
    Consumer Reports (Mar. 31, 2022),
    https://www.consumerreports.org/product-safety/valisure-found-
    benzene-in-products-fda-inspected-lab-a7872407447/ ........................ 28

*The Foilies 2023*, Elec. Frontier Found. (Mar. 12, 2023),
    https://www.eff.org/deeplinks/2023/03/foilies-2023#ice ..................... 29

*When FOIA Goes to Court: 20 Years of Freedom of Information Act
    Litigation by News Organizations and Reporters*,
    The FOIA Project (Jan. 13, 2021),
    https://foiaproject.org/2021/01/13/foialitigators2020/ .......................... 22

## STATUTES AND REGULATIONS

All applicable statutes are contained in the brief for Plaintiffs-Appellants.

## STATEMENT OF IDENTITY, INTEREST, AND AUTHORITY TO FILE

Amici curiae are the Reporters Committee for Freedom of the Press (the "Reporters Committee"), The Atlantic Monthly Group LLC, Axios Media Inc., Dow Jones & Company, Inc. (*The Wall Street Journal*), First Amendment Coalition, Forbes Media LLC, The Intercept Media, Inc., The Media Institute, MediaNews Group Inc., National Freedom of Information Coalition, The National Press Club, National Press Photographers Association, National Public Radio, Inc., The New York Times Company, News/Media Alliance, The NewsGuild - CWA, Online News Association, POLITICO LLC, Pro Publica, Inc., Radio Television Digital News Association, Reuters News & Media Inc., Society of Environmental Journalists, Society of Professional Journalists, Student Press Law Center, Vox Media, LLC, and The Washington Post (together, "amici").

Amici are news and media organizations that rely on the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA" or the "Act"), including to

gather information to report on the work of government and other matters of public interest.  As a result, amici are particularly likely to be the targets of government demands to destroy or return documents obtained from an agency in response to a FOIA request or during the pendency of FOIA litigation.  Amici therefore have a strong interest in the outcome of this appeal and, specifically, in ensuring that journalists and news organizations can vindicate their statutory right of access to agency records without fear that an agency will be able to obtain—as the government did here—an unconstitutional prior restraint prohibiting them from disseminating agency records.

Lead amicus the Reporters Committee is an unincorporated nonprofit association founded by journalists and media lawyers in 1970, when the nation's press faced an unprecedented wave of government subpoenas forcing reporters to name confidential sources.  Today, its attorneys provide pro bono legal representation, amicus curiae support, and other legal resources to protect First Amendment freedoms and the newsgathering rights of journalists.  It routinely files as amicus in this Court on issues involving restraints on speech as well as in public records litigation.  *See, e.g.*, Br. of Amici Curiae Reporters Comm. for

Freedom of the Press & Other News and Media Orgs., *Hum. Rts. Def. Ctr. v. U.S. Park Police*, 126 F.4th 708 (D.C. Cir. 2025) (No. 23-5236), 2024 WL 983949.[1]

Plaintiffs-Appellants Gun Owners of America, Inc. and Gun Owners Foundation ("Appellants") and Defendant-Appellee Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") consent to the filing of this brief, and it is thus filed pursuant to Federal Rule of Appellate Procedure 29(a)(2) and Circuit Rule 29(b).

## RULE 29(a)(4)(E) CERTIFICATION

Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), amici certify that no party's counsel authored this brief in whole or in part; no party or party's counsel contributed money that was intended to fund the preparation or submission of the brief; and no person—other than amici, their members, or counsel—contributed money that was intended to fund the preparation or submission of the brief.

---

[1]    Individual statements of interest of all amici are set forth in the attached Addendum.

xvii

## CERTIFICATE REGARDING SEPARATE BRIEFING

Pursuant to Circuit Rule 29(d), amici certify that this brief is necessary to provide the perspective of news and media organizations that frequently rely on FOIA to gather information and report news and information to the public.

Amici have a strong interest in ensuring that, even in cases not involving media plaintiffs, courts do not enter orders prohibiting the dissemination of information, absent the rare exceptional case in which restraints have been found compatible with the Constitution. Such precedent would adversely affect the press's ability to report and to secure agency records pursuant to FOIA.

The Reporters Committee understands there may be another amicus brief filed in this appeal that, on information and belief, will address the District Court's invocation of equitable authority as a basis for restraining dissemination of the records received.

## INTRODUCTION AND SUMMARY OF ARGUMENT

A "chief purpose" of the First Amendment to the Constitution was "to prevent" the "previous restraints upon publications as had been practiced by other governments." *Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 713–14 (1931) (citation omitted). This country's "distaste for censorship—reflecting the natural distaste of a free people—is deep-written in our law." *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553 (1975). Accordingly, any prior restraint on speech or publication "bear[s] a heavy presumption against its constitutional validity," *N.Y. Times Co. v. United States*, 403 U.S. 713, 714 (1971) (per curiam) (citation omitted), and is subject to "the most exacting scrutiny," *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 102 (1979). Even when faced with claims of harm to national security, the Supreme Court has rejected a prior restraint against publication by the press. *N.Y. Times Co.*, 403 U.S. at 714; *see also id.* at 730–31 (White, J., concurring) (noting the "extraordinary protection against prior restraints enjoyed by the press under our constitutional system").

The District Court order at issue in this appeal (the "Order") requires Appellants not to "disseminate, disclose, or use for any

purpose" information in records provided to them by an agency of the

federal government in response to a request under FOIA. App.071; *see*

*also* App.042–070 (District Court's Memorandum Opinion). The Order

is a "classic example[]" of a prior restraint. *Alexander v. United States*,

509 U.S. 544, 550 (1993).[2]

Earlier this year, in *Human Rights Defense Center v. U.S. Park*

*Police*, this Court addressed the validity of an order restraining the

publication or other dissemination of information obtained lawfully

under FOIA, whether the government should have released the

information or not. 126 F.4th 708 (D.C. Cir. 2025) (hereinafter

"*HRDC*").[3] The Court held that a district court's implied or inherent

judicial power under Article III did not include the authority to order

such a clawback of the records. *Id.* at 712. It also recognized that a

court cannot "enabl[e] the government to put the proverbial cat back in

---

[2]    Amici write to emphasize the legal error and practical harm in the issuance of a prior restraint in FOIA litigation and take no position on the application of statutory exemptions to the records here, or on other issues in the litigation not directly addressed herein.

[3]    The Reporters Committee and over two dozen news and media organizations filed an amici curiae brief concerning the prior restraint in the district court's clawback order in that case. Br. of Amici Curiae Reporters Comm., *supra*, 2024 WL 983949.

the bag." *Id.* at 718.  Here, the District Court instead invokes equitable

powers to achieve the same result.  App.050.  But judicial power is

constrained by the Constitution and cannot be wielded inconsistent

with it, and the District Court erred in entering the injunction without

carefully applying the controlling law—the First Amendment's heavy

presumption against the validity of a prior restraint.

That Order carries grave ramifications for FOIA litigants, and for

the news media in particular.  As lengthy agency delays in responding

to FOIA requests have become the norm, journalists and news

organizations are increasingly forced to resort to litigation to compel

agencies to respond to FOIA requests in the first instance.  If a news

organization can be subject to what would otherwise be an

unconstitutional court order restraining its publication of information

lawfully obtained under FOIA merely because an agency processed and

released records in response to a FOIA request after a complaint was

filed, the press will be deterred from seeking to vindicate its statutory

right to access agency records in court.  And agencies, for their part, will

be encouraged both to avoid responding to FOIA requests outside of

litigation and to routinely demand that district courts restrain the

publication of information released under the Act that the government later decides it would have preferred to have withheld. It contravenes the First Amendment as well as the purpose and structure of the Act to subject the press to unconstitutional prior restraints in the FOIA context that the government could not otherwise obtain.

The circumstances under which the government has attempted to enjoin a publisher from reporting on records released to it under the Act—both within and outside the litigation context—are a far cry from those the Supreme Court has indicated might justify a prior restraint. As detailed herein, federal agencies have demanded that requesters destroy or return records on matters ranging from the embarrassing (records reflecting oil lobbyists scheduling drinks with government officials) to the deadly serious (records identifying companies that manufactured infant "sleeper" products linked to dozens of deaths).

Amici urge this Court to make clear that government requests for court orders like the one entered by the District Court begin with a presumption against their constitutional validity and are subject to exacting scrutiny. The First Amendment bars prior restraints in all but the most exceptional situations, a burden that the government neither

4

carried nor was even asked to carry.  Amici therefore urge the Court to vacate that portion of the District Court's Order imposing a prior restraint.

## ARGUMENT

**I.    The District Court Order imposes an unconstitutional prior restraint that must be vacated.**

### A.    The Order is a prior restraint and was issued without First Amendment scrutiny.

Prior restraints are "the essence of censorship." *Near*, 283 U.S. at 713. They have long been recognized to be "the most serious and the least tolerable infringement on First Amendment rights," with the danger being "particularly great when the prior restraint falls upon the communication of news and commentary on current events." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976); *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 797 (1994) (Scalia, J., concurring in part and dissenting in part) (describing prior restraints as posing the "greatest threat to First Amendment values"). "Any prior restraint on expression," including those imposed upon people and organizations other than traditional media, "comes . . . with a 'heavy presumption against its constitutional validity.'" *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971) (quoting *Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 181 (1968)); *accord In re Sealed Case*, 77 F.4th 815, 829–30 (D.C. Cir. 2023) (prior restraints are "presumptively unconstitutional").

6

The Supreme Court consistently has recognized that the First Amendment bars courts from enjoining, punishing, or otherwise restricting the press's publication of truthful information of public significance that has been lawfully obtained.  Specifically, it has held found that the First Amendment protects the right to publish classified information, *see N.Y. Times Co.*, 403 U.S. at 714, the name of a victim of a sexual offense that was inadvertently disclosed by a government agency, *Fla. Star v. B.J.F.*, 491 U.S. 524, 538 (1989), information originally obtained by a source using unlawful means, *Bartnicki v. Vopper*, 532 U.S. 514, 535 (2001), the names of juveniles where publication has been criminalized by statute, *Daily Mail Publ'g Co.*, 443 U.S. at 106, information that might result in "significant economic harm," *CBS Inc. v. Davis*, 510 U.S. 1315, 1318 (1994) (Blackmun, J., in chambers), and information implicating competing constitutional rights, *Neb. Press Ass'n*, 427 U.S. at 570.  And while it has made clear the threat to First Amendment freedoms posed by post-publication punishment, *see Fla. Star*, 491 U.S. 524, the Supreme Court has applied the most stringent review to prior restraints, *Alexander*, 509 U.S. at 554

("[T]he First Amendment [provides] greater protection from prior restraints than from subsequent punishments[.]").

The District Court's Order is a "classic example[]" of a prior restraint: a "judicial order[] forbidding certain communications . . . issued in advance of the time that such communications are to occur." *Id.* at 550 (emphasis omitted) (quoting Melville B. Nimmer, Nimmer on Freedom of Speech § 4.03 (1984)). Appellants lawfully obtained the information subject to the order; ATF disclosed it in response to a FOIA request. *See* App.042. Thereafter, at ATF's request, the District Court ordered Appellants not to "disseminate, disclose, or use for any purpose those [inadvertently disclosed] portions of the records." App.071. In so doing, it imposed a permanent, prior restraint on Appellants' speech.

Had ATF inadvertently disclosed records under FOIA, but outside of the context of litigation and then sought to enjoin reporting on or dissemination of the records, there would be no question the government would have had to overcome the "heavy presumption against [the] constitutional validity" of a prior restraint. *N.Y. Times Co.*, 403 U.S. at 714 (citation omitted). ATF fails, particularly in light of the reasoning of *HRDC*, to explain why the filing of a FOIA complaint

8

permits it to ignore its burden, nor is there any legal or policy rationale that would support such a notion. The First Amendment's near-absolute protections against prior restraints apply to records obtained under FOIA regardless of whether litigation has been initiated over those records.

ATF has not sustained its burden to justify the prior restraint, *Neb. Press Ass'n*, 427 U.S. at 558, nor did it attempt to. Instead, it argued below that its requested injunction was "not a restraint on Plaintiffs' freedom of speech but rather a mechanism to enforce this Court's judgment regarding the scope of FOIA's exemption[s.]" Reply in Supp. of Def.'s Mot. for Summ. J., ECF No. 34, at 14.

The District Court accepted this sidestep of the First Amendment with little analysis of such a weighty issue. In doing so, it cited *McGehee v. Casey*, 718 F.2d 1137 (D.C. Cir. 1983), App.070, but that case is wholly inapposite. *McGehee* concerned a former CIA employee who sought to publish an article with examples of CIA disinformation programs. 718 F.2d at 1139. Pursuant to agreements he signed as a condition of his employment with the agency and security clearance, committing not to divulge classified information, McGehee submitted

9

his article to the government for prepublication review.  *Id*. at 1139–40.
The CIA determined that portions of the article contained secret
information that could cause "serious damage to the national security"
and required McGehee to publish it without those portions, after which
McGehee sued to challenge the constitutionality of the CIA's
classification and censorship scheme.  *Id*.  The Court rejected the
challenge to that scheme, by which McGehee had contractually agreed
to abide.

*McGehee* does not stand for the proposition that a judicially
ordered clawback of records released to a FOIA requester falls outside
First Amendment scrutiny.  In fact, *dicta* from the opinion suggests
precisely the opposite.  Specifically, the Court described its ruling as
"merely uphold[ing] the CIA secrecy agreement and determin[ing] that
the CIA properly classified the deleted items."  *Id.* at 1147 n.22.  It went
on to explain that the "CIA has not sought an injunction against
publication of the censored items."  *Id.* (citing *Snepp v. United States*,
444 U.S. 507, 513 n.8 (1980) (distinguishing injunctive proceedings from
review of prepublication clearance decisions)).  This was relevant
because if the CIA had sought "judicial action to restrain publication, it

10

would bear a much heavier burden," guided by the Supreme Court's admonition that "'the chief purpose of [the first amendment's] guaranty [is] to prevent previous restraints upon publication.'" *Id.* (quoting *Near*, 283 U.S. at 713).  Put simply, whether "citizens have no first amendment right of access to traditionally nonpublic government information," as the District Court framed it, App.070 (quoting *McGehee*, 718 F.2d at 1147), is not a question posed in this case. Instead, the issue is whether government information lawfully obtained by a member of the public can be clawed back or restrained through the courts.  *McGehee* does not resolve that question, but to the extent it offers guidance, it supports Appellants here.

**B.    That the information released could or should have been withheld does not relieve the government from meeting its constitutional burden.**

Even if the information subject to the Order could have been withheld under exemptions to FOIA, that does not relieve ATF of its First Amendment burden to justify its requested prior restraint on the dissemination or publication of that information once the government has disclosed it.  *Neb. Press Ass'n*, 427 U.S. at 558.

The Pentagon Papers were classified, *N.Y. Times Co.*, 403 U.S. at

11

714, and could have been withheld under Exemption 1 if requested under FOIA. *See* 5 U.S.C. § 552(b)(1). But the mere fact that they were subject to a potential Exemption 1 denial did not relieve the government of its obligation to provide adequate "justification for the imposition of" an order restraining their publication by *The New York Times* and *The Washington Post*. *N.Y. Times Co.*, 403 U.S. at 714 (citation omitted). Simply put, that the Pentagon Papers were classified and met the criteria for a FOIA exemption was an insufficient basis under the First Amendment to justify a prior restraint. *See id.* (rejecting prior restraints on publication of material regarding the history of U.S. military involvement in Vietnam by *The New York Times* and *The Washington Post* despite exemptions and government assertions that disclosure would imperil national security).

The Supreme Court's decision in *Florida Star* is also instructive. There, a Florida sheriff's department inadvertently placed a report containing the name of a victim of a sexual offense in its pressroom, where it was copied by a reporter. 491 U.S. at 527. The victim's name was subsequently included in a news article and the victim sued both the sheriff's department and the newspaper under Florida law. *Id.* at

527–28.  There was no dispute that the name of the victim was exempt from disclosure under Florida's public records law, and thus would not have been required to be disclosed by the sheriff's department in response to a public records request.  *Id.* at 536 (citing Fla. Stat. § 119.07(3)(h) (1983)).  Moreover, Florida statutory law prohibited publication of the victim's name, *id.* at 526–28.  Yet because the report revealing the victim's name was placed in the pressroom by the sheriff's department (inadvertently or not), the Supreme Court held that the newspaper could not be held liable for publishing it because the name was "truthful information" that the newspaper "lawfully obtained."  *Id.* at 541.

*Florida Star* makes clear that the First Amendment prohibits punishing a news organization for publishing truthful information it lawfully obtained from the government, even if the government provided that information by mistake and was required to withhold it pursuant to statute.  And if post-publication punishment cannot be imposed in this circumstance consistent with the First Amendment, then the more demanding standard applicable to prior restraints *a fortiori* cannot be satisfied.  *See Alexander*, 509 U.S. at 554.

In rejecting government requests for prior restraints like the one imposed by the District Court below, courts have correctly recognized that whether information is subject to a FOIA exemption does not alter the necessary constitutional analysis.  Before the decision in *HRDC*, one district court rejected a request made by the State Department in a FOIA case "to take the extraordinary step of ordering a news organization and a journalist to return materials to a government agency, which they obtained through no unlawful or improper action." *100Reporters v. U.S. Dep't of State*, 602 F. Supp. 3d 41, 84 (D.D.C. 2022).  At issue were names disclosed to a news organization and journalist in the context of FOIA litigation that the agency later claimed could be withheld under Exemptions 6, 7(C), and 7(F).  *See id*. In denying the agency its requested prior restraint, the district court noted that the agency had failed to "identify any authority that the Court has to order Plaintiffs" to return inadvertently produced agency documents, or to give "serious treatment" to the "great importance" of the First Amendment issues implicated by that request.  *Id.*[4]

---

[4]     *See also Gray Media Grp., Inc. v. W. Va. Dep't of Health & Hum. Res.*, No. 22-P-197, 2023 WL 5682352, at *3 (W. Va. Cir. Ct. Aug. 28, 2023) (applying "binding precedent" to hold that under the First

The Northern District of California likewise declined the Environmental Protection Agency's request for a court order requiring the Sierra Club to destroy certain information the agency argued it had inadvertently released in response to a FOIA request and could have properly withheld under Exemption 6. *See Sierra Club v. EPA*, 505 F. Supp. 3d 982, 984 (N.D. Cal. 2020). At issue were the names and email addresses of petroleum industry lobbyists that were included in emails exchanged between those lobbyists, agency employees, and a White House official about "plans to meet for drinks." *Id.* The district court rejected the government's request, noting that "mistakes by litigants have consequences" and refusing to "restrain Sierra Club employees' speech in the absence of any showing that EPA could meet its heavy burden to obtain such an order." *Id.* at 991–92 (citing *Neb. Press Ass'n*, 427 U.S. at 559).

Judicial orders directing the return or destruction of inadvertently produced agency records have generally ignored or failed to grapple

---

Amendment, once the government "sent the unredacted" public record to the news organization's counsel, the news organization "had a First Amendment right to publish that information absent a 'state interest of the highest order'" (citation omitted)).

seriously with the First Amendment question and instead relied on a

purported inherent authority to issue relief as a gap-filling measure—a

rationale the *HRDC* court expressly rejected. *Compare* 126 F.4th at

719, *with Rocky Mountain Wild, Inc. v. U.S. Forest Serv.*, 56 F.4th 913,

930 (10th Cir. 2022), *and EEOC v. Whiting-Turner Contracting Co.*, No.

3:21-CV-00753, 2022 WL 3221825, at *2 (M.D. Tenn. Aug. 9, 2022).[5]

### C. Only in the rare "exceptional" case does the First Amendment countenance a prior restraint, and this is not such a case.

Courts have repeatedly affirmed that the presumption against

prior restraints is overcome only in the "exceptional case[]." *Near*, 283

U.S. at 716; *see also CBS, Inc. v. U.S. District Court*, 729 F.2d 1174,

1183 (9th Cir. 1984) (stating that "prior restraints, if permissible at all,

are permissible only in the most extraordinary of circumstances"). The

Supreme Court has indicated, for example, that restricting the

publication of "sailing dates of transports or the number and location of

troops" during wartime might satisfy the applicable constitutional

standard. *Near*, 283 U.S. at 716. Theoretical harms do not suffice. *See,*

---

[5]    *See also Zaid v. Dep't of Homeland Sec.*, No. DKC 22-1602, 2025
WL 2592221, at *1 n.4 (D. Md. Sept. 8, 2025) (showing DHS withdrawal
of motion to claw back records after *HRDC* decision issued).

*e.g.*, *Neb. Press Ass'n*, 427 U.S. at 593–94 (envisioning a restraint only for the kind of information that "will surely result in direct, immediate, and irreparable damage to our Nation or its people" (citation omitted)); *N.Y. Times Co.*, 403 U.S. at 726–27 ("[O]nly governmental allegation and proof that publication must inevitably, directly, and immediately cause the occurrence of an event kindred to imperiling the safety of a transport already at sea can support even the issuance of an interim restraining order." (Brennan, J., concurring)).  Nor will "justifi[cations] [based] on an ad hoc balancing approach."  *Neb. Press Ass'n*, 427 U.S. at 592.  Rather, "even within the sole possible exception to the prohibition against prior restraints on publication of constitutionally protected materials, the obstacles to issuance of such an injunction are formidable" because the exception is "to be construed very, very narrowly."  *Id.* at 593–94.

Amici readily acknowledge that the constitutional standard applies in the context of information mistakenly disclosed in response to a FOIA request.  In other words, the constitutional analysis is the same—no less and no more—with respect to the inadvertent production of agency records.  Thus, if the Department of Defense mistakenly

released wartime troop movements to a FOIA requester, or information that similarly might meet the stringent standard set by the Supreme Court, the government might successfully seek to claw back such documents or enjoin publication.

However, there is no basis in the record to find that the information left unredacted here is the kind that calls out for court-ordered restraint. ATF seeks to claw back certain information contained within its Firearms Tracing System database. App.045. According to the decision below and the parties' filings, this included some identifying information for ATF agents and information regarding investigations and tactics. *Id.* There appears to be no dispute that this particular information is exempt from disclosure, but ATF has not shown that its disclosure is the exceptional case justifying injunction. Notably, other types of confidential, government information not intended to be distributed to the press have not been found "exceptional," even where that information was highly sensitive. *N.Y. Times Co.*, 403 U.S. at 714 (classified military study revealing government secrets and operations during wartime); *Fla. Star*, 491 U.S. 524 (name of a rape victim confidential under state law); *Cox Broad.*

*Corp. v. Cohn*, 420 U.S. 469 (1975) (same); *Okla. Publ'g Co. v. District Court*, 430 U.S. 308 (1977) (per curiam) (name of juvenile criminal defendant confidential under state law). ATF has not shown that this is an "exceptional case" warranting a prior restraint, and the District Court did not take up the issue in any meaningful way. Absent such a finding, the prior restraint, if upheld, "would make a shambles of the First Amendment." *N.Y. Times Co.*, 403 U.S. at 715 (Black, J., concurring).

## II. Allowing clawbacks of records released during public records litigation would disincentivize timely, pre-litigation compliance with FOIA requests.

As the "'eyes and ears' of the public," *Houchins v. KQED, Inc.*, 438 U.S. 1, 8 (1978), the press relies on FOIA as a means to gather information to report on the work of federal agencies. Public records-based reporting is vital to the public interest and furthers the core purposes of the Act, which Congress recognized in enacting provisions specific to the news media. *See, e.g.*, 5 U.S.C. § 552(a)(4)(A)(ii)(II) (limiting fees for news media); *id.* § 552(a)(6)(E)(v) (providing for expedited processing of requests by "person[s] primarily engaged in disseminating information"). Yet despite FOIA's goal of making public

records accessible, delays in agency responses have become endemic.
*See FOIA Backlogs Hinder Government Transparency and Accountability*, U.S. Gov't Accountability Off. (Mar. 14, 2024), https://www.gao.gov/blog/foia-backlogs-hinder-government-transparency-and-accountability (acknowledging "perennial problem" of processing request backlogs, which in 2022 "surpassed 200,000 requests [government-wide] for the first time"); Off. of Info. Pol'y, U.S. Dep't of Just., 2024 Annual FOIA Report Summary 11 (2025), https://www.justice.gov/oip/media/1398111/dl?inline (documenting rise of backlogged requests, including 33% increase between 2023-24 and 34.9% increase between 2021-22).

As one report summarized, "[e]ven for those requests designated as being on the 'simple' rather than the 'complex' track, government-wide average processing times in the last reported year were more than twice the statutory deadline, and some agencies' averages far exceeded that."  Margaret Kwoka, *Returning FOIA to the Press*, Knight First Amend. Inst. (June 11, 2024), https://tinyurl.com/8e3snmm3 (citation omitted)).  ATF, for example, averaged more than 685 days to process its "complex" FOIA requests in fiscal year 2024.  Off. of Info. Pol'y, U.S.

Dep't of Just., Fiscal Year 2024 Annual Freedom of Information Act Report 42 (2025), https://www.justice.gov/oip/media/1392121/dl?inline. The processing delays are especially harmful to reporters, who are often requesting records with contemporaneous news value.

As a result of extreme agency delay, journalists and news organizations must increasingly file FOIA lawsuits because litigation is sometimes the only viable mechanism to compel an agency to respond to a request in any reasonable timeframe.  As a Deputy General Counsel for the New York Times Company told a Congressional committee in 2015:

> Last year, I filed eight FOIA lawsuits on behalf of the Times.  Much of that litigation was driven not by actual disagreement about legal issues but in response to unacceptable delay by agencies.  In other words, we find ourselves compelled to litigate simply to prompt agencies to act upon request.

*Ensuring Transparency Through the Freedom of Information Act: Hearing Before the H. Comm. on Oversight & Gov't Reform*, 114th Cong. 16 (June 2, 2015), https://oversight.house.gov/wp-content/uploads/2015/06/2015-06-02-FC-Ensuring-Transparency-Through-the-FOIA.pdf (statement of David E. McCraw).  Agency delay as a main driver of

FOIA litigation is borne out by studies examining recent FOIA case data. One study showed that most of the increase in FOIA litigation between 2015 and 2019 was due to agencies' failure to issue timely determinations. *See FOIA Suits Rise Because Agencies Don't Respond Even As Requesters Wait Longer To File Suit*, The FOIA Project (Dec. 15, 2019), https://tinyurl.com/4kdderh7; *see also When FOIA Goes to Court*, The FOIA Project (Jan. 13, 2021), https://tinyurl.com/ybhy3fha (finding that more news media FOIA lawsuits were brought between 2017 and 2020, as response time grew, than in 15-year period between 2001 and 2016).

That journalists and news organizations must increasingly turn to litigation to prompt agencies to search for and process requested records underlines the threat posed to the press by the District Court's prior restraint in this case. Allowing courts to enjoin publication of records after a complaint is filed—a restraint that would never have been countenanced had the records been released prior to litigation, *see supra* Section I.A—would further disincentivize timely agency compliance with FOIA. Under the District Court's reasoning that it has "equitable authority" to impose a prior restraint on the parties before it, App.050,

a journalist or news organization requester may be subjected to what would otherwise be unconstitutional prior restraint merely by filing a FOIA complaint to compel an agency response.  Not only is that result unmoored from the Constitution, but it also creates perverse incentives for requesters and government agencies alike.

On the one hand, journalists and news organizations may be dissuaded from pursuing important accountability journalism in the public interest by the prospect of being restrained by court order from publishing information the government released (inadvertently or not) under FOIA and that it later decides should have been withheld.  As described *infra*, agencies are increasingly demanding that reporters and news organizations destroy records they released in response to FOIA requests; faced with the potential of such demands resulting in court orders limiting what information they can publish, news media requesters may decline to pursue litigation.  Dissuading use and enforcement of the Act by the press is squarely at odds with congressional intent.

On the other hand, government agencies would be incentivized to wait for a lawsuit to be filed before releasing any records in response to

23

a FOIA request, knowing that if records are released after the filing of a

FOIA complaint they will have a powerful tool at their disposal to

"undo" an inadvertent disclosure or a disclosure they determine later

they prefer they had not made.

There are all manner of embarrassing, inconvenient, and

politically damaging records that are released under FOIA that

someone in government might later want to claw back: an email in

which an agency employee calls pending legislation "a bunch of crap,"[6] a

list of levees that are at risk of failing,[7] records showing that millions of

dollars of federal property has gone missing,[8] or records showing the

scramble to add a government official's name to stimulus checks.[9]  The

---

[6]     Nate Jones, *Document Friday: Someone from the Department of State thought that punishing Pakistan for "providing refuge and assistance" to Osama bin Laden was "a bunch of crap!!"*, Unredacted (May 13, 2011), https://unredacted.com/2011/05/13/document-friday-the-department-of-state-was-hiding-this/.

[7]     Associated Press, *122 levees across the nation at risk of failing*, NBC News (Feb. 1, 2007), https://www.nbcnews.com/id/wbna16932664.

[8]     Patty Reinert, *NASA has lost $34 million in property since '97*, Houston Chron. (Feb. 27, 2004), https://www.chron.com/news/nation-world/article/NASA-has-lost-34-million-in-property-since-97-1508285.php.

[9]     Ben Gittleson, *An inside look at how Donald Trump's name came to appear on stimulus checks*, ABC News (May 7, 2021), https://abcnews.go.com/Politics/inside-donald-trumps-stimulus-checks/story?id=77534116.

24

District Court's prior restraint, if not vacated, will encourage mischief and insert uncertainty into a statutory framework designed to make government transparent to the public.

## III. Agency efforts to restrict dissemination of records released under FOIA are increasing and jeopardize reporting in the public interest.

If agencies can obtain court orders requiring news organizations to destroy or refrain from disseminating information they lawfully obtained from the agency under FOIA by claiming the information was "inadvertently" disclosed and could have been withheld pursuant to a FOIA exemption, agencies will gain a weapon that lies outside both the Act and the First Amendment to stifle the press—a weapon that they have over the last decade shown an unabashed willingness to wield. Specifically, federal agencies have issued concerning demands to journalists and news organizations to restrict the use of records they lawfully obtained under FOIA.

For example, in one high-profile instance two years ago, journalists for Bloomberg News received a clawback demand from the Federal Deposit Insurance Corporation ("FDIC"). *See* Lizette Chapman & Jason Leopold, *The Big Names That Got Backstop for Billions in*

*Uninsured SVB Deposits*, Bloomberg News (June 23, 2023),

https://www.bloomberg.com/news/articles/2023-06-23/fdic-insured-

billions-in-deposits-for-sequoia-other-top-svb-customers.  The demand

sought the return of a record released in response to a FOIA request

about the implosion of Silicon Valley Bank ("SVB")—specifically records

regarding the largest depositors who benefited from the FDIC's

controversial bailout of SVB.  *Id.*  The disclosed record provided

important insight into the scope of the bailout, showing that the FDIC

had secured billions in deposits made by Sequoia Capital and other

large companies, in addition to small startups.  *Id.*  After initially

releasing an unredacted record to Bloomberg News, the FDIC

subsequently demanded that the news organization destroy the record

and cease disseminating it.  *Id.*  Bloomberg News refused, and the

FDIC's demand ended up informing the broader debate about how

much the public was entitled to know about the SVB bailout.  *See, e.g.*,

Matt Egan, *FDIC accidentally reveals details about Silicon Valley

Bank's biggest customers*, CNN (June 23, 2023),

https://www.cnn.com/2023/06/23/investing/svb-bank-fdic/index.html.

This instance of a federal agency demanding the destruction or
return of records released under FOIA is not alone.  In 2019, the
Consumer Product Safety Commission ("CPSC") demanded that
Consumer Reports journalists destroy data they obtained in response to
a FOIA request regarding infant fatalities linked to specific "sleeper"
products.  *See* Rachel Rabkin Peachman, *While They Were Sleeping*,
Consumer Reports (Dec. 30, 2019),
https://www.consumerreports.org/child-safety/while-they-were-
sleeping/.  As recounted by Consumer Reports, "CPSC's lawyers sent
letters to [Consumer Reports] demanding we destroy the data and not
publish anything based on it."  *Id.*  Consumer Reports refused.  Instead,
it published stories about "the vast scope of [infant] deaths, as well as
the brands that had caused them"—identifying those brands for the
first time.  *Id.*  The stories allowed parents to make more informed
purchasing decisions for their babies—and were ultimately followed by
the recall of millions of sleepers on the market.  *Id.*

In 2022, the Food and Drug Administration ("FDA") demanded
that Consumer Reports destroy an investigation report that the FDA
released under FOIA.  *See* Ryan Felton, *A Tiny Lab Found Benzene in*

*Sunscreen and Hand Sanitizer. Why Did the FDA Go After It?*,

Consumer Reports (Mar. 31, 2022),

https://www.consumerreports.org/product-safety/valisure-found-

benzene-in-products-fda-inspected-lab-a7872407447/.  Consumer

Reports declined.  *Id.*  The disclosed report showed the FDA closely

scrutinized a "tiny Connecticut-based laboratory [that] had a string of

successes uncovering serious safety problems in common consumer

products and medications," including the presence of benzene, a

carcinogen, in hand sanitizer.  *Id.*  Consumer Reports's reporting about

the disclosure prompted questions by experts and a member of Congress

about the FDA's investigation priorities.  *Id.*

That same year, Immigration and Customs Enforcement ("ICE")

sent a clawback demand to a veteran investigative reporter for

unredacted documents it released under FOIA pertaining to the

Department of Homeland Security's involvement in the response to

widespread demonstrations following the murder of George Floyd in the

summer of 2020.  *See The Foilies 2023*, Elec. Frontier Found. (Mar. 12,

2023), https://www.eff.org/deeplinks/2023/03/foilies-2023#ice.  The

records illuminated the scope of various DHS components' assistance to

28

local law enforcement around the country during the demonstrations, including the provision of federal personnel, equipment, and surveillance support.  *Id.*  The reporter refused the government's demand to return or destroy the records and instead published them.

In 2018, in response to FOIA requests, the Department of the Interior uploaded unredacted documents to its FOIA reading room that showed that "department officials dismissed some evidence that contradicted the administration's push" to shrink certain national monuments, and sent several journalists a link to the documents.  *See* Juliet Eilperin, *Trump administration officials dismissed benefits of national monuments*, Wash. Post (July 23, 2018), https://wapo.st/3WPDInF.  The following day, the Interior Department removed the documents from its website and demanded that the recipients of the link delete them.  Journalists reported on those documents anyway.  *Id.*

And in another example of the government unsuccessfully seeking to put the genie back in the bottle, the Federal Trade Commission in 2015 demanded that *The Wall Street Journal* return documents relating to its antitrust case against Google that the agency had released in

29

response to a FOIA request.  *See* Brody Mullins et al., *Inside the U.S. Antitrust Probe of Google*, Wall St. J. (Mar. 19, 2015), https://www.wsj.com/articles/inside-the-u-s-antitrust-probe-of-google-1426793274.  The documents showed that key FTC staff had been pointing to evidence of consumer harm since 2012 and had urged aggressive enforcement action against the Internet giant.  The *Journal* reported the story.

These examples occurred outside the litigation context—*i.e.*, the records were released and sought back prior to the filing of a complaint—but equally underline the importance of the issue presented in this appeal.  If the District Court Order restraining the use of documents that Appellants received is not vacated, it will introduce a conflict in the law around prior restraint that will inevitably lead to more improper clawbacks, before and during litigation.  The consequences for reporting and speech would be severe, and the efficacy and purpose of the FOIA statute–transparency and accountability in the affairs of government–would be deeply impaired.

30

## <u>CONCLUSION</u>

For the reasons herein, amici respectfully urge the Court to vacate the District Court's prior restraint.

Dated:  November 13, 2025

Respectfully submitted,

<u>/s/Bruce D. Brown</u>
Bruce D. Brown
   *Counsel of Record for*
   *Amici Curiae*
Lisa Zycherman
Mara Gassmann
Adam A. Marshall
Rachel Seller*
REPORTERS COMMITTEE FOR
   FREEDOM OF THE PRESS
1156 15th St. NW, Ste. 1020
Washington, DC 20005
bruce.brown@rcfp.org
(202) 795-9300
   **Of counsel*

*Counsel for Amici Curiae*

31

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7) because the brief contains 6,225 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Circuit Rule 32(e)(1).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Dated:  November 13, 2025
            Washington, D.C.                 */s/ Bruce D. Brown*
                                                          Bruce D. Brown

                                                          *Counsel of Record for Amici Curiae*

32

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 13, 2025, I electronically filed the foregoing brief with the United States Court of Appeals for the District of Columbia Circuit using the CM/ECF system.  All parties are registered CM/ECF users, and service upon them will be accomplished by the appellate CM/ECF system.

*/s/ Bruce D. Brown*
Bruce D. Brown
*Counsel of Record for*
*Amici Curiae*

Dated:  November 13, 2025

## ADDENDUM:  STATEMENTS OF INTEREST OF INDIVIDUAL AMICI CURIAE

The Atlantic Monthly Group LLC is the publisher of The Atlantic and TheAtlantic.com.  Founded in 1857 by Oliver Wendell Holmes, Ralph Waldo Emerson, Henry Wadsworth Longfellow and others, The Atlantic continues its 160-year tradition of publishing award-winning journalism that challenges assumptions and pursues truth, covering national and international affairs, politics and public policy, business, culture, technology and related areas.

Axios Media Inc. is a digital media company with a mission to deliver news in an efficient format that helps professionals get smarter faster across an array of topics, including politics, science, business, health, tech, media, and local news.

Dow Jones & Company is the world's leading provider of news and business information. Through The Wall Street Journal, Barron's, MarketWatch, Dow Jones Newswires, and its other publications, Dow Jones has produced journalism of unrivaled quality for more than 130 years and today has one of the world's largest newsgathering operations. Dow Jones's professional information services, including the Factiva news database and Dow Jones Risk & Compliance, ensure that

businesses worldwide have the data and facts they need to make intelligent decisions. Dow Jones is a News Corp company.

First Amendment Coalition (FAC) is a nonprofit public interest organization dedicated to defending free speech, free press and open government rights in order to make government, at all levels, more accountable to the people. The Coalition's mission assumes that government transparency and an informed electorate are essential to a self-governing democracy. FAC advances this purpose by working to improve governmental compliance with state and federal open government laws. FAC's activities include free legal consultations on access to public records and First Amendment issues, educational programs, legislative oversight of California bills affecting access to government records and free speech, and public advocacy, including extensive litigation and appellate work. FAC's members are news organizations, law firms, libraries, civic organizations, academics, freelance journalists, bloggers, activists, and ordinary citizens.

Forbes Media LLC is the publisher of Forbes Magazine as well as an array of investment newsletters and the leading business news

website, Forbes.com. Forbes has been covering American and global business since 1917.

The Intercept Media, Inc. is a non-profit digital media venture committed to rigorous, adversarial journalism in the public interest.

The Media Institute is a nonprofit foundation specializing in communications policy issues founded in 1979. The Media Institute exists to foster three goals: freedom of speech, a competitive media and communications industry, and excellence in journalism. Its program agenda encompasses all sectors of the media, from print and broadcast outlets to cable, satellite, and online services.

MediaNews Group is a leader in local, multi-platform news and information, distinguished by its award-winning original content and high quality local media. It is one of the largest news organizations in the United States, with print and online publications across the country.

The National Freedom of Information Coalition is a national nonprofit, nonpartisan organization of state and regional affiliates representing 45 states and the District of Columbia. Through its programs and services and national member network, NFOIC promotes

press freedom, litigation and legislative and administrative reforms that ensure open, transparent and accessible state and local governments and public institutions.

The National Press Club is the world's leading professional organization for journalists. Founded in 1908, the Club has 3,100 members representing most major news organizations. The Club defends a free press worldwide. Each year, the Club holds over 2,000 events, including news conferences, luncheons and panels, and more than 250,000 guests come through its doors.

The National Press Photographers Association ("NPPA") is a 501(c)(6) non-profit organization dedicated to the advancement of visual journalism in its creation, editing and distribution.  NPPA's members include television and still photographers, editors, students and representatives of businesses that serve the visual journalism industry. Since its founding in 1946, the NPPA has vigorously promoted the constitutional rights of journalists as well as freedom of the press in all its forms, especially as it relates to visual journalism. The submission of this brief was duly authorized by Mickey H. Osterreicher, its General Counsel.

National Public Radio, Inc. (NPR) is a non-profit multimedia organization and the leading provider of non-commercial news, information, and entertainment programming to the American public. NPR's fact-based, independent journalism helps the public stay on top of breaking news, follow the most critical stories of the day, and track complex issues over the long term. NPR reaches approximately 60 million people each week on broadcast radio, podcasts, NPR apps, NPR.org, and YouTube video content. NPR distributes its radio broadcasts through more than 1,000 non-commercial, independently operated radio stations, licensed to more than 260 NPR members and numerous other NPR-affiliated entities.

The New York Times Company is the publisher of The New York Times and operates the news website nytimes.com.

The News/Media Alliance represents over 2,200 diverse publishers in the U.S. and internationally, ranging from the largest news and magazine publishers to hyperlocal newspapers, and from digital-only outlets to papers who have printed news since before the Constitutional Convention. Its membership creates quality journalistic content that accounts for nearly 90 percent of daily newspaper circulation in the

U.S., over 500 individual magazine brands, and dozens of digital-only properties. The Alliance diligently advocates for newspapers, magazine, and digital publishers, on issues that affect them today.

The News Guild-CWA is a labor organization representing more than 25,000 employees of newspapers, newsmagazines, news services and other media enterprises. Guild representation comprises, in the main, the editorial and online departments of these media outlets. The News Guild is a sector of the Communications Workers of America. CWA is America's largest communications and media union, representing over 500,000 men and women in both private and public sectors.

The Online News Association is the world's largest association of digital journalists. ONA's mission is to inspire innovation and excellence among journalists to better serve the public. Membership includes journalists, technologists, executives, academics and students who produce news for and support digital delivery systems. ONA also hosts the annual Online News Association conference and administers the Online Journalism Awards.

POLITICO is a global news and information company at the intersection of politics and policy. Since its launch in 2007, POLITICO has grown to nearly 300 reporters, editors and producers. It distributes 30,000 copies of its Washington newspaper on each publishing day and attracts an influential global audience of more than 35 million monthly unique visitors across its various platforms.

Pro Publica, Inc. ("ProPublica") is an independent, nonprofit newsroom that produces investigative journalism in the public interest. It has won six Pulitzer Prizes, most recently a 2020 prize for national reporting, the 2019 prize for feature writing, and the 2017 gold medal for public service. ProPublica is supported almost entirely by philanthropy and offers its articles for republication, both through its website, propublica.org, and directly to leading news organizations selected for maximum impact. ProPublica has extensive regional and local operations, including ProPublica Illinois, which began publishing in late 2017 and was honored (along with the Chicago Tribune) as a finalist for the 2018 Pulitzer Prize for Local Reporting, an initiative with the Texas Tribune, which launched in March 2020, and a series of Local Reporting Network partnerships.

Radio Television Digital News Association ("RTDNA") is the world's largest and only professional organization devoted exclusively to electronic journalism. RTDNA is made up of news directors, news associates, educators and students in radio, television, cable and electronic media in more than 30 countries. RTDNA is committed to encouraging excellence in the electronic journalism industry and upholding First Amendment freedoms.

The Reporters Committee for Freedom of the Press is an unincorporated nonprofit association founded by journalists and media lawyers in 1970, when the nation's press faced an unprecedented wave of government subpoenas forcing reporters to name confidential sources.  Today, its attorneys provide pro bono legal representation, amicus curiae support, and other legal resources to protect First Amendment freedoms and the newsgathering rights of journalists.

Reuters, the news and media division of Thomson Reuters, is the world's largest multimedia news provider. Founded in 1851, it is committed to the Trust Principles of independence, integrity and freedom from bias. With unmatched coverage in over 16 languages, and reaching billions of people worldwide every day, Reuters provides

trusted intelligence that powers humans and machines to make smart decisions. It supplies business, financial, national and international news to professionals via desktop terminals, the world's media organizations, industry events and directly to consumers.

The Society of Environmental Journalists is the only North-American membership association of professional journalists dedicated to more and better coverage of environment-related issues.

Society of Professional Journalists ("SPJ") is dedicated to improving and protecting journalism.  It is the nation's largest and most broad-based journalism organization, dedicated to encouraging the free practice of journalism and stimulating high standards of ethical behavior.  Founded in 1909 as Sigma Delta Chi, SPJ promotes the free flow of information vital to a well-informed citizenry, works to inspire and educate the next generation of journalists and protects First Amendment guarantees of freedom of speech and press.

Student Press Law Center ("SPLC") is a nonprofit, nonpartisan organization which, since 1974, has been the nation's only legal assistance agency devoted exclusively to educating high school and college journalists about the rights and responsibilities embodied in the

42

First Amendment to the Constitution of the United States. SPLC provides free legal assistance, information and educational materials for student journalists on a variety of legal topics.

Vox Media, LLC owns New York Magazine and several web sites, including Vox, The Verge, The Cut, Vulture, SB Nation, and Eater, with 170 million unique monthly visitors.

The Washington Post (formally, WP Company LLC d/b/a The Washington Post) is a news organization based in Washington, D.C. It publishes The Washington Post newspaper and the website www.washingtonpost.com, and produces a variety of digital and mobile news applications. The Post has won Pulitzer Prizes for its journalism, including the award in 2020 for explanatory reporting.