**[ORAL ARGUMENT SCHEDULED FOR JANUARY 29, 2026]**

**No. 25-5309**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

GUN OWNERS OF AMERICA, INC., and GUN OWNERS FOUNDATION,

Plaintiffs-Appellants,

v.

BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES,

Defendant-Appellee.

———————————

On Appeal from the United States District Court
for the District of Columbia
No. 1:21-cv-02919-ABJ
Hon. Amy Berman Jackson

———————————

**PLAINTIFFS-APPELLANTS' REPLY BRIEF**

———————————

Robert J. Olson
WILLIAM J. OLSON, P.C.
370 Maple Avenue West, Ste. 4
Vienna, VA 22180
T: (703) 356-5070
rob@wjopc.com

Stephen D. Stamboulieh
STAMBOULIEH LAW, PLLC
P.O. Box 428
Olive Branch, MS 38654
T: (601) 852-3440
stephen@sdslaw.us

*Attorneys for Plaintiffs-Appellants*
*Gun Owners of America, Inc. and Gun Owners Foundation*

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT…………………………1

ARGUMENT

I.     APPARENTLY UNWILLING TO DEFEND THE DISTRICT COURT'S PRIOR RESTRAINT, ATF FAILED TO BRIEF THE CENTRAL ISSUES IN THIS CASE……………………………………..4

II.     THIS CASE IS NOT MOOT…………………………………………….7

    A. Plaintiffs Did Not Disclaim Interest in All Personally Identifiable Information.  Rather, They Expressly Stated Their Intended Use for Some of It……………………………………………………………….7

    B. This Court Should Reject ATF's Attempt to Recast the Scope of the District Court's Gag Order………………………………………………11

    C. The District Court Lacked Authority to Gag Plaintiffs' Speech, Especially After They Disclaimed an Interest in Speaking…………………14

        1. Plaintiffs in No Way "Consented to" the District Court's Prior Restraint…………………………………………………………...15

        2. The Lack of Foreseeable Harm Eliminated Any Possible Justification for a Prior Restraint………………………………………..17

    D. Alternatively, ATF's Actions Constitute Voluntary Cessation………………18

III.    SEEKING TO MOOT THIS CASE, ATF "INTENTIONALLY" VIOLATED THE LAW…………………………………………………….22

CONCLUSION………………………………………………………….………...24

# TABLE OF AUTHORITIES

**Constitutional Provisions**

Amendment I................................................................ 1, 3, 5, 7, 15, 16, 17, 21, 25

**Cases**

*Adarand Constructors, Inc. v. Slater*, 528 U.S. 216 (2000) ....................................19

*Alemite Mfg. Corp. v. Staff*, 42 F.2d 832 (2d Cir. 1930) ..........................................11

*Alphabet Workers Union v. NLRB*, 134 F.4th 1217 (D.C. Cir. 2025) ......................20

*Al-Tamimi v. Adelson*, 916 F.3d 1 (D.C. Cir. 2019) ...................................................5

*Arlington v. DOD*, 2025 U.S. App. LEXIS 5712 (D.C. Cir. Mar. 11, 2025) ...........10

*Armster v. U.S. Dist. Ct.*, 806 F.2d 1347 (9th Cir. 1986) .........................................21

*Bartnicki v. Vopper*, 532 U.S. 514 (2001) ...............................................................18

*Bittner v. United States*, 598 U.S. 85 (2023)............................................................24

*Church of Scientology of Cal. v. United States*, 506 U.S. 9 (1992) .........................10

*City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1982) .............................21

*Conax Fla. Corp. v. United States*, 824 F.2d 1124 (D.C. Cir. 1987) ........................5

*Degen v. United States*, 517 U.S. 820 (1996) ...........................................................17

*Everytown for Gun Safety Support Fund v. BATFE*, 984 F.3d 30 (2d Cir. 2020)....23

*FBI v. Fikre*, 601 U.S. 234 (2024)...................................................................... 19, 21

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167 (2000)
    ...................................................................................................................................19

*Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596 (1982).......................................17

*HRDC v. U.S. Park Police*, 126 F.4th 708 (D.C. Cir. 2025)............................. 3, 4, 6

*Lawson v. Dep't of Corr.*, 2015 U.S. Dist. LEXIS 175172 (N.D. Fla. Sept. 30,
    2015) ........................................................................................................................20

*Mickelsen Farms, LLC v. Animal & Plant Health Insp. Servs.*, 2018 U.S. Dist.
    LEXIS 48136 (D. Idaho Mar. 20, 2018)..................................................................20

*N.Y. Times Co. v. United States*, 403 U.S. 713 (1971) .............................................17

*Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012)....................................24

*Near v. Minnesota ex rel. Olson*, 283 U.S. 697 (1931)............................................17

*Neb. Press Ass'n v. Stuart*, 427 U.S. 539 (1976) .....................................................17

*Planned Parenthood of Wis., Inc. v. Azar*, 942 F.3d 512 (D.C. Cir. 2019) .............10

*Pub. Citizen, Inc. v. FERC*, 92 F.4th 1124 (D.C. Cir. 2024)....................................19

*Samma v. DOD*, 136 F.4th 1108 (D.C. Cir. 2025) ....................................................20

*Schneider v. Kissinger*, 412 F.3d 190 (D.C. Cir. 2005)..............................................5

*Speech First, Inc. v. Schlissel*, 939 F.3d 756 (6th Cir. 2019) ..................................20

*Zukerman v. USPS*, 961 F.3d 431 (D.C. Cir. 2020) ..................................................18

# GLOSSARY OF TERMS

ATF – Bureau of Alcohol, Tobacco, Firearms and Explosives

FBI – Federal Bureau of Investigation

FOIA – Freedom of Information Act

GOA – Gun Owners of America, Inc.

GOF – Gun Owners Foundation

NICS – National Instant Criminal Background Check System

## INTRODUCTION AND SUMMARY OF ARGUMENT

Apparently unwilling to defend the blatant First Amendment violation that *it asked* the district court to issue, Defendant ATF switches gears. Rather than brief *any* merits issue, ATF simply declares it has mooted the case. Its theory? In an unsolicited December 3, 2025 email to Plaintiffs' counsel, ATF claims to have "intentionally" re-produced to Plaintiffs portions of the very same records that ATF fought Plaintiffs tooth and nail – for years – to protect.[1] Apparently, ATF's "careful[] … line-by-line and page-by-page" determination that public disclosure would pose a "significant risk of long-term damage" turned out to be *wrong* all along. *See* Doc. 32-3 ¶¶32, 21. Or perhaps ATF filed sworn allegations of serious, irreparable harm that it knew to be nonsense from the start. Or maybe ATF concluded that whatever "damage" disclosure might cause is preferable to suffering an embarrassing defeat on First Amendment grounds. But whatever the reason, ATF's recent unsolicited production does nothing to moot this case, for a number of reasons.

First, ATF posits that laundering certain restricted material through a self-styled "*fourteenth* production" gives Plaintiffs everything they originally wanted, free from the district court's injunction which only governs ATF's *thirteenth* production. And, ATF argues, because Plaintiffs supposedly disclaimed any interest

---

[1] Plaintiffs have not opened ATF's December 3 "additional production" – because they remain bound by the district court's gag order. Thus, neither Plaintiffs nor this Court know what ATF's production *actually* contains.

in the "personally identifiable information" that remains, there simply is nothing more for this Court to do. But that could not be further from the truth. For starters, Plaintiffs never disclaimed their interest in *all* personally identifiable information – only most. In fact, Plaintiffs explicitly described the sorts of personal information they wanted, and why they wanted it. Thus, even adopting ATF's theory on mootness, there remains information still subject to the gag order that ATF has not provided Plaintiffs, and which Plaintiffs still seek to demonstrate ATF's violations of law. *That alone means this case is not moot*.

Second, the fact that ATF provided the same restricted information to Plaintiffs – again – does not mean Plaintiffs may now use it. ATF claims the district court's injunction applies only to Production 13, and so ATF can circumvent that order simply by providing the *same* material in a *separate* production. But the district court's gag order is not so limited, or so easily defeated. It clearly covers the *information* contained within Production 13, which Plaintiffs may not use despite ATF producing that same restricted information again.

Third, just because Plaintiffs disclaimed an interest in making certain speech does not mean they *consented* to be gagged from speaking. To the contrary, Plaintiffs vigorously opposed entry of the district court's prior restraint at every turn, and their disclaimer of interest in certain materials only proves that there could be no risk of harm necessary to justify an onerous prior restraint in the first place.

Fourth and alternatively, ATF's flagrant attempt to avoid a merits ruling constitutes textbook voluntary cessation, and so this case is not moot. The "heavy burden" to show mootness was ATF's to bear, and it utterly failed to carry it. By all indications, ATF has "intentionally" provided Plaintiffs with unredacted materials for no reason other than to manipulate this Court's jurisdiction on appeal. The law of mootness does not tolerate such tactics. This Court should reject ATF's 'heads I win, tails you lose' gamesmanship, and should proceed to the merits.

And on the merits, ATF makes no effort – none, not even in the alternative – to defend the legality of what it asked the district court to do, and therefore it has waived the opportunity. For example, this Court's recent decision in *HRDC v. U.S. Park Police*, 126 F.4th 708 (D.C. Cir. 2025), does not even make a cameo appearance in ATF's brief. Nor, for that matter, does the First Amendment. Instead, ATF avoids all the core issues, hoping that this Court will declare this case moot and spare ATF the public shaming that its First, Second, and Fourth Amendments violations deserve.

Indeed, as demonstrated by the wide range of *amici* supporting Plaintiffs – in contrast to *no one* supporting the government – protection of the First Amendment right to print the news is an uncontroversial subject. But if it goes unprotected here, then unelected government bureaucrats are free to operate in the shadows, avoiding the public spotlight that the FOIA was designed to provide. This case raises critical

questions about the constitutional limits of bureaucratic and judicial power, and those questions deserve answers. This Court should reverse the district court's judgment, vacate its prior restraint, and vindicate Plaintiffs' First Amendment rights.

## ARGUMENT

### I.    APPARENTLY UNWILLING TO DEFEND THE DISTRICT COURT'S PRIOR RESTRAINT, ATF FAILED TO BRIEF THE CENTRAL ISSUES IN THIS CASE.

ATF's response brief contains a scant seven pages of argument – three pages arguing that the case has become moot, and four asserting that the district court properly gagged Plaintiffs as to certain categories of information they (allegedly) disclaimed an interest in using. *See* Brief for Appellees ("Opp.") at 10-17. Those claims are repudiated in the pages that follow. *See* Sections II-III, *infra*. But conspicuously missing – indeed, entirely absent from ATF's brief – is any discussion of the central issues in this case. In fact, ATF does not even make such arguments in the alternative, but instead places all its eggs in the mootness basket.

For example, this Court's recent decision in *HRDC v. U.S. Park Police*, 126 F.4th 708 (D.C. Cir. 2025), is not even mentioned in ATF's brief, despite ATF's recent claim that "this case presents the opportunity for this Court to answer questions left open in [*HRDC*]." Opp. to Stay at 2;[2] *cf.* Opening Br. at 13-16. Nor (aside from summarizing the proceedings below, Opp. at 9) does ATF's brief even

_____

[2] Document #2134607, filed September 12, 2025.

mention the First Amendment, much less defend the grave prior restraint on Plaintiffs' speech that ATF obtained from the district court some *27 months ago*. *Cf.* Opening Br. at 28-51. Likewise, ATF never discusses whether district courts possess inherent, implied, equitable, or some other power to claw back inadvertently disclosed FOIA records. *Cf. id.* at 16-27. Finally, despite agreeing that the district court's gag order is in fact an "injunction" (Opp. at 11), ATF never addresses the district court's failure to analyze the four factors that courts "*must*" be considered before any such relief may issue. *Cf.* Opening Br. at 27-28.

These omissions are important. Indeed, if this Court concludes that this case is not moot (and clearly it is not), then the Court must reach the merits, on which ATF has failed to opine. That failure constitutes not only forfeiture, but also knowing waiver. *See Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019) ("A party forfeits an argument by failing to raise it in his opening brief."); *Conax Fla. Corp. v. United States*, 824 F.2d 1124, 1132 (D.C. Cir. 1987) ("courts normally are not available to relieve parties from the operation of their own litigation strategies"); *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005) ("a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace").

But ATF's failure to brief the merits is more important than just vis-à-vis waiver of its arguments. The Department of Justice's refusal to even acknowledge

the core statutory and constitutional issues in this case indicates that the DOJ may no longer have the strength of its own convictions, apparently now unwilling to defend the clearly unconstitutional relief that it so forcefully demanded below (and initially sought to preserve here). *See* Opp. to Stay at 15-18.

Of course, the issues with ATF's prior merits arguments are myriad and insurmountable. For starters, the district court's gag order is irreconcilable with this Court's decision in *HRDC v. U.S. Park Police*, 126 F.4th 708 (D.C. Cir. 2025). Plaintiffs are not the only ones to make this point – each of the several *amici* supporting Plaintiffs explains *HRDC*'s plain import here.[3] Next, there is no legal authority supporting a court's use of "equitable authority" against a FOIA *requester*. As Plaintiffs explained, equitable remedies exist only to enforce a legal right or remedy a legal wrong, neither of which is present here. *See* Opening Br. at 21-25. Next, the familiar four-factor test – the standard applies *whenever* a court issues an injunction — was notably absent in the court's analysis below. *See id.* at 27-28. The lower court's failure even to acknowledge – much less *apply* – the relevant legal standard constitutes reversible error all on its own. And finally, as Plaintiffs and

---

[3] *See* Brief of *Amicus Curiae* Americans for Prosperity Foundation at 3-13 (Nov. 13, 2025), Document #2144993; *Amicus Curiae* Brief of the Buckeye Institute at 7-8, 11 (Nov. 13, 2025), Document #2145170; Consent Brief of *Amici Curiae* Reporters Committee for Freedom of the Press *et al.* at 2, 3, 8, 14, 16 (Nov. 13, 2025), Document #2145217.

their several *amici* have made crystal-clear, the district court's gag order constitutes a prior restraint that is flatly prohibited by the First Amendment.

But these numerous and individually dispositive issues did not dissuade ATF from defending its gag order. *See* Opp. to Stay. Indeed, it was not until ATF saw many of the major media organizations in the country come to Plaintiffs' defense that it suddenly changed its tune. *See* Reporters Committee amicus, *supra*. Faced with widespread criticism from across the political spectrum, and receiving literally no support for its campaign against First Amendment rights, ATF now seeks an offramp. To that end, it has concocted a threadbare mootness argument, seeking to avoid this Court's review of the issues that it so vociferously defended just a few months ago.

For the reasons below, this Court should reject ATF's attempt to save face. This Court should not permit federal bureaucrats to violate this nation's most sacred constitutional rights with impunity. Plaintiffs have been gagged from printing the news for *more than two years*, and ATF cannot avoid a resolution on the merits.

## II. THIS CASE IS NOT MOOT.

### A. Plaintiffs Did Not Disclaim Interest in All Personally Identifiable Information. Rather, They Expressly Stated Their Intended Use for Some of It.

Seeking to recast the focus of this appeal to mootness and waiver, ATF notes that "the district court ordered plaintiffs not to disseminate personally identifiable

information ['PII'] covered by Exemptions 6, 7(C), and 7(D)." Opp. at 2. This, ATF claims, was "*without objection* from plaintiffs," who supposedly "represented that they do not 'have any interest in' *any* [PII] contained in the inadvertent production." *Id.* at 2, 15 (emphases added). Thus, ATF posits, Plaintiffs "waive any argument in favor of being able to use" *any* of the PII. *Id.* at 16. But ATF's description of the relevant PII is not only incomplete, but also *false*. In reality, Plaintiffs repeatedly described their interest in certain PII – explicitly describing their intended use.

Consider ATF's curated description of the PII contained within Production 13. ATF suggests that this information *only* included "(1) the personally identifiable information of ATF and FBI agents, and agency staff; (2) the social security numbers, birth dates, addresses, cell phone numbers, and family relationships of the subjects of agency investigation; and (3) the identities of cooperating sources who provided information to the government." Opp. at 14-15. But this list covers only the information in which Plaintiffs *disclaimed* any interest. It does not even accurately represent the information that Plaintiffs did disclaim. And, most importantly, it *entirely omits any reference to the categories of PII that Plaintiffs did not disclaim*. Indeed, at all times in the district court below and here on appeal, Plaintiffs clearly described what information they did and did not want.

Specifically, with respect to the *subjects* of unlawful NICS monitoring, Plaintiffs only disclaimed interest in those persons' birth dates and Social Security

numbers.[4]  <u>But Plaintiffs never disclaimed – and certainly never waived – interest in surveillance subjects' names</u>, email addresses, street addresses, cell phone numbers, or the personally identifiable information of their associates and family members who are victims of ATF's abuses.

But this Court need not arrive at the same conclusion by parsing the pleadings and through the process of elimination.  That is because Plaintiffs *expressly stated their interest in surveillance subjects' identities and contact information*, clearly and repeatedly.  As Plaintiffs observed, "[t]he targets of this surveillance program … do not receive notice that their transactions are being or have been monitored...."  MPO Opp. at 8-9.  Thus, Plaintiffs described "the possibility of disclosing this information *to the persons* who were the subjects of ATF/FBI investigations."  Plaintiffs' Response to Defendant's Motion for Summary Judgment, Doc. 33, at 25.  Indeed, as Plaintiffs explained, "to the extent that any of these surveilled persons is a *member* of Plaintiff GOA, a protective order would limit Plaintiffs' associational freedom to work with their own members, who join GOA, *inter alia*, so that GOA can ferret out

---

[4] *Compare* Defendant's Expedited Motion for Protective Order and Memorandum in Support ("MPO"), Doc. 20, at 6 (emphasis added) (claiming "*names*, social security numbers, and birth dates of subjects"), *and* Barnett Declaration, Doc. 20-1, ¶25 (emphases added) (claiming "personally identifiable information," including "*email addresses*, *street addresses*, *cell phone numbers*" of "subjects," their "*associates*," and their "*family members*"), *with* Plaintiffs' Opposition to Defendant's Motion for Protective Order ("MPO Opp."), Doc. 28, at 18 (disclaiming any interest only in "birth dates and social security numbers").

illicit government activity, to protect their rights." *Id.* at 25 n.34. Naturally, to notify someone of unlawful government surveillance would require Plaintiffs knowing their name and contact information.

In other words, Plaintiffs never disclaimed an interest in all PII. Rather, Plaintiffs clearly described *what* PII they wanted, and *why* they wanted it. ATF's brief ignores this reality, sweeping it under the rug. But because the district court's order still gags Plaintiffs as to *this* PII under FOIA Exemption 6, and because ATF did not provide that PII in its December 3, 2025 production, Plaintiffs' claims have not been mooted or waived.

Indeed, "[a]n appeal becomes moot [only] if intervening events make it impossible for us to grant 'effectual relief' to the prevailing party." *Planned Parenthood of Wis., Inc. v. Azar*, 942 F.3d 512, 516 (D.C. Cir. 2019). But if this Court can "effectuate a partial remedy," the "availability of this possible remedy is sufficient to prevent this case from being moot." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 13 (1992); *see also Arlington v. DOD*, 2025 U.S. App. LEXIS 5712, at *4 (D.C. Cir. Mar. 11, 2025) (same). Here, this Court can still reverse the ongoing prior restraint *at least* as it pertains to the PII in which Plaintiffs claimed an interest but which ATF still refuses to let them access. And so the case is not moot for that reason alone.

## B. This Court Should Reject ATF's Attempt to Recast the Scope of the District Court's Gag Order.

On December 3, 2025, an ATF attorney sent an unsolicited email to Plaintiffs' counsel, purporting to contain a re-reproduced Production 13.  *See* Doc. 50-1.  This time, ATF asserts, it has kept certain protected information (Exemptions 6, 7(C), and 7(D)) redacted, but it has made other protected information (Exemptions 3 and 7(E)) unredacted.  Opp. at 10.  Thus, ATF triumphantly declares, this case is moot.  *Id.*

Of course, regardless of how many times ATF dangles the forbidden fruit of restricted information, Plaintiffs remain bound by the district court's gag order, which prohibits Plaintiffs' access to that protected information.  So, while ATF's email certainly might constitute contempt of the district court's injunction,[5] it does nothing to moot this case.

Faced with this reality, ATF concocts a cutesy new theory.  Suddenly, according to ATF, the district court's order only applies to a single production of records – production 13 – but somehow does not apply to *the information contained in that production*.  As ATF explains it, "the district court's order … applies by its terms only to 'portions of the records produced in defendant's thirteenth production,'" but not to ATF's December 3 production of that very same information

---

[5] *See, e.g.*, *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832 (2d Cir. 1930) ("a person who knowingly assists a defendant in violating an injunction subjects himself to civil as well as criminal proceedings for contempt.  This is well settled law.").

in which ATF styles "a fourteenth production...." Opp. at 12-13. According to ATF, "an order designed to remedy an inadvertent disclosure plainly would not apply to an intentional one." *Id.* at 13.

But ATF's claim is too clever by half. The district court's gag order does not seek to protect the integrity of an errant FOIA production as such, and for its own sake. Rather, at its core the district court's order restricts Plaintiffs' *access to information* – information to which ATF argued and the district court concluded that Plaintiffs should not have access. Simply recasting this information as now part of some so-called "fourteenth production" does not alter the fact that ATF's December 3 production produces *the very same information* which Plaintiffs are gagged from opening, reviewing, or using "for any purpose...." Doc. 43.

Undaunted, ATF claims that this Court need not decide the merits of this case because "Plaintiffs now have access to all the Exemption 3 and 7(E) information *in a form not subject to the district court's order*. They may freely disseminate that information." Opp. at 13 (emphasis added). But ATF's own briefing undermines its claim. Indeed, ATF argued quite candidly that "the district court prohibited plaintiffs from disseminating … *information*," and that "the district court ordered plaintiffs not to make use *of material*...." Opp. at 1-2 (emphases added). This

acknowledgment appears repeatedly throughout ATF's brief,[6] belying ATF's claim that the district court's order applies only to a "production" and not to the "*information*" contained within it.

ATF's briefing below confirms its focus on access to information. There, ATF argued that "*the material* in question is shielded from public disclosure," and Plaintiff "*possesses information* that should not be publicly available," and so the court should "compel protection of the claimed *exempt material* from further dissemination, disclosure, or use...." Doc. 20 at 3, 7.

The district court obliged, focusing on Plaintiffs' access to information rather than some conceptualized "thirteenth production." In its September 18, 2023 minute order, the district court ordered Plaintiffs not to "disseminate, disclose, or use those records *or their contents* for any purpose." Likewise, in the court's October 30, 2023 order, the court characterized ATF's request as a "motion for a protective order to shield from dissemination, disclosure, or use *certain unredacted material*." Doc. 30 at 1; *see also id.* at 4 ("an order preventing dissemination *of the redacted material* … FOIA records *and the contents* of those records"). And in the district court's July

---

[6] *See also* Opp. at 2 ("district court ordered plaintiffs not to disseminate … *information*"); at 8 ("district court barred plaintiffs from disseminating or using *the information*"); at 12 ("injunction prohibiting plaintiffs from further disseminating *the information* that the agency intended to redact"); at 18 (district court's order "prohibits dissemination of *information*") (emphases added); Opp. to Stay at 7 (district court's order "prohibited plaintiffs from disseminating any of the *information* that the court held could be properly withheld").

23, 2025 order, it ordered Plaintiffs not to "disseminate, disclose, or use for any purpose *those portions* of the records." Doc. 43 at 1. Always, the district court's focus was on controlling access to *information*, not protecting some vague, standalone "thirteenth production."[7]

Finally, ATF claims that an injunction must be "narrowly tailored to remedy the specific harm shown," and so "an order designed to remedy an inadvertent disclosure plainly would not apply to an intentional one." Opp. at 13. But this point cuts against ATF, not in its favor. The supposed harm the district court cited was not unique to Production 13. Rather, it was "*the nature* of defendant's described redactions" which the district court believed could "be reasonably expected to harm...." Doc. 30 at 4. ATF may have made the strategic litigation decision to re-release certain restricted material to Plaintiffs, but that does not change its *nature*. The district court's gag order clearly governs access to *information*, and ATF cannot recast the scope of that order to avoid a ruling on the merits now.

### C. The District Court Lacked Authority to Gag Plaintiffs' Speech, *Especially* After They Disclaimed an Interest in Speaking.

ATF asserts (wrongly) that this case is partially moot with respect to the redacted information that it now claims to have provided to Plaintiffs. Opp. at 11-14; *see* Section II(E), *infra*. And as for the *other* information – "personally

---

[7] In contrast, the district court explained that "[t]his order places no restrictions on … the *material that was not redacted*." *Id.* (emphasis added).

identifiable information" that ATF did not voluntarily provide to Plaintiffs in its December 3 communication – ATF claims that "the district court correctly entered an uncontested order prohibiting plaintiffs from disseminating [that] personally identifiable information...." *Id.* at 14. As ATF asserts, by disclaiming interest in certain information, Plaintiffs somehow "*consented to*" a prior restraint on their speech (Opp. at 17), and so they cannot now challenge the district court's First Amendment infringement as to that information. As ATF tells it, "the district court took plaintiffs up on their offer" not to use certain information, and so "Plaintiffs are bound by their affirmative choice." Opp. at 16.

On the contrary, ATF's argument is based (i) on a blatant misrepresentation – indeed, a fabrication – of Plaintiffs' arguments below, along with (ii) a gross overestimation of the authority of federal courts.

### 1. Plaintiffs in No Way "Consented to" the District Court's Prior Restraint.

First, it is unequivocally – demonstrably – false that Plaintiffs ever "consented to" the gag order below, or that any discrete part of the court's prior restraint was somehow "uncontested." Rather, Plaintiffs opposed the district court's order at every turn, arguing vehemently that the district court possessed no authority to gag Plaintiffs in the first instance. *See* Doc. 22 at 2; Doc. 28 at 18-22; Doc. 33 at 27-32; Doc. 36 at 4 n.3; Doc. 44 at 6-8. Yet apparently, the government interprets Plaintiffs'

repeated protestations of 'no, stop' in fact as "consent" to be gagged. But that is not the law, and 'no means no' in this context and every other.

To be sure, Plaintiffs "did not assert" any plans to "make use of" certain information. Opp. at 15. And they "expressly disclaimed interest" in possessing certain information, even offering to destroy some. *Id.* That much is true. But the notion that this somehow constitutes "consent to" a First Amendment prior restraint is a *non sequitur*. Plaintiffs never "fail[ed] to oppose a ruling entering injunctive relief." *Id.* at 16. And they certainly never affirmatively "consented to entry of injunctive relief." *Id.* at 17. That does not follow (even implicitly) from Plaintiffs' disclaimer of interest in certain information.

Rather, the district court was powerless to issue a gag order <u>*because*</u> Plaintiffs disclaimed interest in certain categories of information. Once they did, there could be no foreseeable harm necessary to justify a gag order in the first place. *See* Doc. 28 at 16-17; Doc. 33 at 24 ("Defendant's claims of harm pertain to categories of information that Plaintiffs do not seek to retain or use in any way."). In fact, ATF acknowledges that Plaintiffs "asserted that 'destruction of any such portions of the records <u>*would alleviate the harms*</u> that [ATF's] declaration alleges could occur.'" Opp. at 16 (emphasis added). In other words, Plaintiffs' disclaimers were not *consent* to a gag order – quite the opposite, they demonstrate why the district court *lacked authority to issue one*.

## 2. The Lack of Foreseeable Harm Eliminated Any Possible Justification for a Prior Restraint.

Absent a finding of any possible foreseeable harm that could result from Plaintiffs' use of the inadvertently produced material – indeed, Plaintiffs promised that they *would not use* the most sensitive material – the district court was without any justification to issue a prior restraint on Plaintiffs' speech. As the Supreme Court has warned, "prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). For this reason, the Government "'carries a heavy burden of showing justification for the imposition of such a restraint.'" *N.Y. Times Co. v. United States*, 403 U.S. 713, 714 (1971). The Government can meet that burden "only in exceptional cases" risking harms of the highest order, such as "actual obstruction" of "a nation … at war." *Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 716 (1931). Conversely, if there is quite literally no harm that can occur, then a court has quite literally no power to issue a prior restraint.[8] And, even if the Government does meet its burden to show harm, a prior restraint still must be "narrowly tailored to serve that interest." *Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596, 607 (1982).

---

[8] *See Degen v. United States*, 517 U.S. 820, 823-24 (1996) (requiring use of inherent judicial power "to be a reasonable response to the problems and needs that provoke it").

Here, due to Plaintiffs' disclaimers of interest in certain information, the district court's prior restraint fails on both fronts. It could not possibly have been premised on the sort of "exceptional" harm required to gag speech, nor was it "narrowly tailored" to prevent a harm from speech that Plaintiffs promised would not occur. In fact, definitionally there could be *no* likelihood of harm whatsoever when "Plaintiffs expressly disclaimed interest" (Opp. at 15) in using certain sensitive information. In other words, *without any threatened speech, there can be no justification to restrict speech.*[9]

### D. Alternatively, ATF's Actions Constitute Voluntary Cessation.

Even if this Court accepts ATF's claims thus far, the case is still not moot. As "the party urging mootness," "the Government … bears the 'heavy burden' of establishing that the case is moot." *Zukerman v. USPS*, 961 F.3d 431, 441 (D.C. Cir. 2020). ATF does not even begin to meet that "heavy burden" here.

Of course, it is "well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC),*

---

[9] To be sure, ATF might argue that, without a gag order, Plaintiffs might change their minds as to information they previously disclaimed an interest in using. But "[t]he justification for any such novel burden on expression must be 'far stronger than mere speculation about serious harms.'" *Bartnicki v. Vopper*, 532 U.S. 514, 532 (2001). ATF offers nothing to question the veracity of Plaintiffs' prior statements, or otherwise to support its limitless theory of prior restraint.

*Inc.*, 528 U.S. 167, 189 (2000). Thus, a defendant's cessation of challenged conduct "will moot a case only if the defendant can show that the practice cannot 'reasonably be expected to recur.'" *FBI v. Fikre*, 601 U.S. 234, 241 (2024). Indeed, this "formidable standard" (*id.* at 243) is met "only if" the government's showing makes it "absolutely clear" that its conduct will not recur. *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222 (2000) (per curiam). Ultimately, "[w]hat matters is" what "a defendant … can *prove* about its future conduct." *Fikre*, 601 U.S. at 244 (emphasis added).

Contrary to these "well settled" principles, ATF has proved *nothing* about its future conduct. In fact, ATF's conduct on appeal only underscores the fact that it "intentionally" (Opp. at 13) sought to moot Plaintiffs' case for no reason other than to manipulate this Court's jurisdiction. ATF certainly offered no *other* explanation as to why it suddenly reversed course. *Cf. Pub. Citizen, Inc. v. FERC*, 92 F.4th 1124, 1128 (D.C. Cir. 2024) ("the prospect of manipulation gives us reason to doubt the party's claims").

Consider ATF's own admission that its attempt to moot this case was unlawful. By ATF's own telling, "the Tiahrt Rider *precluded* ATF from releasing this information" to Plaintiffs – yet ATF did so "intentionally." Opp. at 7, 13 (emphasis added); *see* Section III, *infra*. If ATF's most recent strategy – to "intentionally" provide FOIA Exemption 3 and 7(E) material to Plaintiffs – was not undertaken "in

19

order to avoid [this] litigation," *Samma v. DOD*, 136 F.4th 1108, 1113 (D.C. Cir. 2025), the only other possible explanation is that ATF has adopted a new *agency-wide policy* to disclose exempt information *to all requesters*. Unlikely, as that would place ATF in quite the bind, because it directly contradicts what ATF told this Court just three months prior. *Cf.* Opp. to Stay at 7 ("the information at issue 'contains the firearms tracing information that the ATF is *barred from publicly releasing*'"). Because it is quite obvious that ATF has chosen to release exempt information *only to Plaintiffs* and *only to avoid an adverse ruling*, this case is not moot.

Also consider the timing of ATF's voluntary cessation. Courts often "consider whether the change in policy or conduct appears to be the result of substantial deliberation or simply an attempt to manipulate jurisdiction," and "[t]iming plays a role in … assessing this factor." *Lawson v. Dep't of Corr.*, 2015 U.S. Dist. LEXIS 175172, at *15 (N.D. Fla. Sept. 30, 2015); *accord Mickelsen Farms, LLC v. Animal & Plant Health Insp. Servs.*, 2018 U.S. Dist. LEXIS 48136, at *26 (D. Idaho Mar. 20, 2018) ("timing of the voluntary cessation is a factor"); *see also Speech First, Inc. v. Schlissel*, 939 F.3d 756, 769 (6th Cir. 2019) ("The timing … raises suspicions that its cessation is not genuine."); *Alphabet Workers Union v. NLRB*, 134 F.4th 1217, 1226 (D.C. Cir. 2025) ("The coincidental timing is troubling."). Here, ATF sought to moot Plaintiffs' appeal only *after* it became clear that its continued defense of the district court's gag order was highly unpopular, and unlikely to succeed. *See, e.g.*,

Consent Brief of *Amici Curiae* Reporters Committee for Freedom of the Press *et al.*, *supra*, at 6-11. Again, ATF's brief offers no other colorable explanation for its sudden about-face, and its decision to *unlawfully* provide sensitive information to Plaintiffs. It was ATF's burden to prove its decision was legitimate. It failed to do so.

Finally, consider ATF's refusal to disavow the gag order it sought, or to walk back *any* of its prior arguments. The Supreme Court has explained that "a party's repudiation of its past conduct" can "help demonstrate that conduct is unlikely to recur." *Fikre*, 601 U.S. at 244. Indeed, "abandonment is an important factor," *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982), and "[i]t has long been recognized that the likelihood of recurrence of challenged activity is more substantial when the cessation is not based upon a recognition of the initial illegality of that conduct." *Armster v. U.S. Dist. Ct.*, 806 F.2d 1347, 1359 (9th Cir. 1986). Yet ATF has repudiated *nothing* here.

At bottom, to moot this case would be to sanction a flagrant attempt to manipulate this Court's jurisdiction, and would deprive a rogue agency of the accountability it so clearly needs. ATF cannot violate Plaintiffs' First Amendment rights, interfere with their respective organizational missions, run up their litigation costs while dragging this case out for years – and in the process make Plaintiffs' news story go cold – only to now wash its hands of this case and avoid a ruling. That

is *quintessential* voluntary cessation. This Court should reject ATF's frivolous manipulation, and should proceed to the merits.

## III. SEEKING TO MOOT THIS CASE, ATF "INTENTIONALLY" VIOLATED THE LAW.

In the district court below, ATF argued strenuously that FOIA "Exemption 3 [deals with] … information … which Congress has *directed not be publicly disclosed*." Memorandum in Support of Defendant's Motion for Summary Judgment ("MSJ") at 3 (D.D.C. Dec. 8, 2023), Doc. 32 (emphasis added). As ATF explained, the so-called Tiahrt Amendment to the Consolidated and Further Continuing Appropriations Act of 2012 "*gives ATF no discretion in disclosing* information from the Firearms Trace System database...." *Id.* at 5 (emphasis added).[10] *See also* Second Barnett Dec. ¶19 (emphasis added) ("Congress *expressly barred* federal agencies from … disclos[ing] … 'the contents of the Firearms Trace System database....'"). Indeed, ATF cautioned, serious government interests could be harmed if it were to disclose such material: "Public release of firearms trace

_____

[10] ATF has made clear that all the Exemption 3 material is Tiahrt-protected firearm trace data. *See* Second Declaration of Ginae E. Barnett ("Second Barnett Dec.") ¶19 (D.D.C. Dec. 8, 2023), Doc. 32-3 ("The information marked for redaction pursuant to Exemption 3 are records of specific firearms traces conducted by ATF's National Tracing Center...."); Doc. 42 at 13 ("The Court has observed the information at issue and confirmed that it contains the firearms tracing information that the ATF is barred from publicly releasing.").

information would risk compromising law enforcement investigations and damage relationships with federal firearms licensees...." *Id.* (emphasis added).

ATF makes the same claim now on appeal, asserting that "Congress *expressly foreclosed ATF from disclosing* firearms-tracing information...." Opp. to Stay at 13 (emphasis added); *see also* Opp. at 3 (emphasis added) ("Exemption 3 covers information *prohibited from disclosure*...."). Thus, "the Tiahrt Rider *precluded ATF from releasing* this information" to Plaintiffs. Opp. at 7 (emphasis added). And the district court agreed, explaining that "*Congress restricted the ATF's ability to disclose* firearms tracing information in 2003 … information that the *ATF is barred* from publicly releasing." Doc. 42 at 11, 13 (emphasis added); *see also Everytown for Gun Safety Support Fund v. BATFE*, 984 F.3d 30, 44 (2d Cir. 2020) ("The 2012 Tiahrt Rider prohibits the ATF from disclosing the data that Everytown seeks in its FOIA request....").

But in the same breath that ATF claims Congress "prohibited," "precluded," "barred," and "expressly foreclosed" it from divulging firearm trace information under Exemption 3, ATF proudly reports to the Court that, "[o]n December 3, 2025, ATF made an additional production to plaintiffs" where "*the information ATF had previously sought to protect under Exemption[] 3 … was not redacted at all.*" Opp. at 10. Unlike Production 13, this disclosure was no accident, as ATF makes quite clear that "the government *intentionally* sent the fourteenth production to plaintiffs,"

including "[t]he Exemption 3 … material...." *Id.* at 13. Finally, whereas ATF previously argued that this Court should allow the district court's prior restraint to continue because of the "heav[y] … public interest" concerns that "FOIA's Exemption 3 is meant to protect" (Opp. to Stay at 13), it now seems that the "public interest" concerns were not so "heavy" after all.

In other words, ATF has "intentionally" done what it claimed it had "no discretion" to do, and what the district court found ATF was "barred from" doing. ATF – by its own telling – has "intentionally" violated a congressional enactment, on the theory that doing so would render "Plaintiffs' challenge to the district court's order … moot...." Opp. at 11. This sort of fast-and-loose gamesmanship is precisely the sort of "self-serving litigating position" that should be "entitled to no weight." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 665-66 (2012) (Scalia, J., dissenting); *see also Bittner v. United States*, 598 U.S. 85, 97 n.5 (2023) ("when the government … speaks out of both sides of its mouth, no one should be surprised if its latest utterance isn't the most convincing one"). ATF's "intentional[]" violation of an enactment of Congress provides further reason for this Court to proceed to the merits.

## CONCLUSION

This FOIA case was important when it began, because the subject matter of Plaintiffs' request is a secret and warrantless government surveillance program that

monitors Americans' exercise of constitutional rights in real time. By mistake, ATF disclosed important information about that program. Then, to cover its tracks, ATF sought – and obtained – a noxious prior restraint preventing Plaintiffs from printing the news about a subject of weighty public concern. Now, decried by media entities and First Amendment organizations from across the political spectrum, ATF claims 'nothing to see here,' hoping that this Court will spare it the public shaming that it deserves. This Court should reject ATF's manipulative attempts to avoid a ruling in this case, should proceed to the merits, and should vindicate the First Amendment right to a free press. For the foregoing reasons, the district court's judgment should be reversed, its prior restraint vacated, and judgment entered for Plaintiffs.

Dated: December 18, 2025

Respectfully submitted,

*/s/ Robert J. Olson*
Robert J. Olson
WILLIAM J. OLSON, P.C.
370 Maple Avenue West, Ste. 4
Vienna, VA 22180
T: (703) 356-5070
rob@wjopc.com

*/s/ Stephen D. Stamboulieh*
Stephen D. Stamboulieh
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS 38654
T: (601) 852-3440
stephen@sdslaw.us

# CERTIFICATE OF COMPLIANCE

I hereby certify that:

1. This Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii) because this Brief contains 6,064 words, excluding parts of the Brief exempted by Fed. R. App. P. 32(f); and

2. This Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this Brief has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Stephen D. Stamboulieh*
Stephen D. Stamboulieh

**CERTIFICATE OF SERVICE**

I hereby certify that, on December 18, 2025, a copy of the foregoing brief was filed using this Court's CM/ECF system. All participants in the case are registered CM/ECF users and will be served electronically by that system.

/s/ Stephen D. Stamboulieh
Stephen D. Stamboulieh